# EXHIBITS 3-4
# REDACTED IN THEIR ENTIRETY

EXHIBIT 5

  



National **AI**
Research Institute
*Making a Better Tomorrow*

## ETRI NEWS 

| | | |
|---|---|---|
| ◎ | [CES 2021] ETRI New Techno··· | 2020.06.15 |
| ◎ | State researchers develop n··· | 2021.02.17 |
| ◎ | ETRI to Showcase Innovativ··· | 2021.01.15 |
| ◎ | ETRI Develops Hacking-fores··· | 2020.12.29 |



ETRI WEBZINE



ETRI Open

### ETRI Journal



ETRI Journal publ bimo in Read Engli more

### Brochure



ETRI Bro & ETRI Tec Rep Rea mo

### ETRI Promotional Video



| English Version | → |
| Chinese Version | → |
| French | → |

### Achievement



Guide to ETRI achievements

Read more

Footer Link

218 Gajeong-ro, Yuseong-gu, Daejeon, 34129, KOREA, Tel +82-1466-38
Electronics and Telecommunications Research Institute. All rights reserved.

EXHIBITS 6-8
REDACTED IN THEIR ENTIRETY

# EXHIBIT 9

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HELIOS STREAMING, LLC,      )
et al.,                     ) Civil Action No.
            Plaintiffs,)  19-01792-CFC-SRF
                            )
v.                          )
                            )
VUDU, INC.,                 )
            Defendant. )
- - - - - - - - - - - -  )
                            )
HELIOS STREAMING, LLC,      )
et al.,                     ) Civil Action No.
            Plaintiffs,)  19-01978-CFC-SRF
                            )
v.                          )
                            )
SHOWTIME DIGITAL INC.,      )
et al.,                     )
            Defendants.)

Wednesday, February 24, 2021
11:00 a.m.

Teleconference

BEFORE:  THE HONORABLE SHERRY R. FALLON
         United States Magistrate Judge

APPEARANCES:

        DEVLIN LAW FIRM LLC
        BY:  TIMOTHY DEVLIN, ESQ.
             LEONARD MONFREDO, ESQ.
             VERONICA M. SCHAD, ESQ.

             Counsel for the Plaintiffs

        Jennifer M. Guy, RPR
        (484) 467-4359
        jenniferguyrpr@gmail.com

---

2

1    MORRIS NICHOLS ARSHT & TUNNELL
     BY:  ANDREW MOSHOS, ESQ.
2
             - and -
3
     ROTHWELL, FIGG, ERNST & MANBECK, P.C.
4    BY:  STEVEN LIEBERMAN, ESQ.
          SHARON L. DAVIS, ESQ.
5         JENNIFER B. MAISEL, ESQ.
          NICOLE DeABRANTES, ESQ.
6
             Counsel for the Defendant
7            Vudu, Inc.
8    SHAW KELLER LLP
     BY:  JOHN W. SHAW, ESQ.
9
             - and -
10
     WEIL, GOTSHAL & MANGES LLP
11   BY:  SUTTON ANSLEY, ESQ.
12           Counsel for the Defendant
             Showtime Digital Inc.
13
14
15
16
17
18
19
20
21
22
23
24
             Jennifer M. Guy, RPR
             (484) 467-4359
             jenniferguyrpr@gmail.com

---

3

          1             THE COURT:  Good morning,
11:01:15  2    everyone.  This is Magistrate Judge Sherry
11:01:18  3    Fallon joining the call in the Helios cases,
11:01:22  4    Helios v. Vudu and Showtime.  I'll start with
11:01:25  5    finding out who is on the line, first
11:01:28  6    beginning with our court stenographer.
11:01:28  7             THE REPORTER:  Good morning,
11:01:36  8    Your Honor, it's Jennifer Guy.
          9             THE COURT:  Thank you.  Do I
11:01:37  10   have my law clerk, Ms. Polito?
11:01:45  11            THE CLERK:  Yes, Your Honor,
11:01:46  12   and I also believe our intern is on the line.
11:01:49  13            THE COURT:  Very good.  I'll
11:01:51  14   now start with appearances of counsel,
11:01:51  15   starting with the plaintiff first.  Who is on
11:01:52  16   for Helios?
11:01:53  17            MR. DEVLIN:  Good morning, Your
11:01:55  18   Honor.  This is Tim Devlin of Devlin Law
11:02:00  19   Firm, and with me I have Leonard Monfredo and
11:02:02  20   Veronica Schad also of Devlin Law Firm.
11:02:04  21            THE COURT:  All right, thank
11:02:05  22   you.  And for Vudu?
11:02:08  23            MR. MOSHOS:  Good morning, this
11:02:11  24   is Andrew Moshos from Morris Nichols for

             Jennifer M. Guy, RPR
             (484) 467-4359
             jenniferguyrpr@gmail.com

---

4

11:02:13  1    Vudu.  With me are Steven Lieberman, Sharon
11:02:16  2    Davis, Jennifer Maisel, and Nicki DeAbrantes
11:02:19  3    from Rothwell Figg, and Mr. Lieberman will be
11:02:21  4    speaking today.
11:02:23  5             MR. LIEBERMAN:  Good morning,
11:02:24  6    Your Honor.
11:02:24  7             THE COURT:  Good morning.  And
11:02:26  8    for the Showtime entities?
11:02:28  9             MR. SHAW:  Good morning, Your
11:02:30  10   Honor.  This is John Shaw from Shaw Keller,
11:02:33  11   and joining me from Weil is Sutton Ansley.
11:02:37  12            THE COURT:  All right.  This is
11:02:42  13   the time that I set aside, actually I guess
11:02:46  14   to revisit the issue that we had previously
11:02:49  15   back on January 5th concerning the foreign
11:02:53  16   inventors in Japan and Korea.
11:02:56  17            At that hearing, as shown in
11:02:58  18   the transcript at page 37, I had asked the
11:03:02  19   parties to work together on submitting
11:03:06  20   language consistent with the assignment
11:03:11  21   agreements and related agreements that
11:03:13  22   plaintiffs' counsel could send to the
11:03:17  23   inventors to attempt to secure their
11:03:22  24   voluntary appearances for deposition.  I

             Jennifer M. Guy, RPR
             (484) 467-4359
             jenniferguyrpr@gmail.com

5

11:03:24  1   indicated on page 37 of the transcript that
11:03:33  2   assuming all went well with the transmission
11:03:36  3   of the communication to the inventors
11:03:37  4   themselves, that the Court wanted a status
11:03:40  5   report on or before January 28 about whether
11:03:44  6   or not there was still an issue concerning
11:03:47  7   the cooperation of the inventors voluntarily,
11:03:52  8   and whether it is anticipated that foreign
11:03:56  9   process will need to issue in order to secure
11:04:00  10  these depositions, and if so, when that
11:04:03  11  process should begin.
11:04:08  12       I indicated to the parties that
11:04:09  13  I would give the parties, if they mutually
11:04:13  14  agreed that they needed it, some additional
11:04:15  15  time to try to convince the inventors that
11:04:18  16  this process would be much more efficient and
11:04:22  17  expeditious if they would voluntarily appear
11:04:26  18  as opposed to waiting for foreign process to
11:04:30  19  issue.
11:04:30  20       I did receive the status
11:04:33  21  report, and in the status report, there was
11:04:35  22  an application by the defendants to alter the
11:04:41  23  case schedule to push out by six months the
11:04:45  24  fact discovery completion date and other

6

11:04:50  1   dates beyond that and dependent on that date
11:04:54  2   in the scheduling order, understanding that
11:04:58  3   the trial date and the pretrial date would
11:05:07  4   accordingly be vacated and have to be reset
11:05:10  5   if the Court were to adopt that.
11:05:11  6        I received -- it wasn't clear
11:05:14  7   to me from this status report what the
11:05:17  8   plaintiffs' position was other than it was
11:05:19  9   opposed, and so I received the plaintiffs'
11:05:22  10  position a day later informing me that, in
11:05:29  11  fact, it's opposed, and therefore, I set this
11:05:32  12  teleconference today to see where we are, see
11:05:35  13  what could be done, and see how it impacts
11:05:37  14  the case schedule.
11:05:39  15       So with that, I will hear first
11:05:40  16  from defendants as the movant on adjustment
11:05:45  17  of the case schedule to accommodate these
11:05:50  18  inventor depositions and subsequent
11:06:00  19  deadlines, and then I'll hear from the
11:06:00  20  plaintiffs.
11:06:00  21       Mr. Lieberman?
11:06:00  22       MR. LIEBERMAN:  Thank you, Your
11:06:02  23  Honor.  And I'll be speaking on behalf of
11:06:04  24  both Vudu and Showtime unless the Showtime

7

11:06:04  1   counsel has things they wish to add or
11:06:07  2   correct.  We thought that would be the most
11:06:09  3   efficient way to proceed.
11:06:11  4        Your Honor has correctly given
11:06:13  5   the history.  What came back after plaintiffs
11:06:25  6   communicated with ETRI and KAU was that none
11:06:28  7   of the inventors are willing to be deposed,
11:06:34  8   which means, of course, that the only way we
11:06:37  9   can get deposition testimony from them is by
11:06:37  10  employing the Hague Convention with respect
11:06:41  11  to the seven inventors who are living in
11:06:43  12  South Korea, and the letters rogatory process
11:06:46  13  with respect to the eighth inventor who is
11:06:51  14  living in Japan.
11:06:53  15       Originally, one of the
11:06:55  16  inventors had been retained by plaintiffs as
11:06:59  17  a consultant, this is a Mr. Truong, and for a
11:07:04  18  brief period of time, about two weeks in late
11:07:07  19  October, he was willing to be deposed, but
11:07:12  20  for whatever reason, on November 4th, he
11:07:14  21  changed his mind, has apparently withdrawn as
11:07:17  22  a consultant to the plaintiffs, and he's
11:07:19  23  refused, as well.  So right now, the only way
11:07:22  24  to get any of the inventor testimony is using

8

11:07:24  1   letters rogatory and the Hague Convention.
11:07:27  2        We believe that the inventor
11:07:32  3   discovery in this case is important to our
11:07:33  4   case.  It's important because there are
11:07:37  5   serious issues involving derivation of the
11:07:42  6   claimed conventions under 102(f).  There are
11:07:45  7   serious issues about whether the inventors
11:07:47  8   deliberately concealed and omitted the names
11:07:50  9   of other inventors who are not employed by
11:07:55  10  ETRI or by KAU, and who participated in the
11:07:58  11  3GPP and the MPEG standard setting meetings.
11:08:04  12  And those are the meetings which, as Your
11:08:06  13  Honor I'm sure knows, gave rise to a lot of
11:08:11  14  the standards that are implicated in this
11:08:12  15  case.
11:08:13  16       There are also potential
11:08:17  17  serious issues regarding inequitable conduct,
11:08:21  18  including the fact that the patent owner
11:08:24  19  never cited the first DASH Draft
11:08:27  20  International Standard to the USPTO, even
11:08:30  21  though those same inventors referenced that
11:08:33  22  draft standard in the Korean priority
11:08:33  23  applications.  And just so Your Honor is
11:08:38  24  aware, that standard is one of the pieces of

9

11:08:46 1 prior art that's relied upon in the IPR in
11:08:48 2 the petitions that we filed.
11:08:49 3          The extension is necessary to
11:08:50 4 allow us to have a reasonable opportunity to
11:08:52 5 depose the inventors and to develop the facts
11:08:55 6 necessary for a full defense of this case.
11:08:59 7 And just to be clear, Your Honor had raised
11:09:02 8 this issue with us on the last call.  We are
11:09:05 9 prepared to proceed with these depositions
11:09:12 10 remotely.  Given the COVID pandemic, we don't
11:09:16 11 want to incur additional risk and additional
11:09:18 12 delay by trying to do these depositions in
11:09:20 13 person.  We understand there that may be some
11:09:23 14 unique issues regarding how we do a remote
11:09:28 15 deposition under, for example, the letters
11:09:30 16 rogatory process, but we imagine that the
11:09:33 17 Japanese and Korean authorities will be
11:09:35 18 reasonable about that, and we should be able
11:09:37 19 to proceed that way.
11:09:38 20          There's no harm to plaintiffs
11:09:40 21 here if the six-month extension is granted.
11:09:44 22 They are non-practicing entities; thus, they
11:09:48 23 can't claim that they're losing sales with
11:09:51 24 respect to products or services.  There's no

10

11:09:53 1 competition, because they have no sales.
11:09:55 2          Also, all of the patents here
11:09:58 3 or many of the patents here have a long term;
11:10:01 4 most of them expire after 2030.  So it's not
11:10:05 5 a situation where a six-month delay is going
11:10:09 6 to lead them to a situation where their
11:10:11 7 licensing program is converted to one for
11:10:16 8 patents that have already expired.  Not even
11:10:19 9 close here.
11:10:20 10          And I would submit that there's
11:10:22 11 no harm to the Court or the efficient
11:10:24 12 processing of this case if there's an
11:10:27 13 extension.  This case was initially scheduled
11:10:29 14 for trial and is currently scheduled for
11:10:31 15 trial before Judge Connolly on March 14,
11:10:35 16 2022.  As we've advised the Court in our
11:10:38 17 February 18 letter, Judge Connolly has
11:10:42 18 recently scheduled two ANDA cases for trial
11:10:45 19 on the same date.  As we understand it from
11:10:48 20 Mr. Blumenfeld, under Judge Connolly's
11:10:50 21 practices, ANDA cases are given priority over
11:10:54 22 non-ANDA cases because of the 30-month
11:10:57 23 statutory deadline, so those cases will
11:11:01 24 presumably take priority over this one.

11

11:11:04 1          And in addition, and Your Honor
11:11:05 2 is the last person who needs to be told this,
11:11:09 3 COVID has disrupted the schedules of many
11:11:10 4 cases in this court, and we imagine it's
11:11:12 5 highly unlikely that there will be a dearth
11:11:15 6 of cases that will need to be set or reset
11:11:17 7 for trial in the spring of 2022.  So I
11:11:20 8 suspect it's not at all likely that there's
11:11:25 9 going to be an open date if this case is
11:11:28 10 moved.
11:11:29 11          Now, I don't know if Your Honor
11:11:30 12 wishes me to go into sort of the chronology
11:11:36 13 starting with the Rule 16 conference, because
11:11:40 14 a big part of plaintiffs' opposition to the
11:11:43 15 extension was the argument that we should
11:11:46 16 somehow be deprived of the ability to take
11:11:49 17 these inventor depositions because we should
11:11:51 18 have initiated the Hague Convention and
11:11:55 19 letters rogatory process some eight months
11:11:58 20 ago.  The chronology does not --
11:11:58 21          THE COURT:  Counsel, I'm sorry
11:12:01 22 for interrupting, but I think we heavily
11:12:03 23 covered that ground the last go-round on
11:12:06 24 January 5th, and one of the important factors

12

11:12:10 1 in my view in ruling as I did back then was
11:12:15 2 because of the production of the agreements
11:12:20 3 that gave the defendants the opportunity to
11:12:23 4 see the connections between these inventors
11:12:26 5 and KAU and ETRI, and any obligations that
11:12:31 6 they may have had to cooperate with, I'll use
11:12:36 7 the term loosely, litigation or matters
11:12:42 8 concerning the patents; there was a different
11:12:44 9 word used precisely in the agreements.  But
11:12:47 10 essentially, their cooperation derived from
11:12:49 11 those agreements and the agreements that
11:12:51 12 those organizations executed with the
11:12:55 13 plaintiffs' parent, Ideahub.  And that
11:12:59 14 conversation I think was fully flushed out
11:13:02 15 then.
11:13:02 16          If there have been facts
11:13:04 17 related to that chronology that have been
11:13:07 18 learned since we were last together in early
11:13:10 19 January, I'm happy to hear them, but I don't
11:13:12 20 want to rehash ground that we've already been
11:13:13 21 over.
11:13:16 22          MR. LIEBERMAN:  I'm delighted
11:13:19 23 to hear that.  And the points that Your Honor
11:13:26 24 has focused on are ones that I was going to

13

11:13:26  1  make, so I'll skip that entirely.
11:13:30  2          What I'd like to turn to is a
11:13:32  3  couple of very practical items, and these are
11:13:36  4  issues that were adverted to in both parties'
11:13:41  5  letter to the Court.
11:13:42  6          The trial schedule is a matter
11:13:45  7  of importance for a couple of reasons.
11:13:48  8  First, it's of paramount importance in this
11:13:54  9  case itself directly, because without an
11:13:57 10  extension, we're not going to be able to get
11:13:59 11  that deposition testimony.
11:14:00 12          Number two, it's important
11:14:01 13  because Vudu has filed IPRs with respect to
11:14:07 14  two of the patents that are involved in this
11:14:10 15  litigation.  And in those, in response to
11:14:12 16  those petitions, the plaintiffs did not
11:14:17 17  submit a substantive opposition, they
11:14:20 18  submitted a request that was grounded
11:14:22 19  entirely on the argument that the PTAB should
11:14:25 20  exercise its discretion to decline to
11:14:28 21  institute under the *Fintiv* factors, those
11:14:32 22  focusing principally on the fact that the
11:14:35 23  trial in this case is scheduled to take place
11:14:39 24  a month before the statutorily required date

            Jennifer M. Guy, RPR
              (484) 467-4359
          jenniferguyrpr@gmail.com

15

11:15:56  1  party.  The two patents that we have filed on
11:16:00  2  are probably the most important patents in
11:16:02  3  this case.  And the reason I say that or the
11:16:06  4  reason Your Honor can assume that that's
11:16:10  5  correct without getting into the merits is
11:16:12  6  that in the last two weeks, the plaintiffs in
11:16:18  7  this case brought a lawsuit against Fandango,
11:16:21  8  which owns Vudu, in the Central District of
11:16:24  9  California, and a separate lawsuit against
11:16:27 10  NBC Universal and its subsidiary Peacock in
11:16:33 11  the Central District of California.  NBC
11:16:38 12  Universal owns Fandango; Fandango owns Vudu.
11:16:43 13  In the lawsuit against NBC Universal and
11:16:43 14  Peacock, they sued up to three patents.  Of
11:16:43 15  those three patents, two of the three were
11:16:46 16  the patents that are the subject of our IPR
11:16:49 17  petitions.
11:16:50 18          When they sued Fandango, they
11:16:54 19  sued on four patents.  Two of the four
11:16:57 20  patents that they sued on are the same
11:17:00 21  patents that are the subject of our IPR
11:17:04 22  petitions.  So these patents are really
11:17:05 23  central to the allegations in this case.
11:17:06 24          So that's just one practical

            Jennifer M. Guy, RPR
              (484) 467-4359
          jenniferguyrpr@gmail.com

14

11:14:45  1  for written decisions and those two IPRs are
11:14:48  2  instituted.
11:14:49  3          Now, should the IPRs be
11:14:53  4  instituted -- and there's also been
11:14:58  5  communication with the PTAB where we've
11:15:01  6  indicated to the PTAB that we want to file a
11:15:04  7  reply brief with the PTAB bringing to the
11:15:08  8  PTAB's attention events that have occurred
11:15:10  9  and are occurring in this litigation with
11:15:12 10  respect to the trial date.  And as you
11:15:15 11  probably saw from the letters, plaintiffs
11:15:18 12  questioned the probity of our
11:15:20 13  characterization regarding a potential moving
11:15:23 14  of the trial date.  That's why anything this
11:15:26 15  court does with respect to the schedule is
11:15:28 16  going to be important for us to get to the
11:15:32 17  PTAB.
11:15:33 18          If the PTAB grants the
11:15:35 19  institution of these two IPRs, Vudu intends
11:15:39 20  to move to stay this litigation until the
11:15:43 21  conclusion of those IPR proceedings, and here
11:15:48 22  is why.  One of these ten patents-in-suit is
11:15:50 23  already the subject of an instituted IPR, one
11:15:53 24  where the petition had been filed by a third

            Jennifer M. Guy, RPR
              (484) 467-4359
          jenniferguyrpr@gmail.com

16

11:17:10  1  issue I wanted to bring up with Your Honor
11:17:13  2  because I know Your Honor likes to focus on
11:17:16  3  practically how is the case going to move
11:17:17  4  forward and what is the effect of the Court's
11:17:20  5  rulings.
11:17:20  6          That's all I have for my
11:17:22  7  principal presentation, unless Your Honor has
11:17:27  8  any questions at this point.
11:17:28  9          THE COURT:  Thank you.  When
11:17:30 10  you were speaking about the inventor that was
11:17:34 11  the consultant to the plaintiff, I just want
11:17:37 12  to be sure I'm correct, it's my understanding
11:17:39 13  that that inventor is the one inventor in
11:17:43 14  Japan, and that inventor is no longer willing
11:17:46 15  to voluntarily cooperate; am I correct on
11:17:49 16  that?
11:17:49 17          MR. LIEBERMAN:  That's correct.
11:17:50 18  We were told on October 22 he was willing to
11:17:53 19  be deposed, and then we were told on November
11:17:56 20  4 that he is no longer willing to be deposed.
11:17:58 21  And that was confirmed by plaintiffs in the
11:18:06 22  submission that they made after they sent a
11:18:08 23  letter to ETRI and ETRI responded.
11:18:15 24          THE COURT:  I have a couple

            Jennifer M. Guy, RPR
              (484) 467-4359
          jenniferguyrpr@gmail.com

17

11:18:16  1  other questions.  Let me ask about process
11:18:18  2  and timing.  How soon would defendants be in
11:18:22  3  a position to get the process over to the
11:18:25  4  Court so it can be signed and sent out
11:18:29  5  subsequently to the appropriate foreign
11:18:32  6  authority?
11:18:32  7        MR. LIEBERMAN:  Right.  So our
11:18:35  8  plan is, and Showtime is taking the lead on
11:18:37  9  this, that we'll be able to get that to the
11:18:40  10  Court next week.  We've reached out to
11:18:42  11  plaintiffs and they have indicated that they
11:18:43  12  will not oppose the motion for issuance of
11:18:46  13  letters rogatory.  But as Your Honor knows,
11:18:48  14  we have to, for Japan, we have to write out
11:18:52  15  the questions, and we also have to have
11:18:54  16  everything translated.  That's already in
11:18:57  17  process.  We're spending $75,000 to translate
11:19:00  18  the relevant materials, that our expectation
11:19:04  19  is by the end of next week, we can get the
11:19:06  20  formal papers to the Court.
11:19:07  21        THE COURT:  All right.  And
11:19:11  22  address, if you will, and I think I have a
11:19:15  23  sense of this from your argument, but one of
11:19:18  24  the arguments raised by the plaintiff that

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

18

11:19:25  1  this is somewhat of a back door, indirect way
11:19:28  2  for the defendants to gain inventor testimony
11:19:32  3  that is really intended and most useful in
11:19:36  4  connection with pushing along the IPRs, and I
11:19:42  5  suspect that's why you've addressed to the
11:19:46  6  Court the background and the interplay
11:19:50  7  between the patents that Vudu is seeking to
11:19:55  8  have instituted by the PTAB and their
11:20:00  9  interconnection to other litigation as well
11:20:02  10  as this.
11:20:03  11        But address, you know, circling
11:20:06  12  back, address that point that the plaintiff
11:20:08  13  brought up in its papers, that this is really
11:20:11  14  derived to get information more useful in the
11:20:15  15  PTAB than in this case, particularly since
11:20:17  16  you've raised the prospect, which is not
11:20:20  17  before the Court presently, but in the event
11:20:23  18  the IPRs would be instituted, the defendants
11:20:26  19  would be seeking to stay the pending case.
11:20:32  20        MR. LIEBERMAN:  Right.  So
11:20:37  21  certainly we are -- and it never occurred to
11:20:40  22  me, although it's a good idea, that inventor
11:20:45  23  testimony that we get in this litigation
11:20:48  24  could conceivably be used in the IPR.  I

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

19

11:20:51  1  never thought about that before.  I don't
11:20:53  2  even know if the timing would work.
11:20:55  3        THE COURT:  That's my question.
11:20:58  4  If the Court grants this extension out by six
11:21:03  5  months, you know, and all the subsequent
11:21:05  6  dates, then you're going to begin the process
11:21:08  7  of taking this inventor testimony, at least
11:21:11  8  starting the process so that you can secure
11:21:14  9  the inventor testimony.  But then if things
11:21:17  10  change on the IPR front, and one of the
11:21:21  11  factors that might be considered to weigh in
11:21:26  12  favor of institution would be now the IPRs
11:21:30  13  can go forward because the March trial date
11:21:33  14  is not likely to occur, and, in fact, such an
11:21:35  15  order I necessarily have to vacate the March
11:21:39  16  trial date if I were to accept a six-month
11:21:42  17  extension proposal.
11:21:45  18        And the question would be,
11:21:46  19  then, if then that would have a domino effect
11:21:50  20  in terms of moving to stay, then would that
11:21:53  21  bring a halt to the process of going forward
11:21:56  22  to secure the inventor depositions?  Are we
11:22:02  23  doing this for naught, in other words?  Does
11:22:04  24  the stay put the brakes on that foreign

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

20

11:22:07  1  process?
11:22:09  2        MR. LIEBERMAN:  The answer is,
11:22:12  3  as I think I understand Your Honor's
11:22:13  4  question, no.  We would go forward with --
11:22:22  5  since we know that we're going to have to
11:22:24  6  deal with these patents eventually, we're
11:22:29  7  certainly going to go forward with the
11:22:30  8  process of initiating the Hague --
11:22:35  9        THE CLERK:  Counsel, I'm sorry
11:22:37  10  to interrupt; this is the judge's law clerk.
11:22:38  11  She was dropped off the line, so if you could
11:22:40  12  pause your argument for a moment while she
11:22:43  13  rejoins.  I apologize.
11:22:51  14        (Judge Fallon rejoined the
11:22:53  15  conference.)
11:23:44  16        THE COURT:  Sorry about that,
11:23:47  17  everyone.  My call was dropped.  I love
11:23:51  18  modern technology.
11:23:51  19        But Mr. Lieberman, you were
11:23:53  20  addressing my question about whether or not
11:23:56  21  potentially a stay, and again, that's not
11:23:58  22  before me and I'm not ruling on it, nor
11:24:00  23  suggesting any way that I might rule on it
11:24:03  24  if it were referred to me to rule on, but how

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

21

```
11:24:09  1   would that affect going forward the process
11:24:11  2   for inventor depositions?
11:24:13  3          MR. LIEBERMAN:  So in terms of
11:24:15  4   timing, Your Honor, the plan would be, as we
11:24:25  5   indicated, to get to you late next week the
11:24:27  6   formal process.  Assuming the Court issues
11:24:31  7   that fairly promptly, and plaintiffs have
11:24:32  8   indicated they don't object to the issuance,
11:24:34  9   although they haven't seen the specific
11:24:36 10   questions yet for Japan and maybe some other
11:24:39 11   documents, that that would go out to Japan
11:24:46 12   and to Korea immediately.  The institution
11:24:49 13   wouldn't take place until at least mid or
11:24:53 14   late April.
11:24:54 15          As I indicated to the Court,
11:24:57 16   we're certainly, if both IPRs are instituted,
11:25:01 17   we're planning on asking the Court to grant
11:25:03 18   the stay of the district court litigation
11:25:05 19   while the IPRs are pending, because if those
11:25:09 20   two patents are held invalid, it's possible
11:25:11 21   the plaintiffs will simply drop the case.
11:25:13 22          If the Court thought it was
11:25:15 23   important for us to proceed with the
11:25:18 24   depositions of the foreign inventors while
```

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

22

```
11:25:21  1   everything else was stayed, just so that
11:25:24  2   there wouldn't be a long lag time if, for
11:25:29  3   example, we ended up losing the IPRs, I think
11:25:32  4   we'd be prepared to do that.  Certainly Vudu
11:25:34  5   would be prepared to do that, and I can speak
11:25:36  6   to Vudu; I don't know about Showtime.  But if
11:25:39  7   that were important for a stay decision, we
11:25:43  8   would be prepared to have that as a cut-out
11:25:46  9   to the stay.
11:25:46 10          I think plaintiffs had
11:25:51 11   suggested, and I wasn't sure if this was part
11:25:53 12   of your question, Your Honor, that our plan
11:25:54 13   is to use the testimony from the inventors in
11:25:56 14   the IPRs themselves.  Frankly, I had never
11:26:00 15   thought about that as a possibility.  I don't
11:26:02 16   think the timing works, and I'm not even sure
11:26:05 17   we would be permitted to do that under the
11:26:06 18   IPR rules since we didn't put, you know, what
11:26:09 19   the inventor said in our petition.  It's not
11:26:15 20   an issue I studied, but frankly, that's never
11:26:24 21   occurred to me, and that's certainly not our
11:26:26 22   purpose.  Does that answer Your Honor's
11:26:27 23   questions?
11:26:27 24          THE COURT:  It does.  There's a
```

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

23

```
11:26:29  1   lot of issues that kind of spin off the wheel
11:26:30  2   of this primary issue that we're discussing,
11:26:34  3   getting the inventors deposed.  I know it's
11:26:37  4   difficult to think of positions that might be
11:26:39  5   taken on all of these related issues, but I
11:26:45  6   like to try to look at the whole picture as
11:26:47  7   best we can, as you've said, for practical
11:26:50  8   reasons.
11:26:51  9          Unless there's anything
11:26:53 10   further, does Showtime have anything to add
11:26:55 11   before I hear from the plaintiffs?  It's
11:26:59 12   probably best for the plaintiffs to address
11:26:59 13   all of the points raised collectively by
11:27:07 14   defendants.
11:27:07 15          MR. REINES:  No, Your Honor;
11:27:07 16   this is Ed Reines.  There's nothing further.
11:27:11 17   We would follow through with the depositions,
11:27:12 18   you know, in the event of a stay.
11:27:20 19          THE COURT:  All right, that's
11:27:21 20   good to know.  Let me hear, then, on behalf
11:27:24 21   of the Helios plaintiffs.
11:27:28 22          MR. DEVLIN:  Thank you, Your
11:27:30 23   Honor.  This is Tim Devlin on behalf of
11:27:31 24   Helios.
```

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

24

```
11:27:33  1          I think I'll try this in three
11:27:36  2   parts.  One is some timeline issues starting
11:27:39  3   at the hearing on January 5th; nothing
11:27:39  4   before, and we're happy to let that lie, Your
11:27:42  5   Honor, as well.  We appreciate the Court's
11:27:45  6   guidance on that.  But there are some
11:27:49  7   catching up in terms of the timeline since
11:27:50  8   then, then talk a little bit about the
11:27:51  9   substance of how these inventors' depositions
11:27:54 10   might play into this case, and then a
11:27:56 11   proposal at the end, Your Honor, for a
11:27:57 12   different way that this could be resolved in
11:28:00 13   a way that's not prejudicial on not only
11:28:05 14   Helios, but its back-end partners and so
11:28:11 15   forth.
11:28:11 16          So in terms of timeline, Your
11:28:13 17   Honor, during the January 5th teleconference,
11:28:16 18   the Court offered the notion of doing two
11:28:20 19   parallel tracks, getting started on the
11:28:23 20   letters rogatory and whatever other Hague
11:28:27 21   Convention and foreign discovery might be
11:28:31 22   necessary in parallel with the process that
11:28:33 23   we undertook, which is the parties
11:28:36 24   constructing communication and sending that
```

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

25

11:28:37 1  off and so forth.
11:28:38 2          And the defendants declined to
11:28:40 3  do that, and part of that declination was the
11:28:44 4  specific notion that they had time to do this
11:28:47 5  without moving the schedule.  They didn't say
11:28:50 6  without moving the schedule, but it was
11:28:50 7  certainly implied.  The quote from the
11:28:51 8  transcript is, "We are in a position where we
11:28:52 9  could turn around pretty quickly once we're
11:28:55 10  required if it becomes necessary.  But as a
11:28:59 11  practical matter, we would really hate to
11:29:02 12  have to pull the trigger if it can be
11:29:05 13  avoided, at least with respect to the
11:29:08 14  inventors."
11:29:09 15          If they had said something
11:29:09 16  different then, we would have reacted
11:29:11 17  differently, because we do care about the
11:29:12 18  schedule for a lot of reasons I'll get to in
11:29:14 19  a minute.  And maybe the defendants thought
11:29:16 20  that position was fine, they would have time
11:29:18 21  and could still get this done before the
11:29:20 22  close of fact discovery at the time.  I don't
11:29:23 23  know.  But they made that representation.  It
11:29:28 24  certainly impacted how we went forward and

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

26

11:29:30 1  what we agreed to and what we would have
11:29:33 2  argued at that hearing if we knew then that
11:29:35 3  the defendants' alternative was really to
11:29:37 4  blow this whole schedule out for six months
11:29:40 5  and then more, of course.
11:29:41 6          What happened subsequent to
11:29:43 7  that was a few weeks later, we filed our
11:29:45 8  preliminary response, which made this *Fintiv*
11:29:49 9  factor argument and noted the relative dates
11:29:51 10  of the schedule and so forth.  Apparently at
11:29:54 11  that point, the defendants pick up on the
11:29:56 12  fact that moving these dates would be
11:29:59 13  beneficial with what's going on in the PTAB.
11:30:01 14          And Your Honor, to be clear,
11:30:02 15  one little footnote, that was poorly worded
11:30:05 16  sentence on our part in terms of evidence
11:30:09 17  being used.  What we meant to say is we don't
11:30:11 18  anticipate and we would not even revisit now
11:30:14 19  the questions of whether the defense would
11:30:17 20  use this testimony in the PTAB proceeding.
11:30:18 21  What we meant to say is the process of
11:30:21 22  getting these depositions done and moving the
11:30:23 23  schedule later will help their arguments on
11:30:26 24  these *Fintiv* factors.

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

27

11:30:28 1          So I'm only saying that to kind
11:30:31 2  of close the loop on that one and let the
11:30:33 3  Court know we don't really see a major issue
11:30:35 4  in terms of use of testimony here versus
11:30:37 5  there.  That's not what we were trying to get
11:30:39 6  at.  That's our fault; that's a very poorly
11:30:43 7  worded sentence.
11:30:45 8          THE COURT:  I have to admit you
11:30:48 9  confused me by that, and I was looking for
11:30:49 10  some support in the record with the former
11:30:52 11  impression that I had, which you've
11:30:54 12  clarified.
11:30:54 13          But while we're on this point,
11:30:56 14  here's another sticking point for me, and
11:30:58 15  it's more of a practical one than one
11:31:02 16  embedded in rules of procedure or substantive
11:31:07 17  issues in the case, and it goes to this
11:31:12 18  timeline argument that you've just made.
11:31:14 19          The reason that I understood in
11:31:18 20  my recollection -- and certainly if you have
11:31:19 21  a different recollection, I don't have the
11:31:22 22  full transcript up in front of me, but I
11:31:25 23  could get to it from our January 5th hearing.
11:31:29 24  The whole point of defendants not wanting to

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

28

11:31:32 1  put it on the parallel track as I suggested
11:31:34 2  was cost and expense.  It was concern that
11:31:41 3  when the original communications went out to
11:31:43 4  the inventors trying to secure them
11:31:46 5  voluntarily, and I believe those
11:31:48 6  communications were sent by plaintiffs in
11:31:50 7  October, the defendants in their view -- and
11:31:55 8  again, I'm trying to just recite objectively
11:31:59 9  the facts as I'm recalling them, and again,
11:32:02 10  you may disagree -- but in defendants' view,
11:32:06 11  the way those communications went, they were
11:32:09 12  skewed to deter in a way or discourage rather
11:32:16 13  than encourage the inventors to participate
11:32:20 14  voluntarily by suggesting that the defendants
11:32:22 15  really wanted to get them under oath at
11:32:24 16  deposition.
11:32:25 17          And the whole point of trying a
11:32:30 18  second round of communications and not yet
11:32:33 19  pulling the trigger on the parallel track of
11:32:36 20  foreign process under the Hague or letters
11:32:39 21  rogatory was to save some costs and see if
11:32:43 22  the plaintiffs reaching out again and
11:32:48 23  reminding everyone of the obligations to
11:32:51 24  cooperate under these assignment agreements

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

29

11:32:53 1 and related agreements would cause the
11:32:59 2 inventors to step back, take a pause and say,
11:33:01 3 you know what, maybe it's better that we just
11:33:04 4 get this done and over with voluntarily
11:33:06 5 rather than having to wait for the inevitable
11:33:10 6 foreign process to reach us.  Well,
11:33:13 7 apparently that didn't work, so we're here
11:33:15 8 today.
11:33:15 9          But here's the sticking point,
11:33:16 10 going back to my earlier comments.  It seems
11:33:22 11 to me the plaintiffs are the one with the
11:33:24 12 leverage here.  You've got these agreements,
11:33:27 13 you're pushing and prosecuting and litigating
11:33:29 14 these patents.  You're the one with the
11:33:31 15 leverage to encourage these inventors to step
11:33:34 16 up and get it over with and give their
11:33:38 17 testimony in this case.
11:33:39 18          Even though plaintiffs may not
11:33:40 19 want it or plaintiffs may not see a need for
11:33:43 20 it to enhance or prosecute plaintiffs' case
11:33:49 21 in chief, you're aware that the defendants
11:33:53 22 certainly want it, and it's now even clearer
11:33:55 23 on this record than it was at the previous
11:33:59 24 court conference why the defendants want this

          Jennifer M. Guy, RPR
          (484) 467-4359
          jenniferguyrpr@gmail.com

30

11:34:02 1 testimony with respect to certain defenses
11:34:06 2 under Section 102(f) for alleged deliberate
11:34:11 3 concealment of other inventors or alleged
11:34:14 4 inequitable conduct, all of these issues in
11:34:18 5 the case that are important to the
11:34:19 6 defendants' case in chief are offered in
11:34:23 7 support of why they need these inventor
11:34:26 8 depositions.
11:34:26 9          But going back to the original
11:34:29 10 point, plaintiffs, if you want to preserve
11:34:30 11 this schedule, I'm missing the point as to
11:34:33 12 why you're not doing everything in your power
11:34:35 13 to get these inventors to step up and testify
11:34:40 14 without the need for all of this process.  If
11:34:43 15 the plaintiffs are so convinced that this
11:34:46 16 schedule, particularly the trial date,
11:34:49 17 doesn't need to be moved, you know, I think
11:34:51 18 the time is long past for the plaintiffs to
11:34:55 19 light a fire under these inventors
11:34:57 20 voluntarily.
11:34:58 21          And so I'm not real warm to
11:35:01 22 your arguments that the defendants' delay
11:35:07 23 puts us in this spot and jeopardizes the
11:35:12 24 trial date solely on the shoulders of the

          Jennifer M. Guy, RPR
          (484) 467-4359
          jenniferguyrpr@gmail.com

31

11:35:14 1 defendants.  I think the plaintiffs, and
11:35:16 2 maybe I'm missing something here, maybe
11:35:18 3 there's something -- and I'm not asking you
11:35:20 4 to disclose anything that's privileged, but
11:35:22 5 maybe I'm just missing why the plaintiffs
11:35:25 6 aren't doing anything they can to light a
11:35:27 7 fire under these inventors and preserve this
11:35:29 8 trial date, if that's your primary argument
11:35:32 9 in opposition to having the Court take up the
11:35:35 10 defendants' proposal, push out deadlines and
11:35:38 11 issue this process.
11:35:40 12          MR. DEVLIN:  Thanks, Your
11:35:42 13 Honor.  I appreciate the opportunity to
11:35:44 14 address that.  The problem is we don't have
11:35:46 15 any power here.  That's fundamentally the
11:35:48 16 issue.  These are private citizens of foreign
11:35:52 17 countries that are three degrees removed from
11:35:58 18 Helios, two degrees removed from Ideahub, its
11:36:02 19 parent and also plaintiffs here.  And the
11:36:06 20 agreements simply don't allow us to force
11:36:08 21 them to do anything.  We just can't.  We have
11:36:10 22 asked.
11:36:12 23          And the notion, Your Honor,
11:36:15 24 there's a defendants' position about those

          Jennifer M. Guy, RPR
          (484) 467-4359
          jenniferguyrpr@gmail.com

32

11:36:17 1 early communications.  But we weren't trying
11:36:19 2 to prevent the inventors from testifying.
11:36:25 3 We're not trying to do anything pro or con in
11:36:28 4 the sense of, you know, putting our thumb on
11:36:32 5 the scale.
11:36:38 6          And we don't think our -- the
11:36:38 7 notion that those original communications
11:36:41 8 were designed to poison the well is a
11:36:43 9 fabrication.  It really is.  That is not our
11:36:47 10 intent.  We were trying to work with
11:36:49 11 defendants and do more than we had the legal
11:36:51 12 power to do or would be required to do under
11:36:54 13 those contracts.  We were operating in good
11:36:58 14 faith trying to work together, trying to
11:37:00 15 compromise, showing the defendants, looked,
11:37:02 16 we've asked, we don't have this power; so
11:37:04 17 that they could go forward and do whatever
11:37:06 18 they needed to do under the available
11:37:12 19 procedures to get that going.
11:37:14 20          And so, you know, the notion
11:37:17 21 that we're sitting on some rights or sitting
11:37:24 22 on some power that we have, it just doesn't
11:37:28 23 connect with the actual facts and the rights
11:37:32 24 that we have, the powers that we have, and

          Jennifer M. Guy, RPR
          (484) 467-4359
          jenniferguyrpr@gmail.com

33

11:37:38 1  the obligation that the defendants have.
11:37:42 2          And it's not just this issue.
11:37:45 3  I don't want to get back into the whole
11:37:48 4  recitation of what happened back in September
11:37:49 5  and October.  It had these agreements since
11:37:52 6  then, since September.  They've had all the
11:37:54 7  information.  And even when some of the
11:37:58 8  inventors had expressed a willingness to
11:38:02 9  testify, the defendants didn't take advantage
11:38:07 10 of that.  Now, one was a narrow window,
11:38:09 11 totally agreed.  And we don't know what
11:38:12 12 happened with that gentleman, that inventor
11:38:13 13 who was under contract -- look, I'm
11:38:16 14 terminating the contract -- we're not sure if
11:38:18 15 it was because he didn't want to be deposed
11:38:20 16 or some other reason; we just don't know,
11:38:22 17 Your Honor.  But that was a narrow window.
11:38:25 18         But they never took any steps
11:38:28 19 at that time to even take those inventors'
11:38:30 20 depositions.  And so the concept that that
11:38:32 21 all falls on our shoulders now and that
11:38:35 22 somehow we're not doing something that we
11:38:37 23 should do really conflicts with what has gone
11:38:43 24 on in the past few months.

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

34

11:38:46 1          And all I was saying in terms
11:38:48 2  of the January hearing date was we set a
11:38:51 3  process after that date that was relatively,
11:38:54 4  I don't want to say leisurely, but it wasn't
11:38:57 5  urgent.  It was not urgent in the sense that
11:38:59 6  the defendants said, look, we need to figure
11:39:02 7  this out now or else we're going to have to
11:39:05 8  get this process going, which we agreed we
11:39:08 9  would do what we could to help them avoid the
11:39:12 10 cost and expense, that's okay.  But if we
11:39:15 11 knew that the back-end issue was that they
11:39:17 12 were going to argue for a six-month delay, we
11:39:20 13 could have done a lot a month ago.  We could
11:39:23 14 have hustled that process along.  We could
11:39:25 15 have skipped the status conference and the
11:39:28 16 Court could have simply ordered that if the
11:39:31 17 word came back that the inventors weren't
11:39:33 18 going to cooperate, then that discovery goes
11:39:35 19 out by mid January, which would have been
11:39:39 20 four months before the close of fact
11:39:40 21 discovery here.
11:39:42 22         So, you know, it's just --
11:39:46 23 that's my response, Your Honor.  And I can
11:39:49 24 pause there if Your Honor has further

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

35

11:39:51 1  questions, or I can hit some other points
11:39:53 2  that I think are important to deciding this
11:39:56 3  issue and maybe a compromise that would
11:39:58 4  satisfy everybody.
11:39:59 5          THE COURT:  Yeah, why don't you
11:40:00 6  go on.  I don't think it really advances the
11:40:03 7  ball here to get into what defendants did and
11:40:05 8  what plaintiffs did and how, you know, this
11:40:08 9  could have been moved ahead and I could have
11:40:10 10 had the papers in front of me before February
11:40:12 11 24, where we are now.  So let's move on and
11:40:16 12 let's try to find a resolution to this.
11:40:18 13         MR. DEVLIN:  Thank you, Your
11:40:19 14 Honor.  So just to contextualize it a little
11:40:19 15 bit in terms of what these inventors are
11:40:27 16 relevant to, the defendants have articulated
11:40:29 17 a couple of issues.  In terms of the volume
11:40:31 18 of work in a patent case, they're relatively
11:40:35 19 narrow issues.  The vast bulk of issues in a
11:40:40 20 patent case are completely agnostic to
11:40:43 21 inventor testimony.  The issue of
11:40:45 22 infringement, an objective standard, person
11:40:48 23 of ordinary skill in the art, it has nothing
11:40:50 24 to do whether the inventors think there's

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

36

11:40:53 1  infringement or not.  Anticipation is that
11:40:54 2  same way.  Obviousness.
11:40:54 3          THE COURT:  These are the
11:40:56 4  arguments made in any case.  Defendants want
11:40:58 5  witnesses, whether it's patents cases, a
11:41:01 6  civil rights case, whatever, and the
11:41:03 7  plaintiffs come back and say, oh, they don't
11:41:05 8  need them, and there's other ways to gain the
11:41:08 9  discovery that will advance those defenses.
11:41:10 10 I mean, these are tried and true arguments.
11:41:15 11 And you know what, on a dispute like this, I
11:41:18 12 fortunately don't have to resolve the merits
11:41:21 13 of that.
11:41:22 14         MR. DEVLIN:  Your Honor, I'm
11:41:22 15 sorry.
11:41:23 16         THE COURT:  All I know is I
11:41:25 17 have a party, multiple parties between the
11:41:27 18 Vudu and Showtime defendants, who are telling
11:41:28 19 me and giving me reasonably plausible reasons
11:41:35 20 for why the inventor depositions are
11:41:37 21 important to them.  I fully acknowledge that
11:41:40 22 plaintiffs may disagree with those reasons,
11:41:42 23 plaintiffs may feel they lack merit, and
11:41:46 24 plaintiffs themselves find no reason that

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

37

11:41:48 1 they would ever need to call any of these
11:41:52 2 eight inventors to satisfy their burden of
11:41:55 3 proof in the infringement part of the case.
11:41:57 4 So putting that aside for the
11:42:03 5 moment, this is not a merits argument. We've
11:42:05 6 got one side wanting depositions; plaintiffs
11:42:07 7 saying we'll do what we can to help you but
11:42:10 8 we've run out of steam; we can't do any more,
11:42:14 9 but we don't want to move the schedule. So
11:42:16 10 where does that leave the Court? How do we
11:42:19 11 find a resolution?
11:42:20 12 MR. DEVLIN: Thank you, Your
11:42:20 13 Honor. I apologize. Let me give you the
11:42:23 14 solution first and then back into it. I'm
11:42:25 15 not arguing that these depositions should not
11:42:28 16 take place. I'm not arguing that there's
11:42:31 17 zero relevance. I'm not arguing that at all;
11:42:31 18 not going there.
11:42:34 19 Here's where I'm going.
11:42:35 20 There's plenty of time in the schedule.
11:42:37 21 There's a long delay between the current
11:42:39 22 close of fact discovery and the first expert
11:42:41 23 reports, like, six weeks. There's another
11:42:44 24 lengthy set of delays between the later

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

38

11:42:46 1 subsequent rounds of reports; the dispositive
11:42:48 2 motion deadline is not until October.
11:42:51 3 There's plenty of time to make some
11:42:53 4 adjustments, and all I was going to suggest,
11:42:55 5 Your Honor, is the defendants proceed with
11:42:57 6 what they're doing now and we'll go down that
11:43:00 7 path, and we can either keep the current
11:43:03 8 schedule and do some minor supplementation on
11:43:06 9 the issues that the defendants have raised,
11:43:08 10 because the vast bulk of expert reports and
11:43:10 11 everything else are going to be unaffected.
11:43:13 12 That's all I was saying. Infringement,
11:43:15 13 obviousness, anticipation, they're not going
11:43:17 14 to be affected by inventor testimony.
11:43:20 15 Some issues will. The
11:43:21 16 defendants here have articulated cognizable
11:43:25 17 legal claims that they are making that the
11:43:25 18 inventor testimony is relevant to.
11:43:27 19 Absolutely. They're relatively narrow, and
11:43:30 20 we can easily fit either supplementations in
11:43:33 21 or some adjustment like that into this
11:43:36 22 schedule that keeps everything going forward
11:43:39 23 largely as is, and certainly keeps the
11:43:41 24 dispositive motion date and onward.

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

39

11:43:44 1 And the reason we want to do
11:43:45 2 that, Your Honor, is this trial date is
11:43:47 3 really important to us. It is a
11:43:50 4 non-practicing entity, but with COVID, one of
11:43:53 5 the risks that we run is if we take that date
11:43:56 6 off the calendar, we don't know how the
11:43:58 7 district court is going to handle its
11:44:00 8 schedule next year. But one of the options
11:44:02 9 is if you lose your date, you go to the back
11:44:05 10 of the line, and the back of the line could
11:44:07 11 be very, very far out, and doing that would
11:44:10 12 be significant to Helios. And whether it's
11:44:13 13 significant in a way that we would all
11:44:14 14 normally say, well, that's irreparable harm
11:44:18 15 or not, that's not the standard we're talking
11:44:20 16 about here. We're just balancing interests
11:44:22 17 right now, and we can get these depositions
11:44:24 18 down without kicking the whole schedule six
11:44:28 19 months. That's really what I'm saying, Your
11:44:30 20 Honor. It's easily done, given the current
11:44:32 21 schedule that we have.
11:44:35 22 THE COURT: Let me interrupt
11:44:37 23 there, and I appreciate your creative
11:44:40 24 thinking, so to speak, in trying to salvage

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

40

11:44:43 1 part of the schedule and nonetheless get
11:44:49 2 these inventor depositions in.
11:44:53 3 As I look at the current
11:44:55 4 scheduling dates and the proposed amended
11:44:59 5 scheduling dates, the dates for purposes of
11:45:02 6 my question to you that I'm going to focus on
11:45:08 7 is the dispositive motion deadline, which is
11:45:12 8 October 17 of 2021. And as we all know and
11:45:16 9 are familiar with Judge Connolly's scheduling
11:45:19 10 practices, as I think with all district
11:45:21 11 judges on this court and the magistrate
11:45:26 12 judges, if you move a dispositive motion
11:45:28 13 date, you lose that trial date, because no
11:45:32 14 judge will let that dispositive motion date
11:45:35 15 be pushed out and unfairly compress the time
11:45:39 16 that that district judge has to decide a
11:45:39 17 dispositive motion before the pretrial
11:45:41 18 conference and trial. So that's our critical
11:45:43 19 mass date for October 17 of this year.
11:45:45 20 Opening expert reports are
11:45:48 21 presently baked into the schedule to be done
11:45:51 22 on July 1st. But I suppose in some respects
11:45:55 23 there may be some traction to what you're
11:45:57 24 saying in terms of adjustments or

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

41

| | |
|---|---|
| 11:46:04 | 1 supplementation of those reports sufficiently |
| 11:46:07 | 2 in advance that they wouldn't disrupt the |
| 11:46:09 | 3 dispositive motion date, hypothetically. |
| 11:46:12 | 4 So with that, and I realize you |
| 11:46:14 | 5 don't have a crystal ball, but assuming that |
| 11:46:20 | 6 defendants get me the process that I need to |
| 11:46:22 | 7 sign next week, and I typically look at it |
| 11:46:25 | 8 immediately or within 24 hours of it being on |
| 11:46:27 | 9 the docket -- because I know that these |
| 11:46:29 | 10 things take a while and they need to be done |
| 11:46:32 | 11 as expeditiously as possible -- if there |
| 11:46:35 | 12 aren't any objections or issues with it that |
| 11:46:37 | 13 I have to resolve and it's stipulated that |
| 11:46:40 | 14 there's no objection to the form of the |
| 11:46:47 | 15 process, then I will issue that promptly. |
| 11:46:49 | 16 In terms of the timeline, |
| 11:46:51 | 17 what's your best estimate as to when the |
| 11:46:53 | 18 depositions of all eight inventors might be |
| 11:46:56 | 19 completed in relation to this case |
| 11:47:03 | 20 dispositive motion deadline in October? |
| 11:47:05 | 21 What's your best guess? I don't know if you |
| 11:47:07 | 22 have any experience. Most of this process |
| 11:47:09 | 23 usually involves inventors in Europe. But do |
| 11:47:12 | 24 you have any experience with Korea and Japan |

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

42

| | |
|---|---|
| 11:47:15 | 1 in terms of turnaround time once the process |
| 11:47:18 | 2 hits the foreign jurisdiction? |
| 11:47:24 | 3 MR. LIEBERMAN: Your Honor, I |
| 11:47:25 | 4 don't know if the question was directed to me |
| 11:47:28 | 5 or Mr. Devlin. |
| 11:47:30 | 6 THE COURT: To Mr. Devlin |
| 11:47:32 | 7 first, but I'll give you a chance after he |
| 11:47:35 | 8 addresses it to have your say, Mr. Lieberman. |
| 11:47:37 | 9 MR. LIEBERMAN: Thank you. |
| 11:47:38 | 10 MR. DEVLIN: Your Honor, I have |
| 11:47:40 | 11 done this -- I've certainly taken many |
| 11:47:43 | 12 depositions in Korea and in the U.S. Embassy |
| 11:47:48 | 13 or Consulate in Japan where it has to take |
| 11:47:53 | 14 place. We're obviously skipping that step |
| 11:47:56 | 15 here if that's going to help. Through |
| 11:47:57 | 16 letters rogatory or the Hague process, I've |
| 11:47:59 | 17 only done it once or twice, and it's always |
| 11:48:00 | 18 been about a three- or four-month process |
| 11:48:02 | 19 overall, but that includes getting the |
| 11:48:04 | 20 documents into the U.S. District Court's |
| 11:48:07 | 21 hands. And given now that we're going to be |
| 11:48:10 | 22 doing these over video, that's going to help |
| 11:48:12 | 23 considerably. |
| 11:48:13 | 24 So I would expect that we would |

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

43

| | |
|---|---|
| 11:48:15 | 1 be able to get these depositions done by, |
| 11:48:17 | 2 it's possibly as early as April, but |
| 11:48:20 | 3 certainly by May and June I would expect them |
| 11:48:22 | 4 all to take place under a normal |
| 11:48:26 | 5 circumstance. Obviously we're not in a |
| 11:48:28 | 6 normal circumstance here, but in some ways |
| 11:48:30 | 7 that makes it easier rather than harder, |
| 11:48:33 | 8 speaking of the pandemic, I mean, because |
| 11:48:35 | 9 we're not going to be doing these in person. |
| 11:48:37 | 10 And one thing we might do, Your |
| 11:48:39 | 11 Honor, is simply get that process going, see |
| 11:48:41 | 12 where we are in a couple of months, two, |
| 11:48:44 | 13 three months, and have a conference then and |
| 11:48:46 | 14 say what's happening, are any of these |
| 11:48:48 | 15 scheduled, did you get them done, is it |
| 11:48:50 | 16 looking like November, whatever the status |
| 11:48:52 | 17 is, and then we can revisit the scheduling |
| 11:48:55 | 18 order and see what, if anything, needs to be |
| 11:48:58 | 19 done. And if something could be done that's |
| 11:49:00 | 20 less severe than bumping everything back a |
| 11:49:03 | 21 half a year, then we could have a lot more |
| 11:49:06 | 22 information to roll up our sleeves and |
| 11:49:12 | 23 pinpoint what that might be at that time. |
| 11:49:16 | 24 THE COURT: Before you go on to |

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

44

| | |
|---|---|
| 11:49:15 | 1 any -- well, do you have any other comments |
| 11:49:17 | 2 before I hear from Mr. Lieberman specifically |
| 11:49:20 | 3 on this proposal to try and maintain the |
| 11:49:24 | 4 schedule intact but for potentially pushing |
| 11:49:28 | 5 out or carving out an extension? One |
| 11:49:34 | 6 proposal I might make is carving out an |
| 11:49:37 | 7 extension of the fact discovery completion |
| 11:49:40 | 8 date solely for the completion of the expert |
| 11:49:43 | 9 depositions, and then if that turns out to |
| 11:49:45 | 10 have an effect on the balance of the |
| 11:49:47 | 11 schedule, addressing it when it comes up. |
| 11:49:49 | 12 But let me put that thought on pause for a |
| 11:49:54 | 13 moment and ask you, Mr. Devlin, is anything |
| 11:49:57 | 14 further before I hear from Mr. Lieberman? |
| 11:49:59 | 15 MR. DEVLIN: No, Your Honor, |
| 11:50:00 | 16 other than to say I think you just said |
| 11:50:02 | 17 moving out the dates for expert depositions. |
| 11:50:05 | 18 I think you probably meant inventor -- |
| 11:50:07 | 19 THE COURT: Inventor, yes. |
| 11:50:09 | 20 MR. DEVLIN: Exactly. |
| 11:50:09 | 21 THE COURT: I misspoke. |
| 11:50:10 | 22 MR. DEVLIN: Yeah. That's |
| 11:50:11 | 23 great. And I just wanted to make sure we're |
| 11:50:13 | 24 on the same page; just a sanity check. |

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

45

| | |
|---|---|
| 11:50:19 | 1 | The only other thing I would
| 11:50:19 | 2 | say, Your Honor, is that we would be very
| 11:50:21 | 3 | flexible with coming up with solutions just
| 11:50:22 | 4 | like that. If for some reason we needed to
| 11:50:26 | 5 | push back expert report deadlines for a
| 11:50:26 | 6 | couple of weeks or something or issue them on
| 11:50:28 | 7 | all other issues but then these issues they
| 11:50:32 | 8 | get pushed back a little bit, anything like
| 11:50:33 | 9 | that, we would certainly be amenable to doing
| 11:50:36 | 10 | that, and we will work cooperatively with the
| 11:50:39 | 11 | defendants and the Court to find a solution
| 11:50:41 | 12 | to this that retains that dispositive motion
| 11:50:45 | 13 | date, as Your Honor suggested. But other
| 11:50:47 | 14 | than that, nothing further, Your Honor; thank
| 11:50:49 | 15 | you.
| 11:50:49 | 16 | THE COURT: Mr. Lieberman, you
| 11:50:54 | 17 | wanted to address my first question, which
| 11:50:56 | 18 | was just giving the Court a sense of the
| 11:50:59 | 19 | estimate of turnaround time to get the
| 11:51:00 | 20 | process issued in the foreign jurisdiction
| 11:51:03 | 21 | and get the inventors somewhere where they
| 11:51:05 | 22 | can give a remote deposition, if you have any
| 11:51:08 | 23 | basis to estimate that for the Court. And
| 11:51:10 | 24 | then you can address the other creative

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

46

| | |
|---|---|
| 11:51:13 | 1 | solutions that we were talking about that
| 11:51:17 | 2 | didn't involve disruption or rescheduling of
| 11:51:19 | 3 | the entirety of the balance of the schedule
| 11:51:21 | 4 | as a whole.
| 11:51:25 | 5 | MR. LIEBERMAN: So first,
| 11:51:26 | 6 | Mr. Devlin's speculation regarding timing is
| 11:51:31 | 7 | I would submit entirely unmoored from data or
| 11:51:38 | 8 | reality. The state department guidelines,
| 11:51:40 | 9 | which we attached as Exhibit H to docket
| 11:51:43 | 10 | number 79, which was the submission we made
| 11:51:46 | 11 | on December 21, 2020, talk about the letters
| 11:51:49 | 12 | rogatory process taking up to a year. Now,
| 11:51:52 | 13 | we don't expect it's going to take up to a
| 11:51:55 | 14 | year because I suspect that that reflects
| 11:51:55 | 15 | some of the more uncooperative countries like
| 11:52:03 | 16 | China where letters rogatory requests or
| 11:52:06 | 17 | Hague Convention requests go into the
| 11:52:09 | 18 | government maw there, never to be seen again.
| 11:52:11 | 19 | But in my experience, you're talking about a
| 11:52:13 | 20 | minimum of six months, which is why we asked
| 11:52:15 | 21 | for a six-month extension.
| 11:52:18 | 22 | There are a lot of things that
| 11:52:21 | 23 | have to happen. You issue the process. It
| 11:52:25 | 24 | goes to the state department; the state

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

47

| | |
|---|---|
| 11:52:26 | 1 | department has to serve it on the relevant
| 11:52:29 | 2 | judicial authorities. Those authorities then
| 11:52:31 | 3 | have to issue a process. They have to pick a
| 11:52:34 | 4 | judge in Japan. There are all sorts of
| 11:52:37 | 5 | things that have to happen. And the idea
| 11:52:39 | 6 | that Mr. Devlin said maybe there could be
| 11:52:41 | 7 | depositions in April, maybe I can jump out
| 11:52:45 | 8 | the window and flap my arms and fly. It's
| 11:52:49 | 9 | not going to happen. And he's got no data to
| 11:52:52 | 10 | suggest that that ever happens. So we're
| 11:52:56 | 11 | really talking about a virtual certainty of
| 11:53:02 | 12 | six months until these depositions are
| 11:53:04 | 13 | scheduled to take place.
| 11:53:11 | 14 | Number two, the problem with
| 11:53:15 | 15 | some of the creative solutions that
| 11:53:16 | 16 | Mr. Devlin postulated is it's going to vastly
| 11:53:19 | 17 | increase the cost of this case and the burden
| 11:53:21 | 18 | on the Court. What are we supposed to do,
| 11:53:25 | 19 | submit two sets of expert reports, one
| 11:53:29 | 20 | without inventor testimony and then one with
| 11:53:31 | 21 | inventor testimony? Let's assume that we
| 11:53:37 | 22 | would hold off on 102(f) and inequitable
| 11:53:42 | 23 | conduct and improper inventorship until a
| 11:53:46 | 24 | second round of expert reports. How do we

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

48

| | |
|---|---|
| 11:53:48 | 1 | know whether the inventor testimony
| 11:53:50 | 2 | regarding, for example, what the prior art
| 11:53:58 | 3 | standard and what they learned from, you
| 11:54:00 | 4 | know, what they learned from the people at
| 11:54:02 | 5 | these standard setting meetings, how do we
| 11:54:06 | 6 | know that that's not going to be relevant to
| 11:54:08 | 7 | issues of 103?
| 11:54:16 | 8 | And not to spin up an
| 11:54:18 | 9 | additional issue, but frankly, Your Honor,
| 11:54:19 | 10 | there are 101 issues in this case that are
| 11:54:21 | 11 | not appropriately raised, I think, until
| 11:54:28 | 12 | there's some factual record of what's known
| 11:54:31 | 13 | in the art. It may well be that there are
| 11:54:31 | 14 | going to be 101 issues raised on summary
| 11:54:34 | 15 | judgment after the inventor testimony. And
| 11:54:35 | 16 | what defenses we choose to put forward and in
| 11:54:42 | 17 | what order and how we intend to stress them,
| 11:54:46 | 18 | how we select them, how we intend to order
| 11:54:48 | 19 | them, that's all going to be potentially
| 11:54:50 | 20 | affected by the inventor testimony. It's not
| 11:54:53 | 21 | like we can submit a three-page supplement
| 11:54:55 | 22 | covering the sales that have taken place in
| 11:54:57 | 23 | the last three months before trial. This
| 11:55:01 | 24 | affects all of the substantive issues.

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

49

```
11:55:03   1          So I would say there are two
11:55:05   2   categories of responses.  One, it can't
11:55:07   3   possibly get done in the time period that
11:55:10   4   Mr. Devlin is talking about.  It can't
11:55:15   5   possibly get done.  And the second is, you
11:55:17   6   know, to try to slice and dice interim dates
11:55:22   7   on certain subjects, you know, expert reports
11:55:24   8   on this and expert reports on that -- we're
11:55:26   9   going to have experts redeposed, we're going
11:55:29  10   to have second rounds of expert reports,
11:55:30  11   we're going to have all kinds of things that
11:55:32  12   the parties are going to have to do twice.
11:55:35  13   And maybe Mr. Devlin's client is not
11:55:41  14   concerned about the cost for whatever reason,
11:55:42  15   maybe the way the case is scheduled, but my
11:55:46  16   client is certainly concerned about the cost.
11:55:48  17          An efficient resolution of this
11:55:51  18   matter I suggest militates strongly in favor
11:56:00  19   of a six-month bump of the trial date.  And I
11:56:03  20   know Your Honor, or at least I think Your
11:56:04  21   Honor, based on what Mr. Blumenfeld told me,
11:56:05  22   can work with Judge Connolly and come up with
11:56:09  23   an alternate date.  It doesn't have to be
11:56:12  24   kicked sine die, it can be kicked, it can be
```

                    Jennifer M. Guy, RPR
                      (484) 467-4359
                   jenniferguyrpr@gmail.com

50

```
11:56:16   1   adjourned to a particular date.  And that's
11:56:18   2   what we would ask, so we can all do this in
11:56:21   3   sort of the normal way.
11:56:33   4          And the last point, I would
11:56:35   5   submit that the reason that you're seeing
11:56:37   6   such exertions from Mr. Devlin with respect
11:56:42   7   to keeping the trial date for today is
11:56:44   8   because he does not want the PTAB to know
11:56:48   9   that it's highly likely -- we believe
11:56:52  10   certain -- but highly likely that this case
11:56:54  11   will never be able to be tried on that date.
11:56:57  12   And that's why I think he's twisted himself
11:57:02  13   into knots to come up with something which,
11:57:05  14   A, just won't work; B, would double, I don't
11:57:08  15   know, add 60 percent of the costs on for the
11:57:10  16   defendants; and C, is unmoored from any data
11:57:16  17   regarding how long it actually takes to get
11:57:18  18   this done.
11:57:19  19          And we would submit, if you
11:57:20  20   look at Exhibit H to docket number 79 at page
11:57:24  21   1, the state department's formal statement is
11:57:26  22   this process takes up to a year.  We don't
11:57:33  23   think it'll take that long, but I don't think
11:57:33  24   you'll find anything from the state
```

                    Jennifer M. Guy, RPR
                      (484) 467-4359
                   jenniferguyrpr@gmail.com

51

```
11:57:33   1   department or any other official channels
11:57:36   2   that says you can get this stuff done in two
11:57:38   3   or three or four or five months.  It's just
11:57:41   4   not going to happen.
11:57:46   5          MR. DEVLIN:  Your Honor, if I
11:57:47   6   may briefly, two things.
11:57:49   7          THE COURT:  Go ahead.
11:57:49   8          MR. DEVLIN:  In my own
11:57:50   9   experience, those are the timeframes where it
11:57:53  10   has happened.  Not in China.  I think the
11:57:54  11   state department's statement is about China
11:57:56  12   probably or some other unusual jurisdiction.
11:58:02  13   But in terms of Japan and Korea, I think a
11:58:05  14   three-, four-, five-month timeline is doable.
11:58:08  15   We don't know, of course, and that's why I
11:58:10  16   think we cannot decide this right now.
11:58:12  17          But the other thing is this
11:58:13  18   cost issue and so forth and that this is
11:58:15  19   going to be some catastrophic cost item,
11:58:18  20   that's just wrong.  And that's what I was
11:58:21  21   getting at before, Your Honor.  Counsel
11:58:23  22   raised the issue of 103, for example.
11:58:28  23   Section 103 itself says patentability shall
11:58:32  24   not be negated by the manner in which the
```

                    Jennifer M. Guy, RPR
                      (484) 467-4359
                   jenniferguyrpr@gmail.com

52

```
11:58:37   1   invention was made.  Which is to say it
11:58:38   2   doesn't matter what's going on in the
11:58:40   3   inventor's head.  It doesn't matter what the
11:58:40   4   inventor knew; it doesn't matter whether it
11:58:43   5   was obvious to the inventor because they're a
11:58:45   6   super-genius or whether they toiled away for
11:58:45   7   20 years experimenting and finally came up
11:58:49   8   with something luckily.  None of that matters
11:58:51   9   in 103, and it doesn't matter in 102, it
11:58:54  10   doesn't matter for infringement, it doesn't
11:58:57  11   matter for equivalents.  It doesn't matter.
11:58:58  12          There are a couple of isolated
11:59:00  13   issues where inventor testimony might matter.
11:59:03  14   It can easily be segregated, if we ever even
11:59:07  15   need to get there.  The notion that it's
11:59:08  16   going to add 60 percent of the cost to the
11:59:09  17   case, talk about unmoored from data.  That's
11:59:11  18   unmoored.  It's just wrong.
11:59:13  19          So none of this needs to be
11:59:15  20   decided now.  We can issue the letters
11:59:18  21   rogatory, issue anything that needs to be
11:59:19  22   issued, see what happens in a couple of
11:59:22  23   months, see if anything needs to get moving.
11:59:25  24   There's a chance it doesn't.  There's a
```

                    Jennifer M. Guy, RPR
                      (484) 467-4359
                   jenniferguyrpr@gmail.com

53

11:59:27 1   chance some little things might need to be
11:59:29 2   tinkered with, and yes, there's a chance that
11:59:31 3   this takes a very long period of time and we
11:59:33 4   need to blow the schedule out.  We don't know
11:59:36 5   any of that now, and there's no need to blow
11:59:38 6   the schedule out.
11:59:45 7          THE COURT:  All right.  As much
11:59:47 8   as I reluctantly am doing this, I will vacate
11:59:51 9   the pretrial dates and the trial dates.  And
11:59:56 10  there's a number of reasons compelling this
11:59:59 11  result, and I will go with the proposed
12:00:03 12  amended deadline starting with a push-out of
12:00:07 13  six months of the fact discovery completion
12:00:18 14  date.  And there's a number of reasons that
12:00:20 15  are driving this.  I'm certainly receptive to
12:00:22 16  both sides' arguments and not discounting the
12:00:24 17  concerns for each side.  But here's where I
12:00:26 18  am on this.
12:00:29 19         Looking at the schedule
12:00:32 20  following my order regarding claim
12:00:34 21  construction, you've got fact discovery
12:00:37 22  completion in May, heading into expert
12:00:40 23  discovery in July, and heading into
12:00:42 24  dispositive motions in October.  Given the

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

54

12:00:47 1   pandemic that we're living under and the
12:00:51 2   restrictions on travel and personal concerns,
12:00:55 3   I don't know the age or health conditions of
12:00:59 4   any of these inventors, you know, and I know
12:01:02 5   that there will be an effort made to get
12:01:05 6   their depositions remotely in light of that,
12:01:07 7   but nonetheless, these issues are going to
12:01:10 8   take time.  If it's taken all this time when
12:01:15 9   the request for depositions have been or
12:01:19 10  should have been on the inventors' radar for
12:01:22 11  several months now -- if we're still at this
12:01:26 12  point where we haven't secured them, I fear
12:01:28 13  that even initiating the process and assuming
12:01:31 14  that that process will go as expeditiously as
12:01:35 15  is possible from all sources that must be
12:01:42 16  involved in the issuance of that process,
12:01:44 17  starting with defendants submitting it to the
12:01:46 18  Court and the Court signing off on it, I
12:01:49 19  don't have any reasonable belief that there's
12:01:54 20  any possible means of having this
12:02:01 21  accomplished within the fact discovery
12:02:01 22  completion date.  And even if that date is
12:02:05 23  pushed off by one to two months, it uproots
12:02:11 24  and derails the rest of the schedule.

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

55

12:02:18 1          I don't think it would be
12:02:19 2   productive nor efficient for the parties or
12:02:21 3   the Court to have a series of supplemental
12:02:23 4   expert reports as these depositions occur in
12:02:28 5   realtime and have such a jumbled record of
12:02:32 6   that attached potentially to dispositive
12:02:40 7   motions that would be necessary to sort
12:02:42 8   through, it just would not be efficient or
12:02:49 9   productive.  Assuming it could even be
12:02:51 10  accomplished, because in the worst-case
12:02:54 11  scenario, if it does take until November to
12:02:56 12  get these depositions completed, then the
12:02:59 13  rest of the schedule is blown of its own
12:03:02 14  accord anyway.
12:03:02 15         So the problem is none of us
12:03:05 16  have no real way of knowing, can only give
12:03:07 17  our best guess as to when this process will
12:03:09 18  be completed.  And rather than revisiting
12:03:12 19  this issue every couple of months down the
12:03:14 20  line and crossing our fingers that it's all
12:03:16 21  going to work out, I think the best thing to
12:03:19 22  do is just to clear the trial and pretrial
12:03:23 23  dates, as I said, as reluctant as I am to do
12:03:27 24  that, and go forward with an amendment of the

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

56

12:03:34 1   schedule from the dates for fact discovery
12:03:37 2   completion onward and through the deadline to
12:03:43 3   file case dispositive motions as proposed by
12:03:46 4   the defendant.  And I will ask that
12:03:48 5   defendants take the lead on providing the
12:03:53 6   Court with an amended scheduling order that
12:03:57 7   could be entered incorporating those dates.
12:04:01 8   I am not going to ask at this point that
12:04:05 9   Judge Connolly's chambers give me a date for
12:04:09 10  trial and the pretrial conference.
12:04:14 11         And let me add, before I go on,
12:04:16 12  that another compelling reason is in light of
12:04:20 13  the fact that Judge Connolly has booked ANDA
12:04:26 14  trials concurrently with this trial date, if
12:04:30 15  hypothetically all cases would not settle or
12:04:37 16  stay on track for a March trial, I think it's
12:04:40 17  correct that the ANDA cases would be given
12:04:42 18  priority, depending when the 30-month stays
12:04:47 19  expire in each of those cases.
12:04:49 20         So that's another concern, that
12:04:53 21  independently of all the arguments I've heard
12:04:56 22  on the call, there's another reason why it
12:05:00 23  doesn't really -- there's no reasonable
12:05:02 24  belief that this case would be bumped ahead

Jennifer M. Guy, RPR
(484) 467-4359
jenniferguyrpr@gmail.com

57

12:05:05 1 of two ANDA cases scheduled to start at the
12:05:08 2 same time.
12:05:11 3          But again, I can't speak for
12:05:13 4 Judge Connolly, his preferences, or his
12:05:16 5 schedule, and certainly we're far enough away
12:05:19 6 from the March trial date that I suppose
12:05:21 7 anything is possible and it could be
12:05:23 8 maintained, but nonetheless, that does weigh
12:05:26 9 in my decision.
12:05:27 10         So going forward, back to the
12:05:29 11 schedule.  Defendants will submit on or
12:05:31 12 before the close of business tomorrow the
12:05:32 13 revised or amended scheduling order
12:05:34 14 incorporating the dates on their Exhibit A
12:05:37 15 from the date of the fact discovery
12:05:40 16 completion date through the deadline for case
12:05:42 17 dispositive motions.  We will leave the
12:05:45 18 balance of the schedule from the trial
12:05:47 19 sequencing conferencing date through trial to
12:05:50 20 be determined.
12:05:52 21         But here is further what I'm
12:05:56 22 going to do, is order that the parties are
12:06:00 23 required to provide a joint status letter to
12:06:06 24 the Court on November 15, 2021, which is the

58

12:06:11 1 new fact discovery completion date, or either
12:06:17 2 on that date the joint status report is due,
12:06:20 3 or within seven days of completion of the
12:06:25 4 inventors' depositions, whichever is earlier.
12:06:28 5          So that being said, if all
12:06:32 6 things work out and the inventor depositions
12:06:38 7 are completed prior to the fact discovery
12:06:40 8 completion date of November 15, 2021, then I
12:06:43 9 want a letter at that time, within seven days
12:06:46 10 of completion of the inventors' depositions,
12:06:50 11 advising, just bringing me up to date and
12:06:52 12 advising of the status of completion of all
12:06:55 13 fact discovery, of any potential issues with
12:06:58 14 the remainder of the scheduling order, any
12:07:01 15 matters requiring the attention of the Court,
12:07:04 16 and the parties' proposed trial date range.
12:07:08 17          So once I get that, then I can
12:07:10 18 go back to Judge Connolly and look for dates
12:07:13 19 on his calendar within the range proposed by
12:07:18 20 the parties at that time.  And I recognize
12:07:22 21 that that may mean that this case is going to
12:07:24 22 be tried a lot later than it is originally
12:07:27 23 scheduled for now.  But that's the result; I
12:07:33 24 have no control over that.

59

12:07:37 1          So that is my ruling.  I guess
12:07:42 2 with respect to the process, as soon as it is
12:07:48 3 in a form to be shared with the plaintiffs
12:07:50 4 and there's no issues with it, get it over to
12:07:54 5 the Court.  If there are issues with it, then
12:07:56 6 make sure it's flagged for me, and if the
12:07:59 7 parties are wanting a status teleconference
12:08:02 8 on it in an expedited fashion, then please
12:08:05 9 make sure that's communicated to my chambers,
12:08:08 10 and we'll try and address this in very
12:08:11 11 expeditious fashion so as not to slow down
12:08:15 12 the process for getting these foreign
12:08:18 13 inventor depositions started.  I will do my
12:08:21 14 best, but no guarantees here; I've got quite
12:08:24 15 a full schedule going into March.
12:08:27 16          With that, is there anything
12:08:29 17 further from the defendants, Mr. Lieberman?
12:08:31 18          MR. LIEBERMAN:  No, Your Honor,
12:08:32 19 thank you.
12:08:34 20          THE COURT:  Anything further,
12:08:35 21 Mr. Devlin?
12:08:36 22          MR. DEVLIN:  Nothing, Your
12:08:38 23 Honor; thanks.
12:08:39 24          THE COURT:  Thank you, Counsel.

60

12:08:40 1 Stay well.  We're adjourned.
2          (Hearing adjourned at 12:08
3 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1  State of Delaware)
)
2  New Castle County)

3

4            CERTIFICATE OF REPORTER

5
6        I, Jennifer M. Guy, Registered
7  Professional Reporter and Notary Public in
8  the State of Delaware, do hereby certify that
9  the foregoing record, Pages 1 to 60
10  inclusive, is a true and accurate record of
11  the above-captioned proceedings held on
12  February 24, 2021, in Wilmington.

13

14

15      /S/  Jennifer M. Guy, RPR
        Jennifer M. Guy, RPR

16

17
18
19
20
21
22
23
24

            Jennifer M. Guy, RPR
              (484) 467-4359
          jenniferguyrpr@gmail.com

**$**

**$75,000** [1] - 17:17

**/**

**/S** [1] - 61:15

**1**

**1** [2] - 50:21, 61:9
**101** [2] - 48:10, 48:14
**102** [1] - 52:9
**102(f** [2] - 30:2, 47:22
**102(f)** [1] - 8:6
**103** [4] - 48:7, 51:22, 51:23, 52:9
**11:00** [1] - 1:15
**12:08** [1] - 60:2
**14** [1] - 10:15
**15** [2] - 57:24, 58:8
**16** [1] - 11:13
**17** [2] - 40:8, 40:19
**18** [1] - 10:17
**19-01792-CFC-SRF** [1] - 1:4
**19-01978-CFC-SRF** [1] - 1:9
**1st** [1] - 40:22

**2**

**20** [1] - 52:7
**2020** [1] - 46:11
**2021** [5] - 1:15, 40:8, 57:24, 58:8, 61:12
**2022** [2] - 10:16, 11:7
**2030** [1] - 10:4
**21** [1] - 46:11
**22** [1] - 16:18
**24** [4] - 1:15, 35:11, 41:8, 61:12
**28** [1] - 5:5

**3**

**30-month** [2] - 10:22, 56:18
**37** [2] - 4:18, 5:1
**3GPP** [1] - 8:11

**4**

**4** [1] - 16:20
**4th** [1] - 7:20

**5**

**5th** [5] - 4:15, 11:24, 24:3, 24:17, 27:23

**6**

**60** [3] - 50:15, 52:16, 61:9

**7**

**79** [1] - 46:10, 50:20

**A**

**a.m** [1] - 1:15
**ability** [1] - 11:16
**able** [5] - 9:18, 13:10, 17:9, 43:1, 50:11
**above-captioned** [1] - 61:11
**absolutely** [1] - 38:19
**accept** [1] - 19:16
**accommodate** [1] - 6:17
**accomplished** [2] - 54:21, 55:10
**accord** [1] - 55:14
**accordingly** [1] - 6:4
**accurate** [1] - 61:10
**acknowledge** [1] - 36:21
**Action** [2] - 1:3, 1:8
**actual** [1] - 32:23
**add** [5] - 7:1, 23:10, 50:15, 52:16, 56:11
**addition** [1] - 11:1
**additional** [4] - 5:14, 9:11, 48:9
**address** [8] - 17:22, 18:11, 18:12, 23:12, 31:14, 45:17, 45:24, 59:10
**addressed** [1] - 18:5
**addresses** [1] - 42:8
**addressing** [2] - 20:20, 44:11
**adjourned** [3] - 50:1, 60:1, 60:2
**adjustment** [2] -

6:16, 38:21
**adjustments** [2] - 38:4, 40:24
**admit** [1] - 27:8
**adopt** [1] - 6:5
**advance** [2] - 36:9, 41:2
**advances** [1] - 35:6
**advantage** [1] - 33:9
**adverted** [1] - 13:4
**advised** [1] - 10:16
**advising** [2] - 58:11, 58:12
**affect** [1] - 7:5
**affected** [2] - 38:14, 48:20
**affects** [1] - 48:24
**age** [1] - 54:3
**agnostic** [1] - 35:20
**ago** [2] - 11:20, 34:13
**agreed** [4] - 5:14, 26:1, 33:11, 34:8
**agreements** [11] - 4:21, 12:2, 12:9, 12:11, 28:24, 29:1, 29:12, 31:20, 33:5
**ahead** [3] - 35:9, 51:7, 56:24
**al** [3] - 1:3, 1:8, 1:11
**allegations** [1] - 15:23
**alleged** [2] - 30:2, 30:3
**allow** [2] - 9:4, 31:20
**alter** [1] - 5:22
**alternate** [1] - 49:23
**alternative** [1] - 26:3
**amenable** [1] - 45:9
**amended** [4] - 40:4, 53:12, 56:6, 57:13
**amendment** [1] - 55:24
**ANDA** [6] - 10:18, 10:21, 10:22, 56:13, 56:17, 57:1
**ANDREW** [1] - 2:1
**Andrew** [1] - 3:24
**Ansley** [1] - 4:11
**ANSLEY** [1] - 2:11
**answer** [2] - 20:2, 22:22

**anticipate** [1] - 26:18
**anticipated** [1] - 5:8
**anticipation** [2] - 36:1, 38:13
**anyway** [1] - 55:14
**apologize** [2] - 20:13, 37:13
**appear** [1] - 5:17
**APPEARANCES** [1] - 1:20
**appearances** [2] - 3:14, 4:24
**application** [1] - 5:22
**applications** [1] - 8:23
**appreciate** [3] - 24:5, 31:13, 39:23
**appropriate** [1] - 17:5
**appropriately** [1] - 48:11
**April** [3] - 21:14, 43:2, 47:7
**argue** [1] - 34:12
**argued** [1] - 26:2
**arguing** [3] - 37:15, 37:16, 37:17
**argument** [8] - 11:15, 13:19, 17:23, 20:12, 26:9, 27:18, 31:8, 37:5
**arguments** [7] - 17:24, 26:23, 30:22, 36:4, 36:10, 53:16, 56:21
**arms** [1] - 47:8
**ARSHT** [1] - 2:1
**art** [4] - 9:1, 35:23, 48:2, 48:13
**articulated** [2] - 35:16, 38:16
**aside** [2] - 4:13, 37:4
**assignment** [2] - 4:20, 28:24
**assume** [2] - 15:4, 47:21
**assuming** [5] - 5:2, 21:6, 41:5, 54:13, 55:9
**attached** [2] - 46:9, 55:6
**attempt** [1] - 4:23
**attention** [2] - 14:8,

58:15
**authorities** [3] - 9:17, 47:2
**authority** [1] - 17:6
**available** [1] - 32:18
**avoid** [1] - 34:9
**avoided** [1] - 25:13
**aware** [2] - 8:24, 29:21

**B**

**back-end** [2] - 24:14, 34:11
**background** [1] - 18:6
**baked** [1] - 40:21
**balance** [3] - 44:10, 46:3, 57:18
**balancing** [1] - 39:16
**ball** [2] - 35:7, 41:5
**based** [1] - 49:21
**basis** [1] - 45:23
**becomes** [1] - 25:10
**BEFORE** [1] - 1:18
**begin** [2] - 5:11, 19:6
**beginning** [1] - 3:6
**behalf** [3] - 6:23, 23:20, 23:23
**belief** [2] - 54:19, 56:24
**beneficial** [1] - 26:13
**best** [7] - 23:7, 23:12, 41:17, 41:21, 55:17, 55:21, 59:14
**better** [1] - 29:3
**between** [5] - 12:4, 18:7, 36:17, 37:21, 37:24
**beyond** [1] - 6:1
**big** [1] - 11:14
**bit** [3] - 24:8, 35:15, 45:8
**blow** [3] - 26:4, 53:4, 53:5
**blown** [1] - 55:13
**Blumenfeld** [2] - 10:20, 49:21
**booked** [1] - 56:13
**brakes** [1] - 19:24
**brief** [2] - 7:18, 14:7
**briefly** [1] - 51:6
**bring** [2] - 16:1, 19:21

bringing [2] - 14:7, 58:11
brought [2] - 15:7, 18:13
bulk [2] - 35:19, 38:10
bump [1] - 49:19
bumped [1] - 56:24
bumping [1] - 43:20
burden [2] - 37:2, 47:17
business [1] - 57:12
BY [5] - 1:21, 2:1, 2:4, 2:8, 2:11

**C**

calendar [2] - 39:6, 58:19
California [2] - 15:9, 15:11
cannot [1] - 51:16
captioned [1] - 61:11
care [1] - 25:17
carving [2] - 44:5, 44:6
case [41] - 5:23, 6:14, 6:17, 8:3, 8:4, 8:15, 9:6, 10:12, 10:13, 11:9, 13:9, 13:23, 15:3, 15:7, 15:23, 16:3, 18:15, 18:19, 21:21, 24:10, 27:17, 29:17, 29:20, 30:5, 30:6, 35:18, 35:20, 36:4, 36:6, 37:3, 41:19, 47:17, 48:10, 49:15, 50:10, 52:17, 55:10, 56:3, 56:24, 57:16, 58:21
cases [12] - 3:3, 10:18, 10:21, 10:22, 10:23, 11:4, 11:6, 36:5, 56:15, 56:17, 56:19, 57:1
Castle [1] - 61:2
catastrophic [1] - 51:19
catching [1] - 24:7
categories [1] - 49:2
Central [2] - 15:8,

15:11
central [1] - 15:23
certain [3] - 30:1, 49:7, 50:10
certainly [16] - 18:21, 20:7, 21:16, 22:4, 22:21, 25:7, 25:24, 27:20, 29:22, 38:23, 42:11, 43:3, 45:9, 49:16, 53:15, 57:5
certainty [1] - 47:11
CERTIFICATE [1] - 61:4
certify [1] - 61:8
chambers [2] - 56:9, 59:9
chance [4] - 42:7, 52:24, 53:1, 53:2
change [1] - 19:10
changed [1] - 7:21
channels [1] - 51:1
characterization [1] - 14:13
check [1] - 44:24
chief [2] - 29:21, 30:6
China [3] - 46:16, 51:10, 51:11
choose [1] - 48:16
chronology [3] - 11:12, 11:20, 12:17
circling [1] - 18:11
circumstance [2] - 43:5, 43:6
cited [1] - 8:19
citizens [1] - 31:16
civil [1] - 36:6
Civil [2] - 1:3, 1:8
claim [2] - 9:23, 53:20
claimed [1] - 8:6
claims [1] - 38:17
clarified [1] - 27:12
clear [4] - 6:6, 9:7, 26:14, 55:22
clearer [1] - 29:22
clerk [2] - 3:10, 20:10
CLERK [2] - 3:11, 20:9
client [2] - 49:13, 49:16
close [6] - 10:9, 25:22, 27:2, 34:20, 37:22, 57:12

cognizable [1] - 38:16
collectively [1] - 23:13
coming [1] - 45:3
comments [2] - 29:10, 44:1
communicated [2] - 7:6, 59:9
communication [3] - 5:3, 14:5, 24:24
communications [6] - 28:3, 28:6, 28:11, 28:18, 32:1, 32:7
compelling [2] - 53:10, 56:12
competition [1] - 10:1
completed [4] - 41:19, 55:12, 55:18, 58:7
completely [1] - 35:20
completion [13] - 5:24, 44:7, 44:8, 53:13, 53:22, 54:22, 56:2, 57:16, 58:1, 58:3, 58:8, 58:10, 58:12
compress [1] - 40:15
compromise [2] - 32:15, 35:3
con [1] - 32:3
concealed [1] - 8:8
concealment [1] - 30:3
conceivably [1] - 18:24
concept [1] - 33:20
concern [2] - 28:2, 56:20
concerned [2] - 49:14, 49:16
concerning [3] - 4:15, 5:6, 12:8
concerns [2] - 53:17, 54:2
conclusion [1] - 14:21
concurrently [1] - 56:14
conditions [1] - 54:3
conduct [3] - 8:17, 30:4, 47:23
conference [7] - 11:13, 20:15,

29:24, 34:15, 40:18, 43:13, 56:10
conferencing [1] - 57:19
confirmed [1] - 16:21
conflicts [1] - 33:23
confused [1] - 27:9
connect [1] - 32:23
connection [1] - 18:4
connections [1] - 12:4
Connolly [6] - 10:15, 10:17, 49:22, 56:13, 57:4, 58:18
Connolly's [3] - 10:20, 40:9, 56:9
considerably [1] - 42:23
considered [1] - 19:11
consistent [1] - 4:20
constructing [1] - 24:24
construction [1] - 53:21
Consulate [1] - 42:13
consultant [3] - 7:17, 7:22, 16:11
contextualize [1] - 35:14
contract [2] - 33:13, 33:14
contracts [1] - 32:13
control [1] - 58:24
Convention [5] - 7:10, 8:1, 11:18, 24:21, 46:17
conventions [1] - 8:6
conversation [1] - 12:14
converted [1] - 10:7
convince [1] - 5:15
convinced [1] - 30:15
cooperate [4] - 12:6, 16:15, 28:24, 34:18
cooperation [2] - 5:7, 12:10
cooperatively [1] - 45:10

correct [6] - 7:2, 15:5, 16:12, 16:15, 16:17, 56:17
correctly [1] - 7:4
cost [8] - 28:2, 34:10, 47:17, 49:14, 49:16, 51:18, 51:19, 52:16
costs [2] - 28:21, 50:15
counsel [4] - 3:14, 4:22, 7:1, 51:21
Counsel [6] - 1:23, 2:6, 2:12, 11:21, 20:9, 59:24
countries [2] - 31:17, 46:15
County [1] - 61:2
couple [9] - 13:3, 13:7, 16:24, 35:17, 43:12, 45:6, 52:12, 52:22, 55:19
course [3] - 7:8, 26:5, 51:15
COURT [29] - 1:1, 3:1, 3:9, 3:13, 3:21, 4:7, 4:12, 11:21, 16:9, 16:24, 17:21, 19:3, 20:16, 22:24, 23:19, 27:8, 35:5, 36:3, 36:16, 39:22, 42:6, 43:24, 44:19, 44:21, 45:16, 51:7, 53:7, 59:20, 59:24
Court [31] - 5:4, 6:5, 10:11, 10:16, 13:5, 17:4, 17:10, 17:20, 18:6, 18:17, 19:4, 21:6, 21:15, 21:17, 21:22, 24:18, 27:3, 31:9, 34:16, 37:10, 45:11, 45:18, 45:23, 47:18, 54:18, 55:3, 56:6, 57:24, 58:15, 59:5
court [7] - 3:6, 11:4, 14:15, 21:18, 29:24, 39:7, 40:11
Court's [3] - 16:4, 24:5, 42:20
covered [1] - 11:23

**covering** [1] - 48:22
**COVID** [3] - 9:10, 11:3, 39:4
**creative** [3] - 39:23, 45:24, 47:15
**critical** [1] - 40:18
**crossing** [1] - 55:20
**crystal** [1] - 41:5
**current** [4] - 37:21, 38:7, 39:20, 40:3
**cut** [1] - 22:8
**cut-out** [1] - 22:8

**D**

**DASH** [1] - 8:19
**data** [4] - 46:7, 47:9, 50:16, 52:17
**date** [46] - 5:24, 6:1, 6:3, 10:19, 11:9, 13:24, 14:10, 14:14, 19:13, 19:16, 30:16, 30:24, 31:8, 34:2, 34:3, 38:24, 39:2, 39:5, 39:9, 40:13, 40:14, 40:19, 41:3, 44:8, 45:13, 49:19, 49:23, 50:1, 50:7, 50:11, 53:14, 54:22, 56:9, 56:14, 57:6, 57:15, 57:16, 57:19, 58:1, 58:2, 58:8, 58:11, 58:16
**dates** [16] - 6:1, 19:6, 26:9, 26:12, 40:4, 40:5, 44:17, 49:6, 53:9, 55:23, 56:1, 56:7, 57:14, 58:18
**DAVIS** [1] - 2:4
**Davis** [1] - 4:2
**days** [2] - 58:3, 58:9
**DeAbrantes** [2] - 2:5, 4:2
**deadline** [7] - 10:23, 38:2, 40:7, 41:20, 53:12, 56:2, 57:16
**deadlines** [3] - 6:19, 31:10, 45:5
**deal** [1] - 20:6
**dearth** [1] - 11:5
**December** [1] -

46:11
**decide** [2] - 40:16, 51:16
**decided** [1] - 52:20
**deciding** [1] - 35:2
**decision** [2] - 22:7, 57:9
**decisions** [1] - 14:1
**declination** [1] - 25:3
**decline** [1] - 13:20
**declined** [1] - 25:2
**defendant** [1] - 56:4
**Defendant** [3] - 1:6, 2:6, 2:12
**defendants** [35] - 5:22, 6:16, 12:3, 17:2, 18:2, 18:18, 23:14, 25:2, 25:19, 26:11, 27:24, 28:7, 28:14, 29:21, 29:24, 31:1, 32:11, 32:15, 33:1, 33:9, 34:6, 35:7, 35:16, 36:4, 36:18, 38:5, 38:9, 38:16, 41:6, 45:11, 50:16, 54:17, 56:5, 57:11, 59:17
**Defendants** [1] - 1:12
**defendants'** [6] - 26:3, 28:10, 30:6, 30:22, 31:10, 31:24
**defense** [2] - 9:6, 26:19
**defenses** [3] - 30:1, 36:9, 48:16
**degrees** [2] - 31:17, 31:18
**DELAWARE** [1] - 1:1
**Delaware** [2] - 61:1, 61:8
**delay** [5] - 9:12, 10:5, 30:22, 34:12, 37:21
**delays** [1] - 37:24
**deliberate** [1] - 30:2
**deliberately** [1] - 8:8
**delighted** [1] - 12:22
**department** [4] - 46:8, 46:24, 47:1,

51:1
**department's** [2] - 50:21, 51:11
**dependent** [1] - 6:1
**depose** [1] - 9:5
**deposed** [6] - 7:7, 7:19, 16:19, 16:20, 23:3, 33:15
**deposition** [6] - 4:24, 7:9, 9:15, 13:11, 28:16, 45:22
**depositions** [33] - 5:10, 6:18, 9:9, 9:12, 11:17, 19:22, 21:2, 21:24, 23:17, 24:9, 26:22, 30:8, 33:20, 36:20, 37:6, 37:15, 39:17, 40:2, 41:18, 42:12, 54:6, 54:9, 55:4, 55:12, 58:4, 58:6, 58:10, 59:13
**deprived** [1] - 11:16
**derails** [1] - 54:24
**derivation** [1] - 8:5
**derived** [2] - 12:10, 18:14
**designed** [1] - 32:8
**deter** [1] - 28:12
**determined** [1] - 57:20
**develop** [1] - 9:5
**Devlin** [12] - 3:18, 3:20, 23:23, 42:5, 42:6, 44:13, 47:6, 47:16, 49:4, 50:6, 59:21
**Devlin's** [2] - 46:6, 49:13
**dice** [1] - 49:6
**die** [1] - 49:24
**different** [4] - 12:8, 24:12, 25:16, 27:21
**differently** [1] - 25:17

**difficult** [1] - 23:4
**DIGITAL** [1] - 1:11
**Digital** [1] - 2:12
**directed** [1] - 42:4
**directly** [1] - 13:9
**disagree** [2] - 28:10, 36:22
**disclose** [1] - 31:4
**discounting** [1] - 53:16
**discourage** [1] - 28:12
**discovery** [18] - 5:24, 8:3, 24:21, 25:22, 34:18, 34:21, 36:9, 37:22, 44:7, 53:13, 53:21, 53:23, 54:21, 56:1, 57:15, 58:1, 58:7, 58:13
**discretion** [1] - 13:20
**discussing** [1] - 23:2
**dispositive** [13] - 38:1, 38:24, 40:7, 40:12, 40:14, 40:17, 41:3, 41:20, 45:12, 53:24, 55:6, 56:3, 57:17
**dispute** [1] - 36:11
**disrupt** [1] - 41:2
**disrupted** [1] - 11:3
**disruption** [1] - 46:2
**district** [4] - 21:18, 39:7, 40:10, 40:16
**District** [3] - 15:8, 15:11, 42:20
**DISTRICT** [2] - 1:1, 1:1
**doable** [1] - 51:14
**docket** [3] - 41:9, 46:9, 50:20
**documents** [2] - 21:11, 42:20
**domino** [1] - 19:19
**done** [18] - 6:13, 25:21, 26:22, 29:4, 34:13, 39:20, 40:21, 41:10, 42:11, 42:17, 43:1, 43:15, 43:19, 49:3, 49:5, 50:18, 51:2
**door** [1] - 18:1

**double** [1] - 50:14
**down** [4] - 38:6, 39:18, 55:19, 59:11
**Draft** [1] - 8:19
**draft** [1] - 8:22
**driving** [1] - 53:15
**drop** [1] - 21:21
**dropped** [2] - 20:11, 20:17
**due** [1] - 58:2
**during** [1] - 24:17

**E**

**early** [3] - 12:18, 32:1, 43:2
**easier** [1] - 43:7
**easily** [3] - 38:20, 39:20, 52:14
**Ed** [1] - 23:16
**effect** [3] - 16:4, 19:19, 44:10
**efficient** [6] - 5:16, 7:3, 10:11, 49:17, 55:2, 55:8
**effort** [1] - 54:5
**eight** [3] - 11:19, 37:2, 41:18
**eighth** [1] - 7:13
**either** [3] - 38:7, 38:20, 58:1
**Embassy** [1] - 42:12
**embedded** [1] - 27:16
**employed** [1] - 8:9
**employing** [1] - 7:10
**encourage** [2] - 28:13, 29:15
**end** [4] - 17:19, 24:11, 24:14, 34:11
**ended** [1] - 22:3
**enhance** [1] - 29:20
**entered** [1] - 56:7
**entirely** [3] - 13:1, 13:19, 46:7
**entirety** [1] - 46:3
**entities** [2] - 4:8, 9:22
**entity** [1] - 39:4
**equivalents** [1] - 52:11
**ERNST** [1] - 2:3
**ESQ** [10] - 1:21, 1:22, 1:22, 2:1, 2:4, 2:4, 2:5, 2:5, 2:8, 2:11

**essentially** [1] - 12:10
**estimate** [3] - 41:17, 45:19, 45:23
**et** [3] - 1:3, 1:8, 1:11
**ETRI** [5] - 7:6, 8:10, 12:5, 16:23
**Europe** [1] - 41:23
**event** [2] - 18:17, 23:18
**events** [1] - 14:8
**eventually** [1] - 20:6
**evidence** [1] - 26:16
**exactly** [1] - 44:20
**example** [4] - 9:15, 22:3, 48:2, 51:22
**executed** [1] - 12:12
**exercise** [1] - 13:20
**exertions** [1] - 50:6
**Exhibit** [3] - 46:9, 50:20, 57:14
**expect** [3] - 42:24, 43:3, 46:13
**expectation** [1] - 17:18
**expedited** [1] - 59:8
**expeditious** [2] - 5:17, 59:11
**expeditiously** [2] - 41:11, 54:14
**expense** [2] - 28:2, 34:10
**experience** [4] - 41:22, 41:24, 46:19, 51:9
**experimenting** [1] - 52:7
**expert** [13] - 37:22, 38:10, 40:20, 44:8, 44:17, 45:5, 47:19, 47:24, 49:7, 49:8, 49:10, 53:22, 55:4
**experts** [1] - 49:9
**expire** [2] - 10:4, 56:19
**expired** [1] - 10:8
**expressed** [1] - 33:8
**extension** [10] - 9:3, 9:21, 10:13, 11:15, 13:10, 19:4, 19:17, 44:5, 44:7, 46:21

**F**

**fabrication** [1] - 32:9
**fact** [19] - 5:24, 6:11, 8:18, 13:22, 19:14, 25:22, 26:12, 34:20, 37:22, 44:7, 53:13, 53:21, 54:21, 56:1, 56:13, 57:15, 58:1, 58:7, 58:13
**factor** [1] - 26:9
**factors** [4] - 11:24, 13:21, 19:11, 26:24
**facts** [4] - 9:5, 12:16, 28:9, 32:23
**factual** [1] - 48:12
**fairly** [1] - 21:7
**faith** [1] - 32:14
**Fallon** [3] - 3:3, 20:14
**FALLON** [1] - 1:18
**falls** [1] - 33:21
**familiar** [1] - 40:9
**Fandango** [4] - 15:7, 15:12, 15:18
**far** [2] - 39:11, 57:5
**fashion** [2] - 59:8, 59:11
**fault** [1] - 27:6
**favor** [2] - 19:12, 49:18
**fear** [1] - 54:12
**February** [4] - 1:15, 10:17, 35:10, 61:12
**few** [2] - 26:7, 33:24
**Figg** [1] - 4:3
**FIGG** [1] - 2:3
**figure** [1] - 34:6
**file** [2] - 14:6, 56:3
**filed** [5] - 9:2, 13:13, 14:24, 15:1, 26:7
**finally** [1] - 52:7
**fine** [1] - 25:20
**fingers** [1] - 55:20
**Fintiv** [3] - 13:21, 26:8, 26:24
**fire** [2] - 30:19, 31:7
**Firm** [2] - 3:19, 3:20
**FIRM** [1] - 1:21
**first** [10] - 3:5, 3:15, 6:15, 8:19, 13:8,

37:14, 37:22, 42:7, 45:17, 46:5
**fit** [1] - 38:20
**five** [2] - 51:3, 51:14
**five-month** [1] - 51:14
**flagged** [1] - 59:6
**flap** [1] - 47:8
**flexible** [1] - 45:3
**flushed** [1] - 12:14
**fly** [1] - 47:8
**focus** [2] - 16:2, 40:6
**focused** [1] - 12:24
**focusing** [1] - 13:22
**follow** [1] - 23:17
**following** [1] - 53:20
**footnote** [1] - 26:15
**FOR** [1] - 1:1
**force** [1] - 31:10
**foregoing** [1] - 61:9
**foreign** [13] - 4:15, 5:8, 5:18, 17:5, 19:24, 21:24, 24:21, 28:20, 29:6, 31:16, 42:2, 45:20, 59:12
**form** [2] - 41:14, 59:3
**formal** [3] - 17:20, 21:6, 50:21
**former** [1] - 27:10
**forth** [4] - 24:15, 25:1, 26:10, 51:18
**fortunately** [1] - 36:12
**forward** [12] - 16:4, 19:13, 19:21, 20:4, 20:7, 21:1, 25:24, 32:17, 38:22, 48:16, 55:24, 57:10
**four** [6] - 15:19, 34:20, 42:18, 51:3, 51:14
**four-month** [1] - 42:18
**frankly** [3] - 22:14, 22:20, 48:9
**front** [3] - 19:10, 27:22, 35:10
**full** [3] - 9:6, 27:22, 59:15
**fully** [2] - 12:14, 36:21
**fundamentally** [1] -

31:15

**G**

**gain** [2] - 18:2, 36:8
**genius** [1] - 52:6
**gentleman** [1] - 33:12
**given** [7] - 7:4, 9:10, 10:21, 39:20, 42:21, 53:24, 56:17
**go-round** [1] - 11:23
**GOTSHAL** [1] - 2:10
**government** [1] - 46:18
**grant** [1] - 21:17
**granted** [1] - 9:21
**grants** [2] - 14:18, 19:4
**great** [1] - 44:23
**ground** [2] - 11:23, 12:20
**grounded** [1] - 13:18
**guarantees** [1] - 59:14
**guess** [4] - 4:13, 41:21, 55:17, 59:1
**guidance** [1] - 24:6
**guidelines** [1] - 46:8
**Guy** [4] - 3:8, 61:6, 61:15, 61:15

**H**

**Hague** [8] - 7:10, 8:1, 11:18, 20:8, 24:20, 28:20, 42:16, 46:17
**half** [1] - 43:21
**halt** [1] - 19:21
**handle** [1] - 39:7
**hands** [1] - 42:21
**happy** [2] - 12:19, 24:4
**harder** [1] - 43:7
**harm** [3] - 9:20, 10:11, 39:14
**hate** [1] - 25:11
**head** [1] - 52:3
**heading** [3] - 53:22, 53:23
**health** [1] - 54:3
**hear** [8] - 6:15, 6:19, 12:19,

12:23, 23:11, 23:20, 44:2, 44:14
**heard** [1] - 56:21
**hearing** [5] - 4:17, 24:3, 26:2, 27:23, 34:2
**Hearing** [1] - 60:2
**heavily** [1] - 11:22
**held** [2] - 21:20, 61:11
**HELIOS** [2] - 1:3, 1:8
**Helios** [8] - 3:3, 3:4, 3:16, 23:21, 23:24, 24:14, 31:18, 39:12
**help** [5] - 26:23, 34:9, 37:7, 42:15, 42:22
**hereby** [1] - 61:8
**highly** [3] - 11:5, 50:9, 50:10
**himself** [1] - 50:12
**history** [1] - 7:5
**hit** [1] - 35:1
**hits** [1] - 42:2
**hold** [1] - 47:22
**Honor** [51] - 3:8, 3:11, 3:18, 4:6, 4:10, 6:23, 7:4, 8:13, 8:23, 9:7, 11:1, 11:11, 12:23, 15:4, 16:1, 16:2, 16:7, 17:13, 21:4, 22:12, 23:15, 23:23, 24:5, 24:11, 24:17, 26:14, 31:13, 31:23, 33:17, 34:23, 34:24, 35:14, 36:14, 37:13, 38:5, 39:2, 39:20, 42:3, 42:10, 43:11, 44:15, 45:2, 45:13, 45:14, 48:9, 49:20, 49:21, 51:5, 51:21, 59:18, 59:23
**Honor's** [2] - 20:3, 22:22
**HONORABLE** [1] - 1:18
**hours** [1] - 41:8
**hustled** [1] - 34:14
**hypothetically** [2] - 41:3, 56:15

## I

**idea** [2] - 18:22, 47:5
**Ideahub** [2] - 12:13, 31:18
**imagine** [2] - 9:16, 11:4
**immediately** [2] - 21:12, 41:8
**impacted** [1] - 25:24
**impacts** [1] - 6:13
**implicated** [1] - 8:14
**implied** [1] - 25:7
**importance** [2] - 13:7, 13:8
**important** [12] - 8:3, 8:4, 11:24, 13:12, 14:16, 15:2, 21:23, 22:7, 30:5, 35:2, 36:21, 39:3
**impression** [1] - 27:11
**improper** [1] - 47:23
**IN** [1] - 1:1
**Inc** [2] - 2:7, 2:12
**INC** [2] - 1:6, 1:11
**includes** [1] - 42:19
**including** [1] - 8:18
**inclusive** [1] - 61:10
**incorporating** [2] - 56:7, 57:14
**increase** [1] - 47:17
**incur** [1] - 9:11
**independently** [1] - 56:21
**indicated** [7] - 5:1, 5:12, 14:6, 17:11, 21:5, 21:8, 21:15
**indirect** [1] - 18:1
**inequitable** [3] - 8:17, 30:4, 47:22
**inevitable** [1] - 29:5
**information** [3] - 18:14, 33:7, 43:22
**informing** [1] - 6:10
**infringement** [5] - 35:22, 36:1, 37:3, 38:12, 52:10
**initiated** [1] - 11:18
**initiating** [2] - 20:8, 54:13
**institute** [1] - 13:21
**instituted** [6] -

14:2, 14:4, 14:23, 18:8, 18:18, 21:16
**institution** [3] - 14:19, 19:12, 21:12
**intact** [1] - 44:4
**intend** [2] - 48:17, 48:18
**intended** [1] - 18:3
**intends** [1] - 14:19
**intent** [1] - 32:10
**interconnection** [1] - 18:9
**interests** [1] - 39:16
**interim** [1] - 49:6
**intern** [1] - 3:12
**International** [1] - 8:20
**interplay** [1] - 18:6
**interrupt** [2] - 20:10, 39:22
**interrupting** [1] - 11:22
**invalid** [1] - 21:20
**invention** [1] - 52:1
**inventor** [35] - 6:18, 7:13, 7:24, 8:2, 11:17, 16:10, 16:13, 16:14, 18:2, 18:22, 19:7, 19:9, 19:22, 21:2, 22:19, 30:7, 33:12, 35:21, 36:20, 38:14, 38:18, 40:2, 44:18, 44:19, 47:20, 47:21, 48:1, 48:15, 48:20, 52:4, 52:5, 52:13, 58:6, 59:13
**inventor's** [1] - 52:3
**inventors** [35] - 4:16, 4:23, 5:3, 5:7, 5:15, 7:7, 7:11, 7:16, 8:7, 8:9, 8:21, 9:5, 12:4, 21:24, 22:13, 23:3, 25:14, 28:4, 28:13, 29:2, 29:15, 30:3, 30:13, 30:19, 31:7, 32:2, 33:8, 34:17, 35:15, 35:24, 37:2, 41:18, 41:23,

45:21, 54:4
**inventors'** [5] - 24:9, 33:19, 54:10, 58:4, 58:10
**inventorship** [1] - 47:23
**involve** [1] - 46:2
**involved** [2] - 13:14, 54:16
**involves** [1] - 41:23
**involving** [1] - 8:5
**IPR** [8] - 9:1, 14:21, 14:23, 15:16, 15:21, 18:24, 19:10, 22:18
**IPRs** [11] - 13:13, 14:1, 14:3, 14:19, 18:4, 18:18, 19:12, 21:16, 21:19, 22:3, 22:14
**irreparable** [1] - 39:14
**isolated** [1] - 52:12
**issuance** [3] - 17:12, 21:8, 54:16
**issue** [25] - 4:14, 5:6, 5:9, 5:19, 9:8, 16:1, 22:20, 23:2, 27:3, 31:11, 31:16, 33:2, 34:11, 35:3, 35:21, 41:15, 45:6, 46:23, 47:3, 48:9, 51:18, 51:22, 52:20, 52:21, 55:19
**issued** [2] - 45:20, 52:22
**issues** [28] - 8:5, 8:7, 8:17, 9:14, 13:4, 21:6, 23:1, 23:5, 24:2, 27:17, 30:4, 35:17, 35:19, 38:9, 38:15, 41:12, 45:7, 48:7, 48:10, 48:14, 48:24, 52:13, 54:7, 58:13, 59:4, 59:5
**item** [1] - 51:19
**items** [1] - 13:3
**itself** [2] - 13:9, 51:23

## J

**January** [9] - 4:15,

5:5, 11:24, 12:19, 24:3, 24:17, 27:23, 34:2, 34:19
**Japan** [10] - 4:16, 7:14, 16:14, 17:14, 21:10, 21:11, 41:24, 42:13, 47:4, 51:13
**Japanese** [1] - 9:17
**JENNIFER** [1] - 2:5
**Jennifer** [5] - 3:8, 4:2, 61:6, 61:15, 61:15
**jeopardizes** [1] - 30:23
**John** [1] - 4:10
**JOHN** [1] - 2:8
**joining** [2] - 3:3, 4:11
**joint** [2] - 57:23, 58:2
**judge** [3] - 40:14, 40:16, 47:4
**Judge** [12] - 1:18, 3:2, 10:15, 10:17, 10:20, 20:14, 40:9, 49:22, 56:9, 56:13, 57:4, 58:18
**judge's** [1] - 20:10
**judges** [2] - 40:11, 40:12
**judgment** [1] - 48:15
**judicial** [1] - 47:2
**July** [2] - 40:22, 53:23
**jumbled** [1] - 55:5
**jump** [1] - 47:7
**June** [1] - 43:3
**jurisdiction** [3] - 42:2, 45:20, 51:12

## K

**KAU** [3] - 7:6, 8:10, 12:5
**keep** [1] - 38:7
**keeping** [1] - 50:7
**keeps** [2] - 38:22, 38:23
**KELLER** [1] - 2:8
**Keller** [1] - 4:10
**kicked** [2] - 49:24
**kicking** [1] - 39:18
**kind** [2] - 23:1, 27:1
**kinds** [1] - 49:11

**knots** [1] - 50:13
**knowing** [1] - 55:16
**known** [1] - 48:12
**knows** [2] - 8:13, 17:13
**Korea** [6] - 4:16, 7:12, 21:12, 41:24, 42:12, 51:13
**Korean** [2] - 8:22, 9:17

## L

**lack** [1] - 36:23
**lag** [1] - 22:2
**language** [1] - 4:20
**largely** [1] - 38:23
**last** [7] - 9:8, 11:2, 11:23, 12:18, 15:6, 48:23, 50:4
**late** [3] - 7:18, 21:5, 21:14
**law** [2] - 3:10, 20:10
**LAW** [1] - 1:21
**Law** [2] - 3:18, 3:20
**lawsuit** [3] - 15:7, 15:9, 15:13
**lead** [3] - 10:6, 17:8, 56:5
**learned** [3] - 12:18, 48:3, 48:4
**least** [4] - 19:7, 21:13, 25:13, 49:20
**leave** [2] - 37:10, 57:17
**legal** [2] - 32:11, 38:17
**leisurely** [1] - 34:4
**lengthy** [1] - 37:24
**Leonard** [1] - 3:19
**LEONARD** [1] - 1:22
**less** [1] - 43:20
**letter** [5] - 10:17, 13:5, 16:23, 57:23, 58:9
**letters** [12] - 7:12, 8:1, 9:15, 11:19, 14:11, 17:13, 14:20, 28:20, 42:16, 46:11, 46:16, 52:20
**leverage** [2] - 29:12, 29:15
**licensing** [1] - 10:7
**lie** [1] - 24:4
**LIEBERMAN** [13] - 2:4, 4:5, 6:22,

12:22, 16:17, 17:7, 18:20, 20:2, 21:3, 42:3, 42:9, 46:5, 59:18
**Lieberman** [9] - 4:1, 4:3, 6:21, 20:19, 42:8, 44:2, 44:14, 45:16, 59:17
**light** [4] - 30:19, 31:6, 54:6, 56:12
**likely** [4] - 11:8, 19:14, 50:9, 50:10
**line** [6] - 3:5, 3:12, 20:11, 39:10, 55:20
**litigating** [1] - 29:13
**litigation** [7] - 12:7, 13:15, 14:9, 14:20, 18:9, 18:23, 21:18
**living** [3] - 7:11, 7:14, 54:1
**LLC** [3] - 1:3, 1:8, 1:21
**LLP** [2] - 2:8, 2:10
**look** [7] - 23:6, 33:13, 34:6, 40:3, 41:7, 50:20, 58:18
**looked** [1] - 32:15
**looking** [3] - 27:9, 43:16, 53:19
**loop** [1] - 27:2
**loosely** [1] - 12:7
**lose** [2] - 39:9, 40:13
**losing** [2] - 9:23, 22:3
**love** [1] - 20:17
**luckily** [1] - 52:8

## M

**Magistrate** [2] - 1:18, 3:2
**magistrate** [1] - 40:11
**maintain** [1] - 44:3
**maintained** [1] - 57:8
**MAISEL** [1] - 2:5
**Maisel** [1] - 4:2
**major** [1] - 27:3
**MANBECK** [1] - 2:3
**MANGES** [1] - 2:10
**manner** [1] - 51:24
**March** [6] - 10:15,

19:13, 19:15, 56:16, 57:6, 59:15
**mass** [1] - 40:19
**materials** [1] - 17:18
**matter** [11] - 13:6, 25:11, 49:18, 52:2, 52:3, 52:4, 52:9, 52:10, 52:11, 52:13
**matters** [3] - 12:7, 52:8, 58:15
**maw** [1] - 46:18
**mean** [3] - 36:10, 43:8, 58:21
**means** [2] - 7:8, 54:20
**meant** [3] - 26:17, 26:21, 44:18
**meetings** [3] - 8:11, 8:12, 48:5
**merit** [1] - 36:23
**merits** [3] - 15:5, 36:12, 37:5
**mid** [2] - 21:13, 34:19
**might** [11] - 19:11, 20:23, 23:4, 24:10, 24:21, 41:18, 43:10, 43:23, 44:6, 52:13, 53:1
**militates** [1] - 49:18
**mind** [1] - 7:21
**minimum** [1] - 46:20
**minor** [1] - 38:8
**minute** [1] - 25:19
**missing** [3] - 30:11, 31:2, 31:5
**misspoke** [1] - 44:21
**modern** [1] - 20:18
**moment** [3] - 20:12, 37:5, 44:13
**Monfredo** [1] - 3:19
**MONFREDO** [1] - 1:22
**month** [10] - 9:21, 10:5, 13:24, 19:16, 34:12, 34:13, 42:18, 46:21, 49:19, 51:14
**months** [18] - 5:23, 11:19, 19:5, 26:4, 33:24, 34:20, 39:19, 43:12,

43:13, 46:20, 47:12, 48:23, 51:3, 52:23, 53:13, 54:11, 54:23, 55:19
**morning** [7] - 3:1, 3:7, 3:17, 3:23, 4:5, 4:7, 4:9
**MORRIS** [1] - 2:1
**Morris** [1] - 3:24
**MOSHOS** [2] - 2:1, 3:23
**Moshos** [1] - 3:24
**most** [5] - 7:2, 10:4, 15:2, 18:3, 41:22
**motion** [10] - 17:12, 38:2, 38:24, 40:7, 40:12, 40:14, 40:17, 41:3, 41:20, 45:12
**motions** [4] - 53:24, 55:7, 56:3, 57:17
**movant** [1] - 6:16
**move** [5] - 14:20, 16:3, 35:11, 37:9, 40:12
**moved** [3] - 11:10, 30:17, 35:9
**moving** [8] - 14:13, 19:20, 25:5, 25:6, 26:12, 26:22, 44:17, 52:23
**MPEG** [1] - 8:11
**MR** [28] - 3:17, 3:23, 4:5, 4:9, 6:22, 12:22, 16:17, 17:7, 18:20, 20:2, 21:3, 23:15, 23:22, 31:12, 35:13, 36:14, 37:12, 42:3, 42:9, 42:10, 44:15, 44:20, 44:22, 46:5, 51:5, 51:8, 59:18, 59:22
**multiple** [1] - 36:17
**must** [1] - 54:15
**mutually** [1] - 5:13

## N

**names** [1] - 8:8
**narrow** [4] - 33:10, 33:17, 35:19, 38:19
**naught** [1] - 19:23
**NBC** [3] - 15:10, 15:11, 15:13

**necessarily** [1] - 19:15
**necessary** [5] - 9:3, 9:6, 24:22, 25:10, 55:7
**need** [15] - 5:9, 11:6, 29:19, 30:7, 30:14, 30:17, 34:6, 36:8, 37:1, 41:6, 41:10, 52:15, 53:1, 53:4, 53:5
**needed** [3] - 5:14, 32:18, 45:4
**needs** [5] - 11:2, 43:18, 52:19, 52:21, 52:23
**negated** [1] - 51:24
**never** [8] - 8:19, 18:21, 19:1, 22:14, 22:20, 33:18, 46:18, 50:11
**new** [1] - 58:1
**New** [1] - 61:2
**next** [5] - 17:10, 17:19, 21:5, 39:8, 41:7
**NICHOLS** [1] - 2:1
**Nichols** [1] - 3:24
**Nicki** [1] - 4:2
**NICOLE** [1] - 2:5
**non** [3] - 9:22, 10:22, 39:4
**non-ANDA** [1] - 10:22
**non-practicing** [2] - 9:22, 39:4
**none** [4] - 7:6, 52:8, 52:19, 55:15
**nonetheless** [3] - 40:1, 54:7, 57:8
**normal** [3] - 43:4, 43:6, 50:3
**normally** [1] - 39:14
**Notary** [1] - 61:7
**noted** [1] - 26:9
**nothing** [5] - 23:16, 24:3, 35:23, 45:14, 59:22
**notion** [6] - 24:18, 25:4, 31:23, 32:7, 32:20, 52:15
**November** [6] - 7:20, 16:19, 43:16, 55:11, 57:24, 58:8
**number** [6] - 13:12, 46:10, 47:14, 50:20, 53:10,

53:14

## O

**oath** [1] - 28:15
**object** [1] - 21:8
**objection** [1] - 41:14
**objections** [1] - 41:12
**objective** [1] - 35:22
**objectively** [1] - 28:8
**obligation** [1] - 33:1
**obligations** [2] - 12:5, 28:23
**obvious** [1] - 52:5
**obviously** [2] - 42:14, 43:5
**obviousness** [2] - 36:2, 38:13
**occur** [2] - 19:14, 55:4
**occurred** [3] - 14:8, 18:21, 22:21
**occurring** [1] - 14:9
**October** [9] - 7:19, 16:18, 28:7, 33:5, 38:2, 40:8, 40:19, 41:20, 53:24
**OF** [2] - 1:1, 61:4
**offered** [2] - 24:18, 30:6
**official** [1] - 51:1
**omitted** [1] - 8:8
**once** [4] - 25:9, 42:1, 42:17, 58:17
**one** [28] - 7:15, 8:24, 10:7, 10:24, 11:24, 14:22, 14:23, 15:24, 16:13, 17:23, 19:10, 24:2, 26:15, 27:2, 27:15, 29:11, 29:14, 33:10, 37:6, 39:4, 39:8, 43:10, 44:5, 47:19, 47:20, 49:2, 54:23
**ones** [1] - 12:24
**onward** [2] - 38:24, 56:2
**open** [1] - 11:9
**opening** [1] - 40:20
**operating** [1] - 32:13

**opportunity** [3] - 9:4, 12:3, 31:13
**oppose** [1] - 17:12
**opposed** [3] - 5:18, 6:9, 6:11
**opposition** [3] - 11:14, 13:17, 31:9
**options** [1] - 39:8
**order** [11] - 5:9, 6:2, 19:15, 43:18, 48:17, 48:18, 53:20, 56:6, 57:13, 57:22, 58:14
**ordered** [1] - 34:16
**ordinary** [1] - 35:23
**organizations** [1] - 12:12
**original** [3] - 28:3, 30:9, 32:7
**originally** [2] - 7:15, 58:22
**overall** [1] - 42:19
**own** [2] - 51:8, 55:13
**owner** [1] - 8:18
**owns** [2] - 15:8, 15:12

**P**

**P.C** [1] - 2:3
**p.m** [1] - 60:3
**page** [5] - 4:18, 5:1, 44:24, 48:21, 50:20
**Pages** [1] - 61:9
**pandemic** [3] - 9:10, 43:8, 54:1
**papers** [3] - 17:20, 18:13, 35:10
**parallel** [4] - 24:19, 24:22, 28:1, 28:19
**paramount** [1] - 13:8
**parent** [2] - 12:13, 31:19
**part** [6] - 11:14, 22:11, 25:3, 26:16, 37:3, 40:1
**participate** [1] - 28:13
**participated** [1] - 8:10
**particular** [1] - 50:1
**particularly** [2] - 18:15, 30:16
**parties** [10] - 4:19,

5:12, 5:13, 24:23, 36:17, 49:12, 55:2, 57:22, 58:20, 59:7
**parties'** [2] - 13:4, 58:16
**partners** [1] - 24:14
**parts** [1] - 24:2
**party** [2] - 15:1, 36:17
**past** [2] - 30:18, 33:24
**patent** [3] - 8:18, 35:18, 35:20
**patentability** [1] - 51:23
**patents** [20] - 10:2, 10:3, 10:8, 12:8, 13:14, 14:22, 15:1, 15:2, 15:14, 15:15, 15:16, 15:19, 15:20, 15:21, 15:22, 18:7, 20:6, 21:20, 29:14, 36:5
**patents-in-suit** [1] - 14:22
**path** [1] - 38:7
**pause** [4] - 20:12, 29:2, 34:24, 44:12
**Peacock** [2] - 15:10, 15:14
**pending** [2] - 18:19, 21:19
**people** [1] - 48:4
**percent** [2] - 50:15, 52:16
**period** [3] - 7:18, 49:3, 53:3
**permitted** [1] - 22:17
**person** [4] - 9:13, 11:2, 35:22, 43:9
**personal** [1] - 54:2
**petition** [2] - 14:24, 22:19
**petitions** [4] - 9:2, 13:16, 15:17, 15:22
**pick** [2] - 26:11, 47:3
**picture** [1] - 23:6
**pieces** [1] - 8:24
**pinpoint** [1] - 43:23
**place** [7] - 13:23, 21:13, 37:16, 42:14, 43:4, 47:13, 48:22
**plaintiff** [4] - 3:15,

16:11, 17:24, 18:12
**Plaintiffs** [3] - 1:4, 1:9, 1:23
**plaintiffs** [34] - 6:20, 7:5, 7:16, 7:22, 9:20, 13:16, 14:11, 15:6, 16:21, 17:11, 21:7, 21:21, 22:10, 23:11, 23:12, 23:21, 28:6, 28:22, 29:11, 29:18, 29:19, 30:10, 30:15, 30:18, 31:1, 31:5, 31:19, 35:8, 36:7, 36:22, 36:23, 36:24, 37:6, 59:3
**plaintiffs'** [6] - 4:22, 6:8, 6:9, 11:14, 12:13, 29:20
**plan** [3] - 17:8, 21:4, 22:12
**planning** [1] - 21:17
**plausible** [1] - 36:19
**play** [1] - 24:10
**plenty** [2] - 37:20, 38:3
**point** [13] - 16:8, 18:12, 26:11, 27:13, 27:14, 27:24, 28:17, 29:9, 30:10, 30:11, 50:4, 54:12, 56:8
**points** [3] - 12:23, 23:13, 35:1
**poison** [1] - 32:8
**Polito** [1] - 3:10
**poorly** [2] - 26:15, 27:6
**position** [6] - 6:8, 6:10, 17:3, 25:8, 25:20, 31:24
**positions** [1] - 23:4
**possibility** [1] - 22:15
**possible** [5] - 21:20, 41:11, 54:15, 54:20, 57:7
**possibly** [3] - 43:2, 49:3, 49:5
**postulated** [1] - 47:16
**potential** [3] - 8:16,

14:13, 58:13
**potentially** [4] - 20:21, 44:4, 48:19, 55:6
**power** [5] - 30:12, 31:15, 32:12, 32:16, 32:22
**powers** [1] - 32:24
**practical** [5] - 13:3, 15:24, 23:7, 25:11, 27:15
**practically** [1] - 16:3
**practices** [2] - 10:21, 40:10
**practicing** [2] - 9:22, 39:4
**precisely** [1] - 12:9
**preferences** [1] - 57:4
**prejudicial** [1] - 24:13
**preliminary** [1] - 26:8
**prepared** [4] - 9:9, 22:4, 22:5, 22:8
**presentation** [1] - 16:7
**presently** [2] - 18:17, 40:21
**preserve** [2] - 30:10, 31:7
**presumably** [1] - 10:24
**pretrial** [5] - 6:3, 40:17, 53:9, 55:22, 56:10
**pretty** [1] - 25:9
**prevent** [1] - 32:2
**previous** [1] - 29:23
**previously** [1] - 4:14
**primary** [2] - 23:2, 31:8
**principal** [1] - 16:7
**principally** [1] - 13:22
**priority** [4] - 8:22, 10:21, 10:24, 56:18
**private** [1] - 31:16
**privileged** [1] - 31:4
**pro** [1] - 32:3
**probity** [1] - 14:12
**problem** [3] - 31:14, 47:14, 55:15
**procedure** [1] -

27:16
**procedures** [1] - 32:19
**proceed** [5] - 7:3, 9:9, 9:19, 21:23, 38:5
**proceeding** [1] - 26:20
**proceedings** [2] - 14:21, 61:11
**process** [44] - 5:9, 5:11, 5:16, 5:18, 7:12, 9:16, 11:19, 17:1, 17:3, 17:17, 19:6, 19:8, 19:21, 20:1, 20:8, 21:1, 21:6, 24:22, 26:21, 28:20, 29:6, 30:14, 31:11, 34:3, 34:8, 34:14, 41:6, 41:15, 41:22, 42:1, 42:16, 42:18, 43:11, 45:20, 46:12, 46:23, 47:3, 50:22, 54:13, 54:14, 54:16, 55:17, 59:2, 59:12
**processing** [1] - 10:12
**production** [1] - 12:2
**productive** [2] - 55:2, 55:9
**products** [1] - 9:24
**Professional** [1] - 61:7
**program** [1] - 10:7
**promptly** [2] - 21:7, 41:15
**proof** [1] - 37:3
**proposal** [5] - 19:17, 24:11, 31:10, 44:3, 44:6
**proposed** [5] - 40:4, 53:11, 56:3, 58:16, 58:19
**prosecute** [1] - 29:20
**prosecuting** [1] - 29:13
**prospect** [1] - 18:16
**provide** [1] - 57:23
**providing** [1] - 56:5
**PTAB** [11] - 13:19, 14:5, 14:6, 14:7, 14:17, 14:18,

18:8, 18:15, 26:13, 26:20, 50:8
**PTAB's** [1] - 14:8
**Public** [1] - 61:7
**pull** [1] - 25:12
**pulling** [1] - 28:19
**purpose** [1] - 22:22
**purposes** [1] - 40:5
**push** [4] - 5:23, 31:10, 45:5, 53:12
**push-out** [1] - 53:12
**pushed** [3] - 40:15, 45:8, 54:23
**pushing** [3] - 18:4, 29:13, 44:4
**put** [5] - 19:24, 22:18, 28:1, 44:12, 48:16
**puts** [1] - 30:23
**putting** [2] - 32:4, 37:4

## Q

**questioned** [1] - 14:12
**questions** [7] - 16:8, 17:1, 17:15, 21:10, 22:23, 26:19, 35:1
**quickly** [1] - 25:9
**quite** [1] - 59:14
**quote** [1] - 25:7

## R

**radar** [1] - 54:10
**raised** [8] - 9:7, 17:24, 18:16, 23:13, 38:9, 48:11, 48:14, 51:22
**range** [2] - 58:16, 58:19
**rather** [4] - 28:12, 29:5, 43:7, 55:18
**reach** [1] - 29:6
**reached** [1] - 17:10
**reaching** [1] - 28:22
**reacted** [1] - 25:16
**real** [2] - 30:21, 55:16
**reality** [1] - 46:8
**realize** [1] - 41:4
**really** [14] - 15:22, 18:3, 18:13,

25:11, 26:3, 27:3, 28:15, 32:9, 33:23, 35:6, 39:3, 39:19, 47:11, 56:23
**realtime** [1] - 55:5
**reason** [12] - 7:20, 15:3, 15:4, 27:19, 33:16, 36:24, 39:1, 45:4, 49:14, 50:5, 56:12, 56:22
**reasonable** [4] - 9:4, 9:18, 54:19, 56:23
**reasonably** [1] - 36:19
**reasons** [7] - 13:7, 23:8, 25:18, 36:19, 36:22, 53:10, 53:14
**recalling** [1] - 28:9
**receive** [1] - 5:20
**received** [2] - 6:6, 6:9
**recently** [1] - 10:18
**receptive** [1] - 53:15
**recitation** [1] - 33:4
**recite** [1] - 28:8
**recognize** [1] - 58:20
**recollection** [2] - 27:20, 27:21
**record** [6] - 27:10, 29:23, 48:12, 55:5, 61:9, 61:10
**redeposed** [1] - 49:9
**referenced** [1] - 8:21
**referred** [1] - 20:24
**reflects** [1] - 46:14
**refused** [1] - 7:23
**regarding** [7] - 8:17, 9:14, 14:13, 46:6, 48:2, 50:17, 53:20
**Registered** [1] - 61:6
**rehash** [1] - 12:20
**REINES** [1] - 23:15
**Reines** [1] - 23:16
**rejoined** [1] - 20:14
**rejoins** [1] - 20:13
**related** [4] - 4:21, 12:17, 23:5, 29:1
**relation** [1] - 41:19
**relative** [1] - 26:9
**relatively** [3] - 34:3,

35:18, 38:19
**relevance** [1] - 37:17
**relevant** [5] - 17:18, 35:16, 38:18, 47:1, 48:6
**relied** [1] - 9:1
**reluctant** [1] - 55:23
**reluctantly** [1] - 53:8
**remainder** [1] - 58:14
**reminding** [1] - 28:23
**remote** [2] - 9:14, 45:22
**remotely** [2] - 9:10, 54:6
**removed** [2] - 31:17, 31:18
**reply** [1] - 14:7
**report** [6] - 5:5, 5:21, 6:7, 45:5, 58:2
**Reporter** [1] - 61:7
**REPORTER** [2] - 3:7, 61:4
**reports** [11] - 37:23, 38:1, 38:10, 40:20, 41:1, 47:19, 47:24, 49:7, 49:8, 49:10, 55:4
**representation** [1] - 25:23
**request** [2] - 13:18, 54:9
**requests** [2] - 46:16, 46:17
**required** [4] - 13:24, 25:10, 32:12, 57:23
**requiring** [1] - 58:15
**rescheduling** [1] - 46:2
**reset** [2] - 6:4, 11:6
**resolution** [3] - 35:12, 37:11, 49:17
**resolve** [2] - 36:12, 41:13
**resolved** [1] - 24:12
**respect** [10] - 7:10, 7:13, 9:24, 13:13, 14:10, 14:15, 25:13, 30:1, 50:6, 59:2
**respects** [1] - 40:22

**responded** [1] - 16:23
**response** [3] - 13:15, 26:8, 34:23
**responses** [1] - 49:2
**rest** [2] - 54:24, 55:13
**restrictions** [1] - 54:2
**result** [2] - 53:11, 58:23
**retained** [1] - 7:16
**retains** [1] - 45:12
**revised** [1] - 57:13
**revisit** [3] - 4:14, 26:18, 43:17
**revisiting** [1] - 55:18
**rights** [3] - 32:21, 32:23, 36:6
**rise** [1] - 8:13
**risk** [1] - 9:11
**risks** [1] - 39:5
**rogatory** [11] - 7:12, 8:1, 9:16, 11:19, 17:13, 24:20, 28:21, 42:16, 46:12, 46:16, 52:21
**roll** [1] - 43:22
**Rothwell** [1] - 4:3
**ROTHWELL** [1] - 2:3
**round** [3] - 11:23, 28:18, 47:24
**rounds** [2] - 38:1, 49:10
**RPR** [2] - 61:15, 61:15
**rule** [2] - 20:23, 20:24
**Rule** [1] - 11:13
**rules** [2] - 22:18, 27:16
**ruling** [3] - 12:1, 20:22, 59:1
**rulings** [1] - 16:5
**run** [2] - 37:8, 39:5

## S

**sales** [3] - 9:23, 10:1, 48:22
**salvage** [1] - 39:24
**sanity** [1] - 44:24
**satisfy** [2] - 35:4, 37:2
**save** [1] - 28:21

**saw** [1] - 14:11
**scale** [1] - 32:5
**scenario** [1] - 55:11
**SCHAD** [1] - 1:22
**Schad** [1] - 3:20
**schedule** [35] - 5:23, 6:14, 6:17, 13:6, 14:15, 25:5, 25:6, 25:18, 26:4, 26:10, 26:23, 30:11, 30:16, 37:9, 37:20, 38:8, 38:22, 39:8, 39:18, 39:21, 40:1, 40:21, 44:4, 44:11, 46:3, 53:4, 53:6, 53:19, 54:24, 55:13, 56:1, 57:5, 57:11, 57:18, 59:15
**scheduled** [9] - 10:13, 10:14, 10:18, 13:23, 43:15, 47:13, 49:15, 57:1, 58:23
**schedules** [1] - 11:3
**scheduling** [8] - 6:2, 40:4, 40:5, 40:9, 43:17, 56:6, 57:13, 58:14
**second** [4] - 28:18, 47:24, 49:5, 49:10
**Section** [2] - 30:2, 51:23
**secure** [5] - 4:23, 5:9, 19:8, 19:22, 28:4
**secured** [1] - 54:12
**see** [11] - 6:12, 6:13, 12:4, 27:3, 28:21, 29:19, 43:11, 43:18, 52:22, 52:23
**seeing** [1] - 50:5
**seeking** [2] - 18:7, 18:19
**segregated** [1] - 52:14
**select** [1] - 48:18
**send** [1] - 4:22
**sending** [1] - 24:24
**sense** [4] - 17:23, 32:4, 34:5, 45:18
**sent** [3] - 16:22, 17:4, 28:6
**sentence** [2] - 26:16, 27:7

**separate** [1] - 15:9
**September** [2] -
33:4, 33:6
**sequencing** [1] -
57:19
**series** [1] - 55:3
**serious** [3] - 8:5,
8:7, 8:17
**serve** [1] - 47:1
**services** [1] - 9:24
**set** [5] - 4:13, 6:11,
11:6, 34:2, 37:24
**sets** [1] - 47:19
**setting** [2] - 8:11,
48:5
**settle** [1] - 56:15
**seven** [3] - 7:11,
58:3, 58:9
**several** [1] - 54:11
**severe** [1] - 43:20
**shall** [1] - 51:23
**shared** [1] - 59:3
**SHARON** [1] - 2:4
**Sharon** [1] - 4:1
**Shaw** [2] - 4:10
**SHAW** [3] - 2:8,
2:8, 4:9
**SHERRY** [1] - 1:18
**Sherry** [1] - 3:2
**shoulders** [2] -
30:24, 33:21
**showing** [1] - 32:15
**shown** [1] - 4:17
**SHOWTIME** [1] -
1:11
**Showtime** [9] -
2:12, 3:4, 4:8,
6:24, 17:8, 22:6,
23:10, 36:18
**side** [2] - 37:6,
53:17
**sides'** [1] - 53:16
**sign** [1] - 41:7
**signed** [1] - 17:4
**significant** [2] -
39:12, 39:13
**signing** [1] - 54:18
**simply** [4] - 21:21,
31:20, 34:16,
43:11
**sine** [1] - 49:24
**sitting** [2] - 32:21
**situation** [2] - 10:5,
10:6
**six** [14] - 5:23, 9:21,
10:5, 19:4, 19:16,
26:4, 34:12,
37:23, 39:18,
46:20, 46:21,
47:12, 49:19,

53:13
**six-month** [6] -
9:21, 10:5, 19:16,
34:12, 46:21,
49:19
**skewed** [1] - 28:12
**skill** [1] - 35:23
**skip** [1] - 13:1
**skipped** [1] - 34:15
**skipping** [1] - 42:14
**sleeves** [1] - 43:22
**slice** [1] - 49:6
**slow** [1] - 59:11
**solely** [2] - 30:24,
44:8
**solution** [2] -
37:14, 45:11
**solutions** [3] -
45:3, 46:1, 47:15
**somewhat** [1] -
18:1
**somewhere** [1] -
45:21
**soon** [2] - 17:2,
59:2
**sorry** [4] - 11:21,
20:9, 20:16,
36:15
**sort** [3] - 11:12,
50:3, 55:7
**sorts** [1] - 47:4
**sources** [1] - 54:15
**South** [1] - 7:12
**speaking** [4] - 4:4,
6:23, 16:10, 43:8
**specific** [2] - 21:9,
25:4
**specifically** [1] -
44:2
**speculation** [1] -
46:6
**spending** [1] -
17:17
**spin** [2] - 23:1, 48:8
**spot** [1] - 30:23
**spring** [1] - 11:7
**Standard** [1] - 8:20
**standard** [7] - 8:11,
8:22, 8:24, 35:22,
39:15, 48:3, 48:5
**standards** [1] -
8:14
**start** [3] - 3:4, 3:14,
57:1
**started** [2] - 24:19,
59:13
**starting** [6] - 3:15,
11:13, 19:8, 24:2,
53:12, 54:17
**State** [2] - 61:1,

61:8
**state** [6] - 46:8,
46:24, 50:21,
50:24, 51:11
**statement** [2] -
50:21, 51:11
**STATES** [1] - 1:1
**States** [1] - 1:18
**status** [10] - 5:4,
5:20, 5:21, 6:7,
34:15, 43:16,
57:23, 58:2,
58:12, 59:7
**statutorily** [1] -
13:24
**statutory** [1] -
10:23
**stay** [11] - 14:20,
18:19, 19:20,
19:24, 20:21,
21:18, 22:7, 22:9,
23:18, 56:16,
60:1
**stayed** [1] - 22:1
**stays** [1] - 56:18
**steam** [1] - 37:8
**stenographer** [1] -
3:6
**step** [4] - 29:2,
29:15, 30:13,
42:14
**steps** [1] - 33:18
**STEVEN** [1] - 2:4
**Steven** [1] - 4:1
**sticking** [2] - 27:14,
29:9
**still** [3] - 5:6, 25:21,
54:11
**stipulated** [1] -
41:13
**STREAMING** [2] -
1:3, 1:8
**stress** [1] - 48:17
**strongly** [1] - 49:18
**studied** [1] - 22:20
**stuff** [1] - 51:2
**subject** [3] - 14:23,
15:16, 15:21
**subjects** [1] - 49:7
**submission** [2] -
16:22, 46:10
**submit** [8] - 10:10,
13:17, 46:7,
47:19, 48:21,
50:5, 50:19,
57:11
**submitted** [1] -
13:18
**submitting** [2] -
4:19, 54:17

**subsequent** [4] -
6:18, 19:5, 26:6,
38:1
**subsequently** [1] -
17:5
**subsidiary** [1] -
15:10
**substance** [1] -
24:9
**substantive** [3] -
13:17, 27:16,
48:24
**sued** [4] - 15:14,
15:18, 15:19,
15:20
**sufficiently** [1] -
41:1
**suggest** [3] - 38:4,
47:10, 49:18
**suggested** [3] -
22:11, 28:1,
45:13
**suggesting** [2] -
20:23, 28:14
**suit** [1] - 14:22
**summary** [1] -
48:14
**super** [1] - 52:6
**super-genius** [1] -
52:6
**supplement** [1] -
48:21
**supplemental** [1] -
55:3
**supplementation**
[2] - 38:8, 41:1
**supplementations**
[1] - 38:20
**support** [2] - 27:10,
30:7
**suppose** [2] -
40:22, 57:6
**supposed** [1] -
47:18
**suspect** [3] - 11:8,
18:5, 46:14
**SUTTON** [1] - 2:11
**Sutton** [1] - 4:11

## T

**technology** [1] -
20:18
**Teleconference** [1]
- 1:16
**teleconference** [3]
- 6:12, 24:17,
59:7
**ten** [1] - 14:22
**term** [2] - 10:3, 12:7

**terminating** [1] -
33:14
**terms** [13] - 19:20,
21:3, 24:7, 24:16,
26:16, 27:4, 34:1,
35:15, 35:17,
40:24, 41:16,
42:1, 51:13
**testify** [2] - 30:13,
33:9
**testifying** [1] - 32:2
**testimony** [21] -
7:9, 7:24, 13:11,
18:2, 18:23, 19:7,
19:9, 22:13,
26:20, 27:4,
29:17, 30:1,
35:21, 38:14,
38:18, 47:20,
47:21, 48:1,
48:15, 48:20,
52:13
**THE** [34] - 1:1, 1:1,
1:18, 3:1, 3:7,
3:9, 3:11, 3:13,
3:21, 4:7, 4:12,
11:21, 16:9,
16:24, 17:21,
19:3, 20:9, 20:16,
22:24, 23:19,
27:8, 35:5, 36:3,
36:16, 39:22,
42:6, 43:24,
44:19, 44:21,
45:16, 51:7, 53:7,
59:20, 59:24
**themselves** [3] -
5:4, 22:14, 36:24
**therefore** [1] - 6:11
**they've** [1] - 33:6
**thinking** [1] - 39:24
**third** [1] - 14:24
**three** [11] - 15:14,
15:15, 24:1,
31:17, 42:18,
43:13, 48:21,
48:23, 51:3,
51:14
**three-page** [1] -
48:21
**thumb** [1] - 32:4
**Tim** [2] - 3:18,
23:23
**timeframes** [1] -
51:9
**timeline** [6] - 24:2,
24:7, 24:16,
27:18, 41:16,
51:14
**timing** [5] - 17:2,

19:2, 21:4, 22:16, 46:6
**TIMOTHY** [1] - 1:21
**tinkered** [1] - 53:2
**today** [4] - 4:4, 6:12, 29:8, 50:7
**together** [3] - 4:19, 12:18, 32:14
**toiled** [1] - 52:6
**tomorrow** [1] - 57:12
**took** [1] - 33:18
**totally** [1] - 33:11
**track** [3] - 28:1, 28:19, 56:16
**tracks** [1] - 24:19
**traction** [1] - 40:23
**transcript** [4] - 4:18, 5:1, 25:8, 27:22
**translate** [1] - 17:17
**translated** [1] - 17:16
**transmission** [1] - 5:2
**travel** [1] - 54:2
**trial** [29] - 6:3, 10:14, 10:15, 10:18, 11:7, 13:6, 13:23, 14:10, 14:14, 19:13, 19:16, 30:16, 30:24, 31:8, 39:2, 40:13, 40:18, 48:23, 49:19, 50:7, 53:9, 55:22, 56:10, 56:14, 56:16, 57:6, 57:18, 57:19, 58:16
**trials** [1] - 56:14
**tried** [3] - 36:10, 50:11, 58:22
**trigger** [2] - 25:12, 28:19
**true** [2] - 36:10, 61:10
**Truong** [1] - 7:17
**try** [7] - 5:15, 23:6, 24:1, 35:12, 44:3, 49:6, 59:10
**trying** [11] - 9:12, 27:5, 28:4, 28:8, 28:17, 32:1, 32:3, 32:10, 32:14, 39:24
**TUNNELL** [1] - 2:1
**turn** [2] - 13:2, 25:9
**turnaround** [2] -

42:1, 45:19
**turns** [1] - 44:9
**twice** [2] - 42:17, 49:12
**twisted** [1] - 50:12
**two** [21] - 7:18, 10:18, 13:12, 13:14, 14:1, 14:19, 15:1, 15:6, 15:15, 15:19, 21:20, 24:18, 31:18, 43:12, 47:14, 47:19, 49:1, 51:2, 51:6, 54:23, 57:1
**typically** [1] - 41:7

## U

**U.S** [2] - 42:12, 42:20
**unaffected** [1] - 38:11
**uncooperative** [1] - 46:15
**under** [16] - 8:6, 9:15, 10:20, 13:21, 22:17, 28:15, 28:20, 28:24, 30:2, 30:19, 31:7, 32:12, 32:18, 33:13, 43:4, 54:1
**understood** [1] - 27:19
**undertook** [1] - 24:23
**unfairly** [1] - 40:15
**unique** [1] - 9:14
**UNITED** [1] - 1:1
**United** [1] - 1:18
**Universal** [3] - 15:10, 15:12, 15:13
**unless** [3] - 6:24, 16:7, 23:9
**unlikely** [1] - 11:5
**unmoored** [4] - 46:7, 50:16, 52:17, 52:18
**unusual** [1] - 51:12
**up** [21] - 15:14, 16:1, 18:13, 22:3, 24:7, 26:11, 27:22, 29:16, 30:13, 31:9, 43:22, 44:11, 45:3, 46:12, 46:13, 48:8, 49:22, 50:13,

50:22, 52:7, 58:11
**uproots** [1] - 54:23
**urgent** [2] - 34:5
**useful** [2] - 18:3, 18:14
**USPTO** [1] - 8:20

## V

**vacate** [2] - 19:15, 53:8
**vacated** [1] - 6:4
**vast** [2] - 35:19, 38:10
**vastly** [1] - 47:16
**VERONICA** [1] - 1:22
**Veronica** [1] - 3:20
**versus** [1] - 27:4
**video** [1] - 42:22
**view** [3] - 12:1, 28:7, 28:10
**virtual** [1] - 47:11
**volume** [1] - 35:17
**voluntarily** [7] - 5:7, 5:17, 16:15, 28:5, 28:14, 29:4, 30:20
**voluntary** [1] - 4:24
**Vudu** [13] - 2:7, 3:4, 3:22, 4:1, 6:24, 13:13, 14:19, 15:8, 15:12, 18:7, 22:4, 22:6, 36:18
**VUDU** [1] - 1:6

## W

**wait** [1] - 29:5
**waiting** [1] - 5:18
**warm** [1] - 30:21
**ways** [2] - 36:8, 43:6
**Wednesday** [1] - 1:15
**week** [4] - 17:10, 17:19, 21:5, 41:7
**weeks** [5] - 7:18, 15:6, 26:7, 37:23, 45:6
**weigh** [2] - 19:11, 57:8
**WEIL** [1] - 2:10
**Weil** [1] - 4:11
**wheel** [1] - 23:1
**whichever** [1] - 58:4
**whole** [7] - 23:6, 26:4, 27:24,

28:17, 33:3, 39:18, 46:4
**willing** [5] - 7:7, 7:19, 16:14, 16:18, 16:20
**willingness** [1] - 33:8
**Wilmington** [1] - 61:12
**window** [3] - 33:10, 33:17, 47:8
**wish** [1] - 7:1
**wishes** [1] - 11:12
**withdrawn** [1] - 7:21
**witnesses** [1] - 36:5
**word** [2] - 12:9, 34:17
**worded** [2] - 26:15, 27:7
**words** [1] - 19:23
**works** [1] - 22:16
**worst** [1] - 55:10
**worst-case** [1] - 55:10
**write** [1] - 17:14
**written** [1] - 14:1

## Y

**year** [6] - 39:8, 40:19, 43:21, 46:12, 46:14, 50:22
**years** [1] - 52:7

## Z

**zero** [1] - 37:17

# EXHIBIT 10

| | |
|---|---|
| **From:** | Veronica Schad <vschad@devlinlawfirm.com> |
| **Sent:** | Tuesday, February 23, 2021 8:34 AM |
| **To:** | Ansley, Sutton; Timothy Devlin; Leonard Monfredo; Feng Xu; Lauren Mostrom; Mariam Clayton; Joel Glazer; Christopher Clayton; Robert Kiddie |
| **Cc:** | Helios; Sharon Davis; Steven Lieberman; Brian Rosenbloom; Nicole M. DeAbrantes; Jennifer B. Maisel; Erik van Leeuwen; JBlumenfeld@MNAT.com; John Shaw; Moshos, Andrew; 'Nate Hoeschen' |
| **Subject:** | RE: Helios v. Vudu and Showtime - Foreign Discovery |

Counsel,

Helios will not oppose such a motion.

Best,



The information contained in this communication is confidential and is intended only for the use of the intended addressee.  It is the property of Devlin Law Firm LLC, and may contain information subject to attorney-client privilege and/or may constitute inside information.  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to correspondence@devlinlawfirm.com, and destroy this communication and all copies thereof, including all attachments.

**From:** Ansley, Sutton <sutton.ansley@weil.com>
**Sent:** Monday, February 22, 2021 5:38 PM
**To:** Timothy Devlin <tdevlin@devlinlawfirm.com>; Leonard Monfredo <lmonfredo@devlinlawfirm.com>; Veronica Schad <vschad@devlinlawfirm.com>; Feng Xu <fxu@devlinlawfirm.com>; Lauren Mostrom <lmostrom@devlinlawfirm.com>; Mariam Clayton <mclayton@devlinlawfirm.com>; Joel Glazer <jglazer@devlinlawfirm.com>; Christopher Clayton <cclayton@devlinlawfirm.com>; Robert Kiddie <rkiddie@devlinlawfirm.com>
**Cc:** Helios <Helios@weil.com>; Sharon Davis <sdavis@rothwellfigg.com>; Steven Lieberman <slieberm@rothwellfigg.com>; Brian Rosenbloom <Brosenbloom@rothwellfigg.com>; Nicole M. DeAbrantes <NDeAbrantes@rothwellfigg.com>; Jennifer B. Maisel <jmaisel@rothwellfigg.com>; Erik van Leeuwen <evanlee@rothwellfigg.com>; JBlumenfeld@MNAT.com; John Shaw <jshaw@shawkeller.com>; Moshos, Andrew <amoshos@morrisnichols.com>; 'Nate Hoeschen' <nhoeschen@shawkeller.com>
**Subject:** Helios v. Vudu and Showtime - Foreign Discovery

Counsel,

Pursuant to Rule 28(b), Defendants intend to move the Court to issue (1) a letter of request to the Korean Central Authority to obtain testimony of foreign inventors, and (2) a letter rogatory to the appropriate judicial authority of Japan to obtain testimony of Dr. Cong-Thang Truong.  Drafts of these letters are attached.  We understand that Plaintiffs oppose Defendants' request for a schedule extension to accommodate this discovery.  However, please let us know whether Plaintiffs oppose the motion to obtain the testimony of these foreign inventors on other grounds.

Best regards,

Sutton



**W. Sutton Ansley**
Counsel

Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
sutton.ansley@weil.com
+1 202 682 7018 Direct
+1 202 857 0940 Fax

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT 11

# STATUS TABLE

## 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters

Entry into force: 7-X-1972

Last update: 4-III-2020
Number of Contracting Parties to this Convention: 63
*The expression "Contracting Party" covers both cases in which the Convention has,*
*and cases in which the Convention has not yet, entered into force for that Party following the deposit of its instrument of ratification,*
*accession, acceptance or approval (see column EIF in the chart).*

⎙ View and/or print full status report

Contracting Parties to this Convention that are also Members of the HCCH (i.e., the Organisation) are in **bold**; Contracting Parties that are not Members of the HCCH are in *italics*.

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| **Albania** | | 16-VII-2010 | A* | 14-IX-2010 | | 1 | D |
| **Andorra** | | 26-IV-2017 | A* | 25-VI-2017 | | 2 | D,Res |
| **Argentina** | | 8-V-1987 | A* | 7-VII-1987 | | 1 | D,Res |
| **Armenia** | | 27-VI-2012 | A* | 26-VIII-2012 | | 1 | D,Res |
| **Australia** | | 23-X-1992 | A* | 22-XII-1992 | | 3 | D,Res |
| *Barbados* | | 5-III-1981 | A* | 4-V-1981 | | 1 | |
| **Belarus** | | 7-VIII-2001 | A* | 6-X-2001 | | 2 | D,Res |
| **Bosnia and Herzegovina** | | 16-VI-2008 | A* | 15-VIII-2008 | | 1 | |
| **Brazil** | | 9-IV-2014 | A* | 8-VI-2014 | | 1 | D,Res |
| **Bulgaria** | | 23-XI-1999 | A* | 22-I-2000 | | 2 | D,Res |
| **China, People's Republic of** | | 8-XII-1997 | A* | 6-II-1998 | | 4 | D,N,Res |
| *Colombia* | | 13-I-2012 | A* | 13-III-2012 | | 1 | |
| **Costa Rica** | | 16-III-2016 | A* | 15-V-2016 | | 1 | |

| Contracting Party | S [1] | R/A/S[2] | Type[3] | EIF[4] | EXT[5] | Auth[6] | Res/D/N/DC[7] |
|---|---|---|---|---|---|---|---|
| **Croatia** | | 1-X-2009 | A* | 30-XI-2009 | | 1 | D,Res |
| **Cyprus** | | 13-I-1983 | A* | 14-III-1983 | | 3 | D,Res |
| **Czech Republic** | | 28-VI-1993 | Su | 1-I-1993 | | 2 | D |
| **Denmark** | 18-IV-1972 | 20-VI-1972 | R | 7-X-1972 | | 2 | D,Res |
| **Estonia** | | 2-II-1996 | A* | 2-IV-1996 | | 2 | D |
| **Finland** | 9-III-1976 | 7-IV-1976 | R | 6-VI-1976 | | 2 | D,Res |
| **France** | 24-VIII-1972 | 7-VIII-1974 | R | 6-X-1974 | 1 | 2 | D,Res |
| **Germany** | 18-III-1970 | 27-IV-1979 | R | 26-VI-1979 | | 2 | D,Res |
| **Greece** | 18-I-2005 | 18-I-2005 | R | 19-III-2005 | | 2 | D,Res |
| **Hungary** | | 13-VII-2004 | A* | 11-IX-2004 | | 2 | D,Res |
| **Iceland** | | 10-XI-2008 | A* | 9-I-2009 | | 1 | D,Res |
| **India** | | 7-II-2007 | A* | 8-IV-2007 | | 3 | D |
| **Israel** | 11-XI-1977 | 19-VII-1979 | R | 17-IX-1979 | | 2 | D |
| **Italy** | 6-II-1975 | 22-VI-1982 | R | 21-VIII-1982 | | 2 | D |
| **Kazakhstan** | | 26-IX-2016 | A* | 25-XI-2016 | | 2 | D,Res |
| **Korea, Republic of** | | 14-XII-2009 | A* | 12-II-2010 | | 2 | D,Res |
| *Kuwait* | | 8-V-2002 | A* | 7-VII-2002 | | 1 | |
| **Latvia** | | 28-III-1995 | A* | 27-V-1995 | | 2 | D |
| *Liechtenstein* | | 12-XI-2008 | A* | 11-I-2009 | | 1 | D |
| **Lithuania** | | 2-VIII-2000 | A* | 1-X-2000 | | 2 | D,Res |
| **Luxembourg** | 2-V-1975 | 26-VII-1977 | R | 24-IX-1977 | | 2 | D,Res |
| **Malta** | | 24-II-2011 | A* | 25-IV-2011 | | 2 | Res |
| **Mexico** | | 27-VII-1989 | A* | 25-IX-1989 | | 1 | D,Res |
| **Monaco** | | 17-I-1986 | A* | 18-III-1986 | | 2 | D,Res |
| **Montenegro** | | 16-I-2012 | A* | 16-III-2012 | | 2 | D,Res |
| **Morocco** | | 24-III-2011 | A* | 23-V-2011 | | 1 | |
| **Netherlands** | | 8-IV-1981 | R | 7-VI-1981 | 1 | 3 | D,Res |
| **Nicaragua** | | 27-II-2019 | A* | 28-IV-2019 | | 1 | Res,DC |

| Contracting Party | S [1] | R/A/S[2] | Type[3] | EIF[4] | EXT[5] | Auth[6] | Res/D/N/DC[7] |
|---|---|---|---|---|---|---|---|
| **Norway** | 18-III-1970 | 3-VIII-1972 | R | 7-X-1972 | | 3 | D,Res |
| **Poland** | | 13-II-1996 | A* | 13-IV-1996 | | 3 | Res |
| **Portugal** | 18-III-1970 | 12-III-1975 | R | 11-V-1975 | | 2 | D,Res |
| **Republic of North Macedonia** | | 19-III-2009 | A* | 18-V-2009 | | | D |
| **Romania** | | 21-VIII-2003 | A* | 20-X-2003 | | 2 | D,Res |
| **Russian Federation** | | 1-V-2001 | A* | 30-VI-2001 | | | D |
| **Serbia** | | 2-VII-2010 | A* | 31-VIII-2010 | | 3 | D |
| *Seychelles* | | 7-I-2004 | A* | 7-III-2004 | | 2 | D |
| **Singapore** | | 27-X-1978 | A* | 26-XII-1978 | | 1 | D,Res |
| **Slovakia** | | 15-III-1993 | Su | 1-I-1993 | | 2 | D |
| **Slovenia** | | 18-IX-2000 | A* | 17-XI-2000 | | 1 | |
| **South Africa** | | 8-VII-1997 | A* | 6-IX-1997 | | 3 | D,Res |
| **Spain** | 21-X-1976 | 22-V-1987 | R | 21-VII-1987 | | 2 | D,Res |
| **Sri Lanka** | | 31-VIII-2000 | A* | 30-X-2000 | | 1 | D,Res |
| **Sweden** | 21-IV-1975 | 2-V-1975 | R | 1-VII-1975 | | 1 | D |
| **Switzerland** | 21-V-1985 | 2-XI-1994 | R | 1-I-1995 | | 3 | D,Res |
| **Turkey** | 13-XII-2000 | 13-VIII-2004 | R | 12-X-2004 | | 2 | D,Res |
| **Ukraine** | | 1-II-2001 | A* | 1-IV-2001 | | 2 | D,Res |
| **United Kingdom of Great Britain and Northern Ireland** | 18-III-1970 | 16-VII-1976 | R | 14-IX-1976 | 8 | 3 | D,N,Res |
| **United States of America** | 27-VII-1970 | 8-VIII-1972 | R | 7-X-1972 | 3 | 3 | D |
| **Venezuela** | | 1-XI-1993 | A* | 31-XII-1993 | | 1 | D,Res |
| **Viet Nam** | | 4-III-2020 | A* | 3-V-2020 | | 1 | D |

1) S = Signature
2) R/A/Su = Ratification, Accession or Succession
3) Type = R: Ratification;

A: Accession;

A*: Accession giving rise to an acceptance procedure; click on A* for details of acceptances of the accession;

C: Continuation;

Su: Succession;

Den: Denunciation;

4) EIF = Entry into force

5) EXT = Extensions of application

6) Authorities per Convention = Designation of Authorities

7) Res/D/N/DC = Reservations, declarations, notifications or depositary communications

EXHIBIT 12

Case 1:19-cv-01978-CFC-SRF Document 93-3 Filed 08/12/21 Page 41 of 106 PageID # 7833

# Ministry of Foreign Affairs of Japan
🇯🇵 外務省

Skip to main content | FAQ | Site Map | Links | **Japanese** | **Other Languages**

ENHANCED BY Google | **Search** | Font Size S **M** L

| About Us | News | Foreign Policy | Countries & Regions | **Consular Services** |

Top > Consular Services > Methods for a Court of a Foreign State to Request Japan to Serve Judicial or Extrajudicial Documents and Take Evidence

## Consular Services

## Methods for a Court of a Foreign State to Request Japan to Serve Judicial or Extrajudicial Documents and Take Evidence

December 28, 2018

Japanese

Tweet          Share 16          ✉ e-mail

## Outline

If a lawsuit is filed with a foreign court against a person staying in Japan, the court has to serve the complaint, the decision and other documents to the defendant in Japan. In addition, the court has to take evidence, such as the interrogation of witnesses in Japan.
Such "judicial acts," including service of documents and taking of evidence, are carried out by the courts, which are national agencies, and are accompanied by legal effects (exercise of jurisdiction), and they cannot be freely carried out by foreign courts in Japan. Another state exercising jurisdiction over the service of documents or taking evidence in Japan requires Japan's prior consent.

### (1) Civil and Commercial trial

Since Japan is a Contracting State to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Service Convention) and the Convention on Civil Procedure (the CP Convention), Japan has agreed that Japan will respond to other Contracting States to these conventions if they request Japan to serve documents or take evidence concerning civil or commercial cases under the rules of these conventions (see Annexes 1 - 3, 5).
If a foreign state is not a Contracting State to none of these conventions but it has a bilateral treaty or a comprehensive agreement on mutual judicial assistance between Japan, the requests of the state will be responded subject to them. If it has not any agreement, Japan will respond to such request of judicial assistance in each specific case under the domestic law "the Law Relating to the Reciprocal Judicial Aid to be Given at the Request of Foreign Courts " (see Annexes 4 and 5.).

### (2) Criminal trial

If a foreign state requests Japan to serve documents and take evidence concerning a criminal trial, Japan will respond to the request pursuant to the Law Relating to the Reciprocal Judicial Aid to be Given at the Request of Foreign Courts . (If the foreign state has concluded a bilateral treaty on mutual criminal assistance between Japan, Japan will respond pursuant to the treaty.)

See the following table and annexes for more information.

## Methods for requesting Japan's central authority/designated authority/court to serve judicial or extrajudicial documents and taking evidence in Japan

### (1) Civil or commercial trial

| | Service of documents | Taking evidence |
| --- | --- | --- |
| Contracting state only to the Service Convention | Annex 1 (PDF)📄 📋 | Annex 5 (PDF)📄 📋 |

|  | Service of documents | Taking evidence |
|---|---|---|
| Contracting state only to the CP Convention | Annex 2 (PDF)  | Annex 3 (PDF) |
| Contracting state to both conventions | Annex 1 (PDF) | Annex 3 (PDF) |
| Contracting state to none of the conventions | Annex 4 (PDF) | Annex 5 (PDF) |

## (2) Criminal trial

|  | Service of documents | Taking evidence |
|---|---|---|
| Contracting state to the bilateral treaty on mutual criminal assistance | Make a request pursuant to the treaty | Make a request pursuant to the treaty |
| Not Contracting state to the bilateral treaty on mutual criminal assistance | Annex 6 (PDF) | Annex 7 (PDF) |

## Links

- Webpage on the Service Convention
- Webpage on Japan's central authority for the Service Convention
- Webpage on the CP Convention
- Law Relating to the Reciprocal Judicial Aid to be Given at the Request of Foreign Courts(PDF)

## Inquiry

Consular Policy Division, Consular Affairs Bureau, Ministry of Foreign Affairs

2-2-1 Kasumigaseki, Chiyoda-ku, Tokyo

Tel: 03-5501-8152

Fax: 03-5501-8148

(Open a New Window)

▸ Page Top

Back to Consular Services

**About Us**
- Ministers
- Officials
- Organization
- Location
- Embassies & Consulates
- Diplomatic Archives
- About this Site

**News**
- Press Releases
- Press Conferences
- Speeches
- Interviews & Articles
- Other Information

**Foreign Policy**
- Diplomatic Bluebook
- Japan's Security / Peace & Stability of the International Community
- Global Issues & ODA
- Economic Diplomacy
- Public Diplomacy
- Others

**Countries & Regions**
- Asia
- Oceania
- North America
- Latin America and the Caribbean
- Europe

**Consular Services**
- Visa
- Residing in Japan
- Certification
- Information about Japan (Links)
- The Hague Convention

https://www.mofa.go.jp/ca/cp/page25e_000251.html     2/3

Methods by which a Foreign State to Request Japan to Serve Judicial Documents and Take Evidence | Ministry of For…

- Middle East
- Africa

| Legal Matters | Accessibility | Privacy Policy | About this Site |          Copyright © Ministry of Foreign Affairs of Japan

**Ministry of Foreign Affairs of Japan 2-2-1 Kasumigaseki, Chiyoda-ku, Tokyo 100-8919, Japan**  ►► MAP   **Phone: +81-(0)3-3580-3311**
**Japan Corporate Number(JCN): 9000012040001**

EXHIBIT 13

**(Annex 5)**
**If a non-Contracting State of the CP Convention requests taking evidence concerning a civil trial**

If a non-Contracting state of the CP Convention requests Japan to take evidence, the state should do so pursuant to the Japanese national law called the "Law Relating to the Reciprocal Judicial Aid to be Given at the Request of Foreign Courts" (hereinafter, the "Reciprocal Aid Law"). The request shall be made through the diplomatic channel (Art. 1-2, para. 1, item 1 of the Reciprocal Aid Law).

**1. Documents to be submitted to the Ministry of Foreign Affairs of Japan**

(1) Embassy's note verbal to the Ministry of Foreign Affairs of Japan

(2) One copy of the foreign court's letter of request to a court in Japan

(3) One copy of a Japanese translation of the letter of request (Art. 1-2, para. 1, item 4 of the Reciprocal Aid Law)

**2. Items to be entered in the documents**

(1) Embassy's note verbal to the Ministry of Foreign Affairs of Japan

    (A) The State to which the Court making the request belongs shall guarantee the payment of the expenses incurred in the execution of the letter of request.(Art. 1-2, para. 1, item 5 of the Reciprocal Aid Law)

    (B) The State to which the Court making the request belongs shall assume that it could render judicial aid in the same or similar matters if so requested by the Japanese Courts. (Art. 1-2, para. 1, item 6 thereof)

(2) Foreign court's letter of request to a court in Japan (Art. 1-2, para. 1, item 3 of the Reciprocal Aid Law)

    (A) Authority that issued the request for taking evidence

    (B) Requested type of taking evidence (witness interrogation, investigation, etc.) (Art. 1-2, para. 1, item 3 thereof)

    (C) Name of the person undergoing the taking of evidence (Art. 1-2, para. 1, item 3 thereof)

    (D) Nationality of the person (Art. 1-2, para. 1, item 3 thereof)

    (E) Domicile or residence of the person (Art. 1-2, para. 1, item 3 thereof)

    (F) Parties to the litigation (Art. 1-2, para. 1, item 3 thereof)

    (G) The matters to be investigated (interrogation items in the case of the interrogation of witnesses; inquiry items in the case of an investigation) (Art. 1-2, para. 1, item 3 thereof)

    (H) Summary of the case (Art. 1-2, para. 1, item 3 thereof)

**3. Demand for reimbursement of costs**

The embassy of the requesting state should reimburse the costs that the court in Japan spent on executing the letter of request. (Art. 1-2, para. 1, item 5 thereof).

16

**4. Points that require attention when requesting to take evidence**

・A court in Japan cannot issue an order to produce documents to a person located in Japan based on the request from a foreign court (because a court order to produce documents is issued on the petition of a trial party under the Code of Civil Procedure of Japan).

・A company can only be interrogated as a witness if the name and post of the person to be interrogated are designated concretely.

・Taking of evidence can only be carried out concerning one witness or organization per letter of request. Prepare a letter of request for each reference.

[Reference]

LAW RELATING TO THE RECIPROCAL JUDICIAL AID TO BE GIVEN AT THE REQUEST OF FOREIGN COURTS

Article 1.-(2)

The said judicial aid shall be rendered under the following conditions:

1. The request shall be made through the diplomatic channel.

2. The request for the service of papers shall be made in writing stating the name, nationality, and domicile or residence of the person on whom the papers are to be served.

3. The request to take evidence shall be made in writing stating the names of the parities to the litigation, the manner in which the evidence is to be taken, the name, nationality, and domicile or residence of the person to be examined, and the matters to be investigated. In regard to criminal matters, the request shall be accompanied by a statement of the essential facts of the case.

4. In case the letter of request and documents annexed thereto are not written in the Japanese language, translation thereof into Japanese shall be appended to the original.

5. The State to which the Court making the request belongs shall guarantee the payment of the expenses incurred in the execution of the letter of request.

6. The State to which the Court making the request belongs shall assure that it could render judicial aid in the same or similar matters if so requested by the Japanese Courts.

In case where treaties or other documents of similar nature provides otherwise than as mentioned in the preceding paragraph, such provisions shall prevail.

17

# EXHIBIT 14

# STATUS TABLE

## 02: Convention of 1 March 1954 on civil procedure

Entry into force: 12-IV-1957

Last update: 14-III-2017

Number of Contracting Parties to this Convention: 49

*The expression "Contracting Party" covers both cases in which the Convention has,*
*and cases in which the Convention has not yet, entered into force for that Party following the deposit of its instrument of ratification,*
*accession, acceptance or approval (see column EIF in the chart).*

🖨 View and/or print full status report

Contracting Parties to this Convention that are also Members of the HCCH (i.e., the Organisation) are in **bold**; Contracting Parties that are not Members of the HCCH are in *italics*.

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| **Albania** | | 8-IV-2010 | A | 13-XII-2010 | | | |
| **Argentina** | | 23-IX-1987 | A | 9-VII-1988 | | | D |
| **Armenia** | | 6-V-1996 | A | 29-I-1997 | | | |
| **Austria** | 1-III-1954 | 1-III-1956 | R | 12-IV-1957 | | | D |
| **Belarus** | | 17-V-1993 | Su | 25-VIII-1991 | | | |
| **Belgium** | 1-III-1954 | 24-IV-1958 | R | 23-VI-1958 | | | |
| **Bosnia and Herzegovina** | | 23-VIII-1993 | Su | 6-III-1992 | | 1 | |
| **China, People's Republic of** | | | C | | | | D,N |
| **Croatia** | | 23-IV-1993 | Su | 8-X-1991 | | 1 | |
| **Cyprus** | | 27-IV-2000 | A | 1-III-2001 | | 1 | Res |
| **Czech Republic** | | 28-I-1993 | Su | 1-I-1993 | | | |
| **Denmark** | 2-IX-1955 | 19-IX-1958 | R | 18-XI-1958 | | | Res |
| **Egypt** | | 4-II-1981 | A | 16-XI-1981 | | | Res |

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| **Finland** | 17-IX-1956 | 8-I-1957 | R | 12-IV-1957 | | | D |
| **France** | 24-I-1956 | 23-IV-1959 | R | 22-VI-1959 | 10 | 1 | N |
| **Germany** | 9-IV-1957 | 2-XI-1959 | R | 1-I-1960 | | | D |
| *Holy See* | | 25-VIII-1966 | A | 17-V-1967 | | | |
| **Hungary** | | 21-V-1965 | A | 18-II-1966 | | | |
| **Iceland** | | 10-XI-2008 | A | 31-VII-2009 | | 1 | D,Res |
| **Israel** | | 22-XI-1967 | A | 19-VIII-1968 | | | |
| **Italy** | 1-III-1954 | 11-II-1957 | R | 12-IV-1957 | | | |
| **Japan** | 12-III-1970 | 28-V-1970 | R | 26-VII-1970 | | 1 | N |
| **Kazakhstan** | | 29-I-2015 | A | 14-X-2015 | | | |
| *Kyrgyzstan* | | 22-XI-1996 | A | 14-VIII-1997 | | | |
| **Latvia** | | 15-XII-1992 | A | 12-IX-1993 | | | D |
| *Lebanon* | | 25-III-1974 | A | 7-I-1975 | | | |
| **Lithuania** | | 5-XI-2002 | A | 17-VII-2003 | | | D |
| **Luxembourg** | 28-VI-1954 | 3-VII-1956 | R | 12-IV-1957 | | | |
| *Mongolia* | | 3-III-2014 | A | 14-XI-2014 | | | |
| **Montenegro** | | 1-III-2007 | Su | 3-VI-2006 | | | |
| **Morocco** | | 22-XII-1971 | A | 14-IX-1972 | | | |
| **Netherlands** | 1-III-1954 | 28-IV-1959 | R | 27-VI-1959 | 4 | 1 | D,N |
| **Norway** | 23-III-1954 | 21-V-1958 | R | 20-VII-1958 | | | |
| **Poland** | | 13-VI-1962 | A | 13-III-1963 | | 2 | D |
| **Portugal** | 20-II-1957 | 3-VII-1967 | R | 31-VIII-1967 | | | D,N |
| **Republic of Moldova** | | 4-II-1993 | A | 3-XI-1993 | | | |
| **Republic of North Macedonia** | | 20-III-1996 | Su | 17-XI-1991 | | | |
| **Romania** | | 29-IV-1971 | A | 29-I-1972 | | 1 | D |
| **Russian Federation** | | 28-X-1966 | A | 26-VII-1967 | | 1 | D |
| **Serbia** | 19-IV-2001 | | Su | 27-IV-1992 | | 1 | |

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| **Slovakia** | | 15-III-1993 | Su | 1-I-1993 | | | |
| **Slovenia** | | 8-VI-1992 | Su | 25-VI-1991 | | 1 | |
| **Spain** | 12-IV-1957 | 20-IX-1961 | R | 19-XI-1961 | | | |
| **Suriname** | | 11-XI-1976 | A | 7-IX-1977 | | | |
| **Sweden** | 28-VI-1954 | 21-XII-1957 | R | 19-II-1958 | | | |
| **Switzerland** | 2-VII-1954 | 6-V-1957 | R | 5-VII-1957 | | | |
| **Turkey** | | 23-X-1972 | A | 11-VII-1973 | | | D |
| **Ukraine** | | 10-VI-1999 | Su | 24-VIII-1991 | | 1 | D |
| **Uzbekistan** | | 5-III-1996 | A | 2-XII-1996 | | | |

1) S = Signature

2) R/A/Su = Ratification, Accession or Succession

3) Type = R: Ratification;

     A: Accession;

     A*: Accession giving rise to an acceptance procedure; click on A* for details of acceptances of the accession;

     C: Continuation;

     Su: Succession;

     Den: Denunciation;

4) EIF = Entry into force

5) EXT = Extensions of application

6) Authorities per Convention = Designation of Authorities

7) Res/D/N/DC = Reservations, declarations, notifications or depositary communications

# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HELIOS STREAMING, LLC, and IDEAHUB, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 1:19-cv-01792-CFC/SRF |
| VUDU, INC., | JURY TRIAL DEMANDED |
| Defendant. | |
| HELIOS STREAMING, LLC, and IDEAHUB, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 1:19-cv-01978-CFC/SRF |
| | JURY TRIAL DEMANDED |
| SHOWTIME DIGITAL, INC. and SHOWTIME NETWORKS, INC., | |
| Defendants. | |

**PLAINTIFFS HELIOS STREAMING, LLC AND IDEAHUB, INC.'S SUPPLEMENTAL
RESPONSES TO DEFENDANTS' FIRST SET OF COMMON INTERROGATORIES
(NOS. 1-12)**

Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiffs Helios Streaming, LLC and Ideahub, Inc.

("Plaintiffs" or "Helios") hereby provide the following supplemental responses to Defendant

Vudu, Inc. ("Vudu"), and Defendants' Showtime Digital, Inc. and Showtime Networks, Inc.

(collectively, "Showtime") (collectively with Vudu, "Defendants") First Set of Common

Interrogatories (Nos. 1-12) (each, an "Interrogatory," collectively, the "Interrogatories").  These

responses are based on Helios's present knowledge and are given without prejudice to Helios's

right to produce evidence of any subsequently discovered facts, or add, modify or otherwise change or amend its responses.

## <u>GENERAL STATEMENTS AND OBJECTIONS</u>

1.      Plaintiffs incorporate by reference each and every general objection set forth below into each specific response. The specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

2.      By responding to Defendants' Interrogatories, Plaintiffs do not waive any objection that may be applicable to: (a) the use, for any purpose, by Defendants, of any information or documents given in response to Defendants' Interrogatories; or (b) the admissibility, relevancy, or materiality of any of the information or documents to any issue in this case.

3.      No incidental or implied admissions are intended by the responses herein. The fact that Plaintiffs have answered or objected to any Interrogatory should not be taken as an admission that Plaintiffs accept or admit the existence of any "fact" set forth or assumed by such request. Nothing in Plaintiffs' objections or responses should be taken as any admission or statement regarding the appropriate scope of any claim or construction of any claim term or phrase.

4.      Plaintiffs' responses to Defendants' Interrogatories are made to the best of Plaintiffs' present knowledge, information, and belief. Plaintiffs reserve the right to supplement and amend these responses should future investigation indicate that such supplementation or amendment is necessary. Plaintiffs reserve the right to make any use of, or to introduce at any hearing and at trial, information or documents that are responsive to Defendants' Interrogatories,

but discovered subsequent to Plaintiffs' service of these responses, including, but not limited to, any information or documents obtained in discovery herein.

5.    By stating that it will provide information in response to any particular Interrogatory, Plaintiffs make no representation that any such information exists.

## **GENERAL OBJECTIONS**

1.    Defendants' First Set of Common Interrogatories define "Plaintiffs," "You," and "Your" as "Helios and Ideahub collectively, including without limitation, all officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and includes any of Helios and Ideahub's affiliates, parents, divisions, joint ventures, licensees, assigns, predecessors and successors in interest, and any other legal entities (whether foreign or domestic) that are owned or controlled by Helios and Ideahub and all predecessors and successors in interest to such entities."  Plaintiffs object to Defendants' defining the terms "Plaintiffs," "You," and "Your" to include third parties, such as "licensees" and "assigns."

2.    First Set of Common Interrogatories define "Helios" as "Helios Streaming, LLC, including without limitation, all officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and includes any of Helios affiliates, parents, divisions, joint ventures, licensees, assigns, predecessors and successors in interest, and any other legal entities (whether foreign or domestic) that are owned or controlled by Helios and all predecessors and successors in interest to such entities."  Plaintiffs object to Defendants' defining the term "Helios" to include third parties, such as "licensees" and "assigns."

3.    First Set of Common Interrogatories define "Ideahub" as "Ideahub, Inc., including without limitation, all officers, directors, current and former employees, counsel, agents,

consultants, representatives, and any other persons acting on behalf of any of the foregoing, and includes any of Ideahub's affiliates, parents, divisions, joint ventures, licensees, assigns, predecessors and successors in interest, and any other legal entities (whether foreign or domestic) that are owned or controlled by Ideahub and all predecessors and successors in interest to such entities." Plaintiffs object to Defendants' defining the term "Ideahub" to include third parties, such as "licensees" and "assigns."

4.       Plaintiffs object to each Interrogatory to the extent that it purports, through Defendants' instructions, definitions or otherwise, to impose burdens or duties that exceed the scope of reasonable and permissible discovery under the Federal Rules of Civil Procedure or the applicable rules and orders of the District of Delaware.

5.       Plaintiffs object to each Interrogatory to the extent that it is overbroad, unduly burdensome, oppressive, or constitutes an abuse of process, particularly when the request is unduly burdensome in view of the cost necessary to investigate weighed against Defendants' need for the information or document.

6.       Plaintiffs object to each Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection. The production of any privileged information or document by Plaintiffs is unintentional, and Plaintiffs do not intend to waive any applicable objection or privilege as a result of such unintentional production. Except for items Plaintiffs may from time to time decide to include, Plaintiffs will not log protected items in connection with or in relation to the subject of this litigation dated subsequent to its commencement.

7.      Plaintiffs object to each Interrogatory to the extent that it might be construed as calling for a legal conclusion. Any responses or the production of documents by Plaintiffs shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrases used in Defendants' interrogatories.

8.      Plaintiffs object to each Interrogatory to the extent that it seeks information or documents already in the possession of Defendants, or in the public domain and that are as readily available to Defendants as they are to Plaintiffs.

9.      Plaintiffs object to each Interrogatory, and to the accompanying definitions and instructions, to the extent that they seek information or documents beyond Plaintiffs' possession, custody, or control, or that calls for Plaintiffs to prepare documents or things that do not currently exist.

10.      Plaintiffs object to each Interrogatory to the extent that it seeks information or documents that are cumulative or duplicative of information or documents already provided by Plaintiffs.

11.      Plaintiffs object to each Interrogatory as overbroad and unduly burdensome to the extent that it is unlimited in temporal scope or otherwise not limited to a time frame relevant to this litigation.

12.      Plaintiffs object to each Interrogatory to the extent that it seeks documents or information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13.      Plaintiffs object to each Interrogatory to the extent that it seeks information or documents that Plaintiffs are not allowed to disclose pursuant to either a court order or pursuant to confidentiality obligations or agreements with third parties.

14.     Plaintiffs object to each Interrogatory to the extent that it is vague and ambiguous.

15.     Plaintiffs object to each Interrogatory to the extent that it is duplicative of any other interrogatory.

16.     Plaintiffs object to each Interrogatory to the extent that it lacks foundation or assumes facts that are incorrect or unknown to Plaintiffs.

17.     Plaintiffs object to each Interrogatory to the extent that it seeks discovery of material within the scope of Federal Rule of Civil Procedure 26(b)(4), and therefore constitutes an improper and premature attempt to conduct discovery of expert opinion.

18.     Plaintiffs object to each Interrogatory, and to the accompanying definitions and instructions, to the extent that they ask for information or documents "concerning" or "relating to" the subject matter of the request on the grounds that such instructions, definitions, and requests are overly broad and impermissibly seek the mental impressions and thoughts of counsel in violation of the work product doctrine.

19.     Plaintiffs object to each Interrogatory to the extent that it purports to attribute any special or unusual meaning and/or scope to any technical terms or phrases.

20.     Plaintiffs object to each interrogatory, and to the accompanying definitions and instructions, to the extent that they purport to alter the plain meaning and/or scope of any terms or phrases in any specific request and thereby render such request vague, ambiguous, overly broad or uncertain.

21.     Helios incorporates these General Objections into each response herein as if fully set forth.

## RESPONSES

### INTERROGATORY NO. 1:

Describe in detail which claims of the Patents-in-suit You contend are and are not essential to practicing ISO/IEC 23009-1, including the reasons why each claim of the Patents-in-suit is or is not essential to practicing ISO/IEC 23009-1.

### RESPONSE TO INTERROGATORY NO. 1:

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document. Helios objects to this Interrogatory as compound as it comprises multiple subparts, including 99 individual inquiries each relating to multiple versions of ISO/IEC 23009-1.  This is far in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1).  Helios objects to this Interrogatory as a premature contention interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first address" until the January 25, 2021 "date established for the completion of document production."  Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Page 7 of 55

As stated in the Complaint against Showtime (C.A. No. 1:19-cv-01978-CFC/SRF, D.I. 2 at ¶26) and the First Amended Complaint against Vudu (C.A. No. 1:19-cv-01792-CFC/SRF, D.I. 45 at ¶24), "The claimed inventions of the [Patents-in-suit] have been incorporated into the standard for dynamic adaptive streaming delivery of MPEG media over HTTP, ISO/IEC 23009-1:2014, and subsequent versions of this standard."  Helios's claim chart exhibits, incorporated by reference into the Complaint against Showtime and the First Amended Complaint against Vudu, provide additional evidence relating the limitations of the asserted claims to ISO/IEC 23009-1:2014 and to the MPEG-DASH hierarchical structure more generally.

Helios's investigation is ongoing and Helios reserves the right to supplement or amend these responses based on additional discovery and investigation, in particular after claim construction and expert discovery.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving the objections set forth above, Helios responds as follows:

Claims 1, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, and 16 of U.S. Patent No. 10,027,736 are essential to practicing ISO/IEC 23009-1.

Claims 1, 3, 5, 6, 8, 11, 12, 13, 15, 18, 19, and 21 of U.S. Patent No. 10,270,830 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 3, 4, 8, 10, 11, 12, 13, 14, 18, 20 and 21 of U.S. Patent No. 10,277,660 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 4, 5, 6, 7, 11, 14, 15, 16, and 17 of U.S. Patent No. 10,313,414 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 3, and 4 of U.S. Patent No. 10,356,145 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, and 4 of U.S. Patent No. 9,467,493 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 4, and 5 of U.S. Patent No. 10,362,130 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 4, 5, 6, 7, 9, 10, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, and 23 of U.S. Patent No. 10,375,373 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 4, 5, 7, and 8 of U.S. Patent No. 8,645,562 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 3, and 4 of U.S. Patent No. 8,909,805 are essential to practicing ISO/IEC 23009-1.

Claims 1, 2, 3, 4, and 5 of U.S. Patent No. 9,325,558 are essential to practicing ISO/IEC 23009-1.

For the claims of the patents in suit not otherwise identified above, Helios makes no contention regarding their essentiality to the ISO/IEC 23009-1 standard.  Helios's investigation is ongoing and Helios reserves the right to supplement or amend these responses based on additional discovery and investigation, in particular after claim construction and expert discovery.

**INTERROGATORY NO. 2:**

For any claim of the Patents-in-suit that You contend is essential to practicing ISO/IEC 23009-1 in response to Interrogatory No. 1, describe in detail the licensing terms on which You are offering or have offered a license that You contend meets any FRAND obligations relating to those claims, including identifying any licenses that You have entered with respect to those claims and detailing the date and circumstances when You offered a license to those claims to Defendants on those licensing terms.

**RESPONSE TO INTERROGATORY NO. 2:**

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants. Helios objects to this Interrogatory as vague and ambiguous. Helios further objects to this Interrogatory to the extent it requests information protected by attorney-client privilege, the work-product doctrine, the common-interest doctrine, or any other applicable law, privilege, or protection. Helios objects to this Interrogatory as compound as it comprises multiple subparts, including 99 individual inquiries each relating to multiple versions of ISO/IEC 23009-1. This is far in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as a premature contention interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first address" until the January 25, 2021 "date established for the completion of document production." Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies HEL_0018108 as responsive to this Interrogatory.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies HEL_0018109 as responsive to this Interrogatory.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**INTERROGATORY NO. 3:**

Describe in detail any promise, agreement, commitment, or other representation to license on a non-discriminatory basis and on reasonable terms and conditions ("RAND Commitment") that relates to the claims of the Patents-in-suit, including identifying when the RAND Commitment

was made, by whom it was made, to whom it was made, which claims of the Patents-in-suit are subject to the RAND Commitment, and the reasons for any contention by You that a claim of the Patents-in-suit is not subject to a RAND Commitment.

## RESPONSE TO INTERROGATORY NO. 3:

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory as compound as it comprises multiple subparts. Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory to the extent it seeks information which is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence.  Helios objects to this Interrogatory as overbroad, unduly burdensome, duplicative, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.

Helios objects to this Interrogatory as a premature contention interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first address" until the January 25, 2021 "date established for the completion of document production."  Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.  Helios further objects to this Interrogatory as vague and ambiguous, particularly regarding the terms "other representation to license," "RAND Commitment," and "the RAND Commitment."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies HEL_0018109 as responsive to this Interrogatory.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**INTERROGATORY NO. 4:**

Separately, for each claim of the Patents-in-suit, describe in detail the facts and circumstances of the conception, reduction to practice, and, if You allege that the claimed invention was reduced to practice prior to respective the filing dates of the Patents-in-suit, diligence between conception and reduction to practice, including: the date(s) of conception, reduction to practice, and events showing diligence between conception and reduction to practice of the claimed invention; the design and development of the claimed invention, and the first written description, drawing, disclosure, disclosure to any third party, use, public use, commercial use, offer for sale, and sale of the claimed invention; and all persons and/or entities with knowledge of such dates and/or facts.

**RESPONSE TO INTERROGATORY NO. 4:**

Helios incorporates the General Objections set forth above as if fully set forth herein.

Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants through third parties. Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist. Helios objects to this Interrogatory to the extent it seeks information which is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence. Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document. Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios. Helios objects to this Interrogatory as vague and ambiguous. Helios objects

to this Interrogatory as compound as it comprises multiple subparts, including 99 inquiries, each containing multiple additional subparts.  This is far in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1).  Helios objects to this Interrogatory as a premature contention interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first address" until the January 25, 2021 "date established for the completion of document production."  Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.

Helios objects to this Interrogatory as duplicative of Interrogatory Nos. 5 and 6.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios is currently relying upon the earliest priority date for each Patent-in-suit as the date of constructive conception and the date constructive reduction to practice for each claimed invention in that patent.  Therefore, Helios is under no obligation to provide evidence of either actual conception or actual reduction to practice of any of the asserted claims in the Patents-in-suit.  *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 204663, (D. Del. Nov. 25, 2019).  Accordingly, Helios provides the following dates of constructive conception and reduction to practice for each Patent-in-suit:

The inventions claimed in the '830 patent were conceived and reduced to practice at least as early as March 16, 2011, by Truong Cong Thang and Jin Young Lee.

The inventions claimed in the '660 patent were conceived and reduced to practice at least

as early as September 6, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '414 patent were conceived and reduced to practice at least as early as March 16, 2011 by Truong Cong Thang and Jin Young Lee.

The inventions claimed in the '145 patent were conceived and reduced to practice at least as early as September 1, 2010 by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, and Won Ryu.

The inventions claimed in the '130 patent were conceived and reduced to practice at least as early as July 20, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '373 patent were conceived and reduced to practice at least as early as July 24, 2013, by Jin Young Lee and Nam Ho Hur.

The inventions claimed in the '562 patent were conceived and reduced to practice at least as early as September 6, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '805 patent were conceived and reduced to practice at least as early as October 6, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '558 patent were conceived and reduced to practice at least as early as July 20, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '493 patent were conceived and reduced to practice at least as early as September 6, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

The inventions claimed in the '736 patent were conceived and reduced to practice at least as early as September 6, 2010, by Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

If, through its ongoing investigation into these issues, Helios learns of earlier dates of conception and reduction to practice for the inventions claimed in the Patents-in-suit, Helios will supplement or amend the above responses in due course based on its additional findings.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios is currently relying upon the earliest priority date for each Patent-in-suit (listed above) as the date of constructive conception and the date constructive reduction to practice for each claimed invention in that patent.

If, through its ongoing investigation into these issues, Helios learns of earlier dates of conception and reduction to practice for the inventions claimed in the Patents-in-suit (including, but not limited to, the testimony of foreign inventors currently sought by Defendants (D.I. 108)), Helios will supplement or amend the above responses in due course based on its additional findings.

## INTERROGATORY NO. 5:

For each of the date(s) of the conception and reduction to practice of the claimed inventions of the Patents-in-suit You identify in response to Interrogatory No. 4, identify all evidence You intend to rely upon in this Litigation to demonstrate those dates, including identifying the inventors for each of the Patents-in-suit upon whose testimony You intend to rely and all documents (by

Bates number) on which you intend to rely.

**RESPONSE TO INTERROGATORY NO. 5:**

Helios incorporates the General Objections set forth above as if fully set forth herein.

Helios further objects to this Interrogatory to the extent it seeks information equally available to

Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or

documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare

documents or things that do not currently exist.  Helios objects to this Interrogatory as compound

as it comprises multiple subparts, including 99 inquiries, each containing multiple additional

subparts.  This is far in excess of the number of interrogatories allowed by Fed. R. Civ. P.

33(a)(1).  Helios objects to this Interrogatory as a premature contention interrogatory, which,

pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first

address" until the January 25, 2021 "date established for the completion of document

production."  Helios further objects to this Interrogatory as premature to the extent it calls for

expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses

are contingent upon the Court's claim construction ruling, which the Court is not scheduled to

provide until on or about June 17, 2021.  Moreover, Helios objects to this Interrogatory as

premature as it seeks the contents of Helios's list of fact witnesses to be called at trial, which,

pursuant to paragraph 2.j.i. of the Court's Scheduling Order, Helios is not obligated to disclose

until one month after the close of expert discovery, which is currently scheduled to occur in the

fall of 2021.

Helios objects to this Interrogatory as duplicative of Interrogatory Nos. 4 and 6.

Subject to and without waiving the objections set forth above, Helios responds as

follows:

Helios is currently relying upon the earliest priority date for each Patent-in-suit as the

date of constructive conception and the date constructive reduction to practice for each claimed

invention in that patent.  Therefore, Helios is under no obligation to provide evidence of either

actual conception or actual reduction to practice of any of the asserted claims in the Patents-in-

suit. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 204663, (D. Del. Nov. 25, 2019). Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies the following documents as responsive to this Interrogatory:

HEL_0000001 - HEL_0000659, HEL_0000660 - HEL_0000951, HEL_0000952 - HEL_0002099, HEL_0002100 - HEL_0002339, HEL_0002340 - HEL_0003188, HEL_0003189 - HEL_0003616, HEL_0003617 - HEL_0004096, HEL_0004097 - HEL_0004338, HEL_0004339 - HEL_0005379, HEL_0005380 - HEL_0005616, and HEL_0005617 - HEL_0006415.

If, through its ongoing investigation into these issues, Helios learns of earlier dates of conception and reduction to practice for the inventions claimed in the Patents-in-suit, Helios will supplement or amend the above responses in due course based on its additional findings.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios reiterates that it is currently relying upon the earliest priority date for each Patent-in-suit (listed above in Helios's response to interrogatory No. 4) as the date of constructive conception and the date of constructive reduction to practice for each claimed invention in that patent.

If, through its ongoing investigation into these issues, Helios learns of earlier dates of conception and reduction to practice for the inventions claimed in the Patents-in-suit (including, but not limited to, the testimony of foreign inventors that Defendants are currently seeking (D.I. 108)), Helios will supplement or amend the above responses as appropriate based on additional information discovered.

**INTERROGATORY NO. 6:**

Separately for each claim of the Patents-in-suit You contend is infringed by any one of Defendants, state the earliest priority date to which You claim entitlement and identify all facts and circumstances supporting entitlement to that priority date, including identifying, on a limitation-by-limitation basis, the specific portions of the specification of each application that supports the priority claim.

**RESPONSE TO INTERROGATORY NO. 6:**

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.  Helios objects to this Interrogatory as compound as it comprises multiple subparts, including 99 individual inquiries each including multiple subparts.  This is far in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1).  Helios objects to this Interrogatory as a premature contention interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to "first address" until the January 25, 2021 "date established for the completion of document production."  Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.

Helios objects to this Interrogatory as duplicative of Interrogatory Nos. 4 and 5.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios is currently relying upon the earliest priority date for each Patent-in-suit as the date of constructive conception and the date constructive reduction to practice for each claimed invention in that patent.  Therefore, Helios is under no obligation to provide evidence of either actual conception or actual reduction to practice of any of the asserted claims in the Patents-in-

suit.  *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 204663, (D. Del. Nov. 25, 2019).

If, through its ongoing investigation into these issues, Helios learns of earlier priority dates for the inventions claimed in the Patents-in-suit, Helios will supplement or amend the above responses in due course based on its additional findings.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios reiterates that it is currently relying upon the earliest priority date for each Patent-in-suit (listed above in Helios's response to interrogatory No. 4) as the date of constructive conception and the date of constructive reduction to practice for each claimed invention in that patent.

If, through its ongoing investigation into these issues, Helios learns of earlier dates of conception and reduction to practice for the inventions claimed in the Patents-in-suit (including, but not limited to, the testimony of foreign inventors that Defendants are currently seeking (D.I. 108)), Helios will supplement or amend the above responses as appropriate based on additional information discovered.

## INTERROGATORY NO. 7:

Separately for each claim of each of the Patents-in-suit, describe all prior art identified by You or any third-party, including but not limited to describing when You first became aware of such prior art and identifying all persons with knowledge about the information requested in this Interrogatory and all documents and other evidence supporting or refuting Your response.

## RESPONSE TO INTERROGATORY NO. 7:

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or

documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory to the extent it seeks information that is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence.  Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.  Helios objects to this Interrogatory as compound and/or containing multiple discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios.  Helios objects to this Interrogatory as vague and ambiguous.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios became aware of the following alleged prior art by at least approximately April 30, 2018.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- U.S. Patent No. 7,552,228
- U.S. Patent No. 7,624,337
- U.S. Patent No. 7,725,829
- U.S. Patent No. 7,823,055
- U.S. Patent No. 8,201,204
- U.S. Patent No. 8,209,609
- U.S. Patent No. 8,365,271
- U.S. Patent No. 8,533,310
- U.S. Patent No. 8,635,360
- U.S. Patent No. 8,782,268

- U.S. Patent No. 8,806,615
- U.S. Patent No. 8,912,835
- U.S. Patent No. 8,935, 249
- U.S. Patent No. 9,264,069
- U.S. Patent No. 9,281,847
- U.S. Patent No. 9,319,448
- U.S. Patent No. 9,325,558
- U.S. Patent No. 9,037,502
- U.S. Patent No. 9,160,799
- U.S. Patent No. 9,176,984
- U.S. Patent No. 9,277,252
- U.S. Patent No. 9,319,448
- U.S. Patent No. 9,369,687
- U.S. Patent No. 9,467,493
- U.S. Patent No. 9,473,476
- U.S. Patent No. 9,497,290
- U.S. Patent No. 9,531,579
- U.S. Patent No. 9,531,779
- U.S. Patent No. 9,558,282
- U.S. Patent No. 9,607,655
- U.S. Patent No. 9,621,610
- U.S. Patent No. 9,646,352
- U.S. Patent No. 9,652,559
- U.S. Patent No. 9,661,104
- U.S. Patent No. 9,699,486
- U.S. Patent No. 9,716,736
- U.S. Patent No. 9,729,830

- U.S. Patent No. 9,756,364
- U.S. Patent No. 9,762,635
- U.S. Patent No. 9,781,188
- U.S. Patent No. 9,813,472
- U.S. Patent No. 9,838,450
- U.S. Patent No. 9,860,573
- U.S. Patent No. 9,872,329
- U.S. Patent No. 9,917,874
- U.S. Patent No. 9,961,388
- U.S. Patent No. 9,967,598
- U.S. Patent No. 9,978,023
- U.S. Patent No. 9,973,740
- U.S. Patent Publication No. 2002/0105951 A1
- U.S. Patent Publication No. 2003/0093790 A1
- U.S. Patent Publication No. 2003/0236912 A1
- U.S. Patent Publication No. 2004/0064577 A1
- U.S. Patent Publication No. 2004/0208120 Al
- U.S. Patent Publication No. 2005/0005308 A1
- U.S. Patent Publication No. 2005/0076136 A1
- U.S. Patent Publication No. 2005/0102371 Al
- U.S. Patent Publication No. 2005/0193408 A1
- U.S. Patent Publication No. 2005/0193425 A1
- U.S. Patent Publication No. 2005/0203927 A1
- U.S. Patent Publication No. 2005/0204385 A1
- U.S. Patent Publication No. 2005/0273514 A1
- U.S. Patent Publication No. 2005/0071755 A1
- U.S. Patent Publication No. 2006/0047779 A1

- U.S. Patent Publication No. 2006/0174315 A1
- U.S. Patent Publication No. 2006/0109856 A1
- U.S. Patent Publication No. 2006/0218143 A1
- U.S. Patent Publication No. 2006/0235883 A1
- U.S. Patent Publication No. 2006/0251093 A1
- U.S. Patent Publication No. 2007/0003251 A1
- U.S. Patent Publication No. 2007/0033170 A1
- U.S. Patent Publication No. 2007/0033292 Al
- U.S. Patent Publication No. 2007/0033515 A1
- U.S. Patent Publication No. 2007/0033521 A1
- U.S. Patent Publication No. 2007/0033533 Al
- U.S. Patent Publication No. 2007/0038612 Al
- U.S. Patent Publication No. 2007/0044010 A1
- U.S. Patent Publication No. 2008/0002776 A1
- U.S. Patent Publication No. 2008/0034424 Al
- U.S. Patent Publication No. 2008/0050096 A1
- U.S. Patent Publication No. 2008/0126943 A1
- U.S. Patent Publication No. 2008/0155602 A1
- U.S. Patent Publication No. 2008/0172441 Al
- U.S. Patent Publication No. 2008/0222244 A1
- U.S. Patent Publication No. 2008/0313227 Al
- U.S. Patent Publication No. 2008/0168132 A1
- U.S. Patent Publication No. 2009/0141895 A1
- U.S. Patent Publication No. 2009/0157859 Al
- U.S. Patent Publication No. 2009/0185040 A1
- U.S. Patent Publication No. 2009/0217354 A1
- U.S. Patent Publication No. 2009/0300204 Al

- U.S. Patent Publication No. 2009/0207866 A1
- U.S. Patent Publication No. 2009/0259766 A1
- U.S. Patent Publication No. 2010/0106770 A1
- U.S. Patent Publication No. 2010/0266042 A1
- U.S. Patent Publication No. 2010/0011274 A1
- U.S. Patent Publication No. 2010/0107090 A1
- U.S. Patent Publication No. 2010/0169303 A1
- U.S. Patent Publication No. 2010/0174823 Al
- U.S. Patent Publication No. 2010/0217887 Al
- U.S. Patent Publication No. 2010/0235472 A1
- U.S. Patent Publication No. 2010/0235528 Al
- U.S. Patent Publication No. 2010/0262618 A1
- U.S. Patent Publication No. 2011/0099594 A1
- U.S. Patent Publication No. 2011/0050727 Al
- U.S. Patent Publication No. 2011/0081083 Al
- U.S. Patent Publication No. 2011/0123115 A1
- U.S. Patent Publication No. 2011/0179185 A1
- U.S. Patent Publication No. 2011/0307545 Al
- U.S. Patent Publication No. 2011/0080940 A1
- U.S. Patent Publication No. 2011/0093492 A1
- U.S. Patent Publication No. 2011/0096828 A1
- U.S. Patent Publication No. 2011/0119394 A1
- U.S. Patent Publication No. 2011/0185058 A1
- U.S. Patent Publication No. 2011/0231519 Al
- U.S. Patent Publication No. 2011/0231569 A1
- U.S. Patent Publication No. 2011/0238789 Al
- U.S. Patent Publication No. 2011/0239078 A1

- U.S. Patent Publication No. 2011/0302618 A1
- U.S. Patent Publication No. 2011/0307545 Al
- U.S. Patent Publication No. 2012/0013746 A1
- U.S. Patent Publication No. 2012/0016965 A1
- U.S. Patent Publication No. 2012/0023155 A1
- U.S. Patent Publication No. 2012/0023249 Al
- U.S. Patent Publication No. 2012/0023251 A1
- U.S. Patent Publication No. 2012/0042050 A1
- U.S. Patent Publication No. 2012/0042091 A1
- U.S. Patent Publication No. 2012/0124179 A1
- U.S. Patent Publication No. 2012/0185570 A1
- U.S. Patent Publication No. 2012/0233345 A1
- U.S. Patent Publication No. 2012/0284371 A1
- U.S. Patent Publication No. 2012/0317305 A1
- U.S. Patent Publication No. 2012/0290644 A1
- U.S. Patent Publication No. 2012/0229602 A1
- U.S. Patent Publication No. 2013/0135431 A1
- U.S. Patent Publication No. 2013/0176389 A1
- U.S. Patent Publication No. 2013/0182643 A1
- U.S. Patent Publication No. 2013/0185398 A1
- U.S. Patent Publication No. 2013/0007223 Al
- U.S. Patent Publication No. 2013/0042100 A1
- U.S. Patent Publication No. 2013/0117413 Al
- U.S. Patent Publication No. 2013/0182643 A1
- U.S. Patent Publication No. 2013/0191550 A1
- U.S. Patent Publication No. 2013/0254631 Al
- U.S. Patent Publication No. 2013/0262567 A1

- U.S. Patent Publication No. 2013/0286879 A1
- U.S. Patent Publication No. 2013/0290492 Al
- U.S. Patent Publication No. 2013/0298170 A1
- U.S. Patent Publication No. 2014/0137168 A1
- U.S. Patent Publication No. 2014/0258861 A1
- U.S. Patent Publication No. 2015/0172348 A1
- U.S. Patent Publication No. 2015/0280965 A1
- U.S. Patent Publication No. 2015/0195572 A1
- U.S. Patent Publication No. 2016/0134874 A1
- U.S. Patent Publication No. 2016/0345007 A1
- U.S. Patent Publication No. 2016/0165210 A1
- U.S. Patent Publication No. 2016/0239749 A1
- U.S. Patent Publication No. 2016/0269461 A9
- U.S. Patent Publication No. 2017/0142180 A1
- U.S. Patent Publication No. 2018/0159909 A1
- U.S. Patent Publication No. 2019/0075179 A1
- EP 1,302,869 A1
- WO U.S. Patent Publication No. 2011/038032
- JP 2002-335519
- JP U.S. Patent Publication No. 2005/020588
- JP U.S. Patent Publication No. 2005/071318
- JP U.S. Patent Publication No. 2008/259001
- KR 1020050000490
- KR 1020050055820
- KR 1020050075633
- KR 1020080108568
- KR 10-2004-0025994 A

- KR 10-2006-0087793 A

- KR 10-0687730 B1

- WO 03073768 A1

- WO U.S. Patent Publication No. 2008/049446 A1

- WO U.S. Patent Publication No. 2010/082786 A2

- WO U.S. Patent Publication No. 2011/038032 A2

- 3GPP "3rd Generation Partnership Project; Technical Specification Group Services and System Aspects Transparent end-to-end Packet switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GP-DASH )," 3GPP Organizational Partners, (Release 10) Aug. 2010, France, pp.1-34.

- "3GPP TS 26.cde V1.0.0, 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GP-DASH) (Release 10)," Aug. 2010, Valbonne, France.

- 3GPP TSG-SA4 Meeting #60 S4-100642.XP050638790.  Aug. 16-20, 2010.

- 3Generation Partnership Project Organization Partner, "Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GP-DASH)", 3GPP TW 26.cd V1.0.0, Aug. 2010, pp. 3-34, Valbonne, France.

- Chinese Office Action dated Jan. 25, 2016, in counterpart Chinese Application No. 201280013527.7.

- Christian Timmerer, *et al*., "HTTP Streaming of MPEG Media," Proceedings of Streaming Day, Sep. 2010.

- Description of Evaluation Experiments on ISO/IEC 23001-6, Dynamic Adaptive Streaming over HTTP, ISO/IEC JTC1/SC29/WG11, Jul. 2010, MPEGU.S.

Patent Publication No. 2010/N11450, Geneva, Switzerland.

- ETSI "Universal Mobile Telecommunications System; LTE; Transparent end-to-end Packet-switched Streaming Service (PSS); Protocols and codecs (3GPP TS 26.234 version 93.0 Release 9)," ETSI TS 126 234, V9.3.0, Jun. 2010, pp. 1-184, ETSI, France.

- Huawei Technologies Co., Ltd. "Partial Representation Management".  3GPP DRAFT; 3rd Generation Partnership Project (3GPP).

- "HTTP Streaming: Media presentation data model," 3GPP TSGSA4 # 56, Sophia Antipolis, France, Nov.9-13, 2009.

- "Information Technology-Dynamic Adaptive Streaming over HTTP (DASH) - Part 1: Media presentation description and segment format" of ISO/IEC DIS 23009-1.  Aug. 30, 2011.

- International Search Report dated Oct. 4, 2012 in counterpart International Application No. PCT/KRU.S. Patent Publication No. 2012/001922.

- MPEGU.S. Patent Publication No. 2013/M30274, Vienna, Austria, Aug. 2013 (5 pages).

- Partial Representation Management, 3GPP TSG-SA4 Meeting # 60, Aug. 16-20, 2010, pp.1-3, Huawei Technologies Co. Ltd. Erlangen, Germany.

- Pyle, H. *et al*., "Microsoft HTTP Smooth Streaming: Microsoft response to the ISO/IEC/JTC1/SC29/WG11/N1338 Call for Proposal on HTTP Streaming," MPEGU.S. Patent Publication No. 2010/M17902, Jul. 2010, pp.1-31, Microsoft Corporation, Geneva, Switzerland.

- R. Fielding *et al*.," Hypertext Transfer Protocol-HTTP1.1," RFC 2616, Jun. 1999, pp.1-176, The Internet Society.

- Rusanovskyy, D., *et al*., "3D-AVC Test Model 6," 4th Meeting of Joint Collaborative Team on 3D Video Coding Extension Development of ITU-T SG

16 WP3 and ISO/IEC JTC 1/SC 29/WG 11, held in Incheon Korea on Apr. 20-26, 2013 (39 pages).

- Stockhammer, T. *et. al.*, "Information technology—MPEG systems technologies—Part 6: Dynamic adaptive streaming over HTTP (DASH)," International Organization for Standardization, ISO/IEC JTCI/SC29/WG11 Coding of Moving Pictures and Audio, ISO/IEC CD 23001-6, Oct. 15, 2010, Guangzhou, China.

- Thang, T., *et al.*, "Improved Relations for Advanced Media Components," ETRI, University of Aizu, ISO/IEC/JTC1/SC29/WG11.

- Thang T., *et al.*, "Signaling Metadata for Adaptive HTTP Streaming," 93.MPEG Meeting; Jul. 26, 2010- Jul. 30, 2010; Geneva; (Motion Picture Expert Group or ISO/IEC JTC1/SC29/WG11), No. M17771, Jul. 21, 2010, XP030046361, p.12, line 1-p.13,last line; p.1,line 1-p.3.

- "Universal Mobile Telecommunications System," ETSI TS 126, 234, Jun. 2010, pp.1-184, V9.3.0, Sophia Antipolis Cedex, France.

- "Use cases for Rel-10 Adaptive HTTP Streaming," 3GPP TSG SA4 # 60, Qualcomm Incorporated, Aug. 16-20, 2010, Erlangen, Germany.

- Ying Chen *et al.*, "Response to the CfP on HTTP Streaming: Adaptive Video Streaming based on AVC," International Organisation for Standardisation, Jul. 2010, pp. 1-20, ISO/IEC JTC1/SC29 /WG11, MPEG U.S. Patent Publication No. 2010/M17909, Qualcomm Incorporated, Geneva, Switzerland.

- Zambelli, A., IIS Smooth Streaming Technical Overview, Mar. 2009, Microsoft Corporation.

Helios became aware of the following alleged prior art by at least approximately January 24, 2020.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- U.S. Patent No. 7,188,172
- U.S. Patent No. 7,391,717
- U.S. Patent No. 7,451,229 B2
- U.S. Patent No. 7,502,770
- U.S. Patent No. 7,865,928
- U.S. Patent No. 7,895,525
- U.S. Patent No. 7,987,492
- U.S. Patent No. 8,099,473
- U.S. Patent No. 8,244,901
- U.S. Patent No. 8,379,851
- U.S. Patent No. 8,438,312
- U.S. Patent No. 8,515,265
- U.S. Patent No. 8,555,328
- U.S. Patent No. 8,560,642
- U.S. Patent No. 8,677,005
- U.S. Patent No. 8,732,274
- U.S. Patent No. 8,782,268
- U.S. Patent No. 8,891,946
- U.S. Patent No. 8,918,533
- U.S. Patent No. 8,966,104
- U.S. Patent No. 8,966,106
- U.S. Patent No. 9,009,337
- U.S. Patent No. 9,049,498
- U.S. Patent No. 9,124,642
- U.S. Patent No. 9,130,799
- U.S. Patent No. 9,195,775
- U.S. Patent No. 9,253,103

- U.S. Patent No. 9,277,252
- U.S. Patent No. 9,369,687
- U.S. Patent No. 9,438,860
- U.S. Patent No. 9,497,290
- U.S. Patent No. 9,538,220
- U.S. Patent No. 9,596,278
- U.S. Patent No. 9,621,610
- U.S. Patent No. 9,672,286
- U.S. Patent No. 9,967,598
- U.S. Patent No. 9,756,364
- U.S. Patent No. 9,769,230
- U.S. Patent No. 9,843,839
- U.S. Patent No. 9,843,839
- U.S. Patent No. 9,906,580
- U.S. Patent No. 10,003,851
- U.S. Patent No. 10,007,668
- U.S. Patent No. 10,225,584
- U.S. Patent Publication No. 2005/0102371 A1
- U.S. Patent Publication No. 2006/0248192 A1
- U.S. Patent Publication No. 2006/0041871 A1
- U.S. Patent Publication No. 2008/0022007 A1
- U.S. Patent Publication No. 2008/0134018 A1
- U.S. Patent Publication No. 2010/0199327 A1
- U.S. Patent Publication No. 2010/0235472 A1
- U.S. Patent Publication No. 2011/0119394 A1
- U.S. Patent Publication No. 2011/0066676
- U.S. Patent Publication No. 2012/0016965 A1

- U.S. Patent Publication No. 2012/0023251 A1

- U.S. Patent Publication No. 2012/0033037 A1

- U.S. Patent Publication No. 2012/0233345 A1

- U.S. Patent Publication No. 2012/0290644 A1

- U.S. Patent Publication No. 2012/0016965 A1

- U.S. Patent Publication No. 2012/0023251 A1

- U.S. Patent Publication No. 2012/0185570 A1

- U.S. Patent Publication No. 2012/0278495 A1

- U.S. Patent Publication No. 2014/0010286 A1

- U.S. Patent Publication No. 2017/0132182

- WO2007029916A1

- WO2005046140A1

- Sodagar, I., *The MPEGDASH Standard for Multimedia Streaming Over the Internet*, IEEE MultiMedia, 2011, 18(4):62-67.

Helios became aware of the following alleged prior art by at least approximately July 23, 2020. Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- "The Open Archives Initiative Protocol for Metadata Harvesting," Protocol Version 2.0 of 2002-06-14, Document Version 2004/10/12T15:31:00Z.

- 3GPP TS 26.234 V9.2.0 (2010-03): "3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Transparent end-to-end Packet-switched Streaming Service (PSS); Protocols and codecs (Release 9).

Helios became aware of the following alleged prior art by at least approximately September 28, 2020. Helios does not concede that any of the following references qualifies as

prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- DIS23009-1: ISO/IEC DIS23009-1, "Information technology—Dynamic adaptive streaming over HTTP (DASH)—Part 1: Media presentation description and segment formats"
- TS 26.247:  3GPP TS 26.247 V.10.1.0 (2011-11), "3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GP-DASH)" (Release 10).

Discovery in this matter is ongoing, and Helios reserves its right to supplement this response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios became aware of the following alleged prior art by at least approximately July 28, 2020.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- Stockhammer, "3GPP Dynamic Adaptive Streaming over HTTP – Standard and Design Principles", Published in MMSys '11 proceeding of second annual ACM conference on Multimedia Systems, ACM New York NY, USA 2011, Pages 133-144
- Information technology — MPEG systems technologies - Part 6: Dynamic adaptive streaming over HTTP (DASH), Draft International Standard, ISO/IEC DIS 23001-6 (2011)

- Universal Mobile Telecommunications System (UMTS); LTE; Transparent end-to-end Packet-switched Streaming Service (PSS); Protocols and codecs (3GPP TS 26.234 version 9.3.0 Release 9), ETSI Technical Specification 126 234 V9.3.0 (Jun. 2010)

- Stockhammer, MPEG's Dynamic Adaptive Streaming over HTTP (DASH) – Enabling Formats for Video Streaming over the Open Internet, Qualcomm Incorporated, Webinar at EBU (Nov. 22, 2011)

- MPEG DASH Subgroup, Short Tutorial on MPEG-DASH, Dynamic Adaptive Streaming Over Internet, ISO/IEC 23009-1 (Nov. 2011)

- Mazhar, Compliance Procedures for Dynamic Adaptive Streaming over HTTP (DASH), Master's Degree Project, KTH Royal Institute of Technology (July 30, 2011)

- Universal Mobile Telecommunications System (UMTS); LTE; Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GPDASH) (3GPP TS 26.247 version 10.0.0 Release 10), ETSI Technical Specification, 126 247 V10.0.0 (Jun. 2011)

- *Information technology — Dynamic adaptive streaming over HTTP (DASH) — Part 1: Media presentation description and segment formats*, International Standard, ISO/IEC 23009-1:2012(E) (Apr. 1, 2012)

- Morgan, *Getting Started with XML: A Manual and Workshop*, http://www.infomotions.com/musings/getting-started/getting-started.pdf (archived at least as early as 2004)

- U.S. Patent No. 7,895,525

- U.S. Patent No. 7,805,814

- U.S. Patent No. 9,338,216

- U.S. Patent No. 9,432,433

Helios became aware of the following alleged prior art by at least approximately October 28, 2020.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Transparent end-to-end Packet-switched Streaming Services (PSS); Protocols and codecs, 3GPP Technical Specification 26.234 V9.2.0 (Mar. 2010)
- Anders Møller and Michael I. Schwartzbach, "An Introduction to XML and Web Technologies," pp. 92-187 (Ch. 4 - Schema Languages) (January 2006)
- Borenstein et al., "MIME (Multipurpose Internet Mail Extensions) Part One: Mechanisms for Specifying and Describing the Format of Internet Message Bodies," Network Working Group, Request for Comments: 1521 (Sep. 1993)
- Ericsson, "Media Presentation Description in HTTP Streaming," 3GPPSA4 Meeting #57, TDoc S4-100080 (25-29 Jan 2010, St. Julian, Malta)
- R. Felding, "Relative Uniform Resource Locators," Network Working Group, Request for Comments: 1808 (June 1995)
- Hannuksela, Miska and Wang, Ye-Kui, "DASH: Indication of Subsegments Starting with SAP," Nokia Corporation and Huawei Technologies, Input Contribution ISO/IEC JTC1/SC29/WG, MPEG2011, Contribution M21096 (July 2011, Torino, Italy)
- Hofmann and Fuchs, "Signaling of essential audio parameters," Fraunhofer IIS, ISO/IEC JTC1/SC9/WG11, MPEG2011, Contribution m18689 (January 2011, Daegu, Korea)

- Huawei Technologies Co., Ltd., "HTTP Streaming – the Static Content Serving Mode," 3GPP TSG-SA4 Meeting #56, TDoc S4-090875 (Sophia-Antipolis, France, November 9- 13, 2009) (defined in these Invalidity Contentions as "TDoc S4-090875")

- Information technology — MPEG systems technologies — Part 6: Dynamic adaptive streaming over HTTP (DASH), Draft International Standard, ISO/IEC DIS 23001-6 (July 14, 2011)

- Information Technology – MPEG systems technologies – Part 6: Dynamic adaptive streaming over HTTP (DASH), ISO/IEC JTC 1/SC29 (January 28, 2011) (FCD 23001-6)

- Information technology — Dynamic adaptive streaming over HTTP (DASH) — Part 1: Media presentation description and segment formats, Draft International Standard, ISO/IEC DIS 23009-1 (Aug. 30, 2011)

- Information technology — Dynamic adaptive streaming over HTTP (DASH) — Part 1: Media presentation description and segment formats, International Standard, ISO/IEC 23009-1:2012(E) (Apr. 1, 2012)

- McCallum, "Managing RPM-Based Systems with Kickstart and Yum" (O'Reilly Media, Inc. 2007)

- Microsoft et al., "MPD Representation Groups and MPD Fragmentation," ISO/IEC JTC1/SC29/WG11, MPEG2010, Contribution m18551 (Guangzhou, China, Oct. 2010)

- Ogbuji, "When to use elements versus attributes," Principles of XML Design (Mar. 4, 2004) "Permanent Document for 'PSS and MBMS Extensions,' V.0.0.4," 3GPP TSGSA4 Meeting #56, TDoc S4-090817 (Sophia Antipolis, France, November 9-13, 2009)

- Qualcomm Europe S.A.R.L, "Baseline Architecture and Definitions for HTTP Streaming," 3GPP TSG-SA4 Meeting #55, TDoc S4-090603 (Kista, Sweden, August 17-21, 2009)

- Qualcomm Europe S.A.R.L., "HTTP Streaming Draft Specification for Static HTTP," 3GPP TSG-SA4#56, TDoc S4-090816 (Sophia Antipolis, France, November 9-13, 2009)

- Qualcomm Europe S.A.R.L, "HTTP Streaming: Media Presentation Data Model," 3GPP TSG-SA4#56, TDoc S4-090814 (Sophia Antipolis, France, November 9-13, 2009)

- Qualcomm Incorporated et al., "Adaptive HTTP Streaming – Summary of Offline Discussions," 3GPP TSG-SA4 Meeting #57, TDoc S4-100166 (St Julians, Malta, January 25-29, 2010)

- Qualcomm Incorporated et al., Change Request, "Essential Corrections for 3GP File Format to support Adaptive Streaming," 3GPP TSG-SA4 Meeting #58 TDoc S4-100247 (Vancouver, Canada, April 26-30, 2010)

- Qualcomm Incorporated et al., Change Request, "Essential Corrections to 3GPP Adaptive HTTP Streaming," 3GPP TSG-SA4 Meeting #58 TDoc S4-100246 (Vancouver, Canada, April 26-30, 2010)

- Qualcomm Incorporated et al., Change Request, "Essential Corrections to 3GPP Adaptive HTTP Streaming," 3GPP TSG-SA4 Meeting #58 TDoc S4-100316 (Vancouver, Canada, April 26-30, 2010)

- Qualcomm Incorporated et al., Change Request, "Updates to Adaptive HTTP Streaming," 3GPP TSG-SA4 Meeting #57, TDoc S4-100185 (St. Julian, Malta, Jan. 2010)

- Qualcomm Incorporated, "DASH: Audio Parameter signaling," ISO/IEC JTC1/SC29/WG11, MPEG2010, Contribution M20354 (July 2011, Torino, Italy)

- Qualcomm Incorporated, "Use Cases and Examples for Adaptive HTTP Streaming," 3GPP TSG-SA4 Meeting #58, TDoc S4-100254 (Vancouver, Canada, Apirl 26-30 2010)

- Qualcomm Incorporated, "Use Cases and Examples for Adaptive HTTP Streaming," 3GPP TSG-SA4 Meeting #60, TDoc S4-100581 (Erlangen, Germany, August 16-20, 2010)

- Qualcomm, "Live Services and Timing for DASH," 3GPP TSG-SA4#63, TDoc S4-110337) (Sanya, China Feb. 14-18, 2011)

- Qualcomm, "Technical Alignment with MPEG DASH," 3GPP TSG-SA4#63, TDoc S4-110225 (Sanya, China, Feb. 14-18 2011)

- Qualcomm, "Use cases for Rel-10 Adaptive HTTP Streaming," 3GPP TSGSA4#60, TDoc S4-100580 (1-20 Aug. 2010, Erlangen, Germany)

- Rejaie et al., "Proxy Caching Mechanism for Multimedia Playback Streams in the Internet" (April 16, 1999), available at http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.183.4746&rep=rep1&type=pdf.

- R. Pantos, Ed., "HTTP Live Streaming," Apple Inc. (May 1, 2009 Draft)

- Sodagar *et al.*, "Ad-hoc Group Report on Dynamic Adaptive Streaming over HTTP," ISO/IEC JTC1/SC29/WG11, MPEG2011 Contribution M20283 (July 2011, Torino, Italy) Sodagar and Lim, "Draft Evaluation Report of proposals on DASH," ISO/IEC JTC1/SC29/WG11, Contribution N11563 (July 2010, Geneva, Switzerland)

- Stockhammer, "DASH: Clarifications on Group concept in Alignment with 3GPP," ISO/IEC JTC1/SC29/WG11, MPEG2010, Input Contribution M20375 (July 2011, Torino, Italy)

- Stockhammer, "Guidelines for Timing and Live Services in DASH," Qualcomm Incorporated, ISO/IEC JTC1/SC29/WG, MPEG2010 Contribution M20090 (March 2011, Geneva, Switzerland)

- Stockhammer, Thomas and Fröjdh, Per, "WD 0.1 of 23001-6 Dynamic Adaptive Streaming over HTTP (DASH)," ISO/IEC JTC1/SC29/WG11, MPEG2010, m11398 (30 July 2010, Geneva)

- "Synchronized Multimedia Integration Language (SMIL) 1.0 Specification," W3C Recommendation (June 15, 1998)

- Telefon AB LM Ericsson, Change Request, "Essential correction of the backward compatibility for adaptive HTTP streaming," 3GPP TSG-SA4 Meeting #60, TDoc S4-100634 (Erlangen, Germany, August 16-20, 2010)

- Telefon AB LM Ericsson, Change Request, "HTTP Streaming using standard PSS clients," 3GPP TSG-SA4 Meeting #56, TDoc S4-091003 (Sophia-Antipolis, France, November 9- 13, 2009)

- "XML Elements vs. Attributes," w3schools, available at https://www.w3schools.com/xml/xml_dtd_el_vs_attr.asp

- Yoshimura et al., "Mobile Streaming Media CDN Enabled by Dynamic SMIL," WWW2002 (May 7-11, Honolulu, Hawaii)

- Jin Young Lee et al., "DASH Evolution Experiment #1: Compositions of Media Presentations (CMP) Proposal Comparison," ISO/IEC JTC1/SC29/WG11, MPEG2010 Contribution M18009 (October 2010, Guangzhou, China)

Helios became aware of the following alleged prior art by at least approximately July 23, 2020.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- Application Number 61/255,767 Filing Receipt; Confirmation No. 5324

- "The Open Archives Initiative Protocol for Metadata Harvesting," OAI Technical Committee,  available at http://www.openarchives.org/OAI/2.0/openarchivesprotocol.htm

- US Patent Application Pub. No.: 2004/0125877 A1

- US Patent Application Pub. No. 2012/0047542 A1

- Preliminary Amendment for US Serial No. 13/820,955

- 13/820,955 Notice of Allowance and Fee(s) Due

- "Extensible Markup Language (XML) 1.0 (Fifth Edition)," W3C, available at http://www.w3.org/TR/2008/REC-xml-20081126/

- "Using the Open Archives Initiative Protocol for Metadata Harvesting" by Timothy W. Cole and Muriel Foulneau

- "Lessons for the future of journals" by Carol Tenopir and Donald W. King

- "The open access scientific journal: an empirical study" by Turid Hedlund, Tomas Gustafsson, and Bo-Christer Bjork

- International Application No. PCT/KR2011/006573

Helios became aware of the following alleged prior art by at least approximately September 26, 2020.  Helios does not concede that any of the following references qualifies as prior art with respect to any Asserted Patent, and Helios reserves the right to challenge whether any of the following references qualifies as prior art with respect to any Asserted Patent:

- 3GPP TS 26.247 V10.1.0 (2011-11) 3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP(3GP-DASH) (Release 10)

- Information technology – Dynamic adaptive streaming over HTTP (DASH – Part 1: Media presentation description and segment formats ISO/IEC DIS 23009-1.2 (Ballot version)

- Technical Specification – Universal Mobile Telecommunications System (UMTS); LTE; Transparent end-to-end Packet-switched Streaming Service (PSS); Progressive Download and Dynamic Adaptive Streaming over HTTP (3GP-DASH) (3GPP TS 26.247 version 10.1.0 Release 10) ETSI TS 125 247 V10.1.0 (2012-1)

- "Liaison response to 3GPP TSG-SA4 on HTTP Streaming" JTC1/SC29/WG11 N11785 (January 2011, Daegu)

- "Liaison Response on DASH" ISO/IEC JTC1/SC29/WG11 N122065 (July 2011, Torino, Italy)

- "Liaison response to 3GPP TSG-SA4 on HTTP Streaming" ISO/IEC JTC1/SC29/WG11 N11636 (October 2010, Guangzhou)

- "Text of ISO/IEC 23001-6: Dynamic adaptive streaming over HTTP (DASH)" ISO/IEC JTC1/SC29/WG11 MPEG/N11578 (Oct 2010, Guangzhou, China)

- TSG SA WG4 Meeting #61 Document List (8-12 November 2010)

- TSG SA WG4 Meeting #63  Document List (14-18 February 2011)

- TSG SA WG4 Meeting #66 Document List (07-11 November 2011)

- TDoc S4-110368 Report for MBS SWG during SA4 #63 (14-18 February 2011, Sanya, PRC)

- TDoc S4-110178 Meeting Report for MVS SWG during SA4#62

- "Report of 97th meeting" ISO/IEC JTC/SC 29/WG 11 N12058 (July 2011, Torino, IT)

- "Resolutions of 95th Meeting" ISO/IEC JTC 1/SC 29/WG 11 N11699 (January 2011, Daegu, KR)

- [DASH] DIS 23001-6 submitted to ITTF for ballot, Thomas Stockhammer (Mon, Feb 7, 2011)

- Draft Ballot Positions and Resolutions for WG11 – v1 (INCITS/L3.1 L3.1-2011-00003)

- Ballot Positions and Resolutions for WG11 (INCITS/L3.1 L3.1-2011-00003)

- Ballot Comments on ISO/IEC DIS23001-6

- Resolutions of 97th Meeting – ISO/IEC JTC 1/SC 29/WG 11 N12056 (July 2011, Torino IT)

- [DASH] 2nd DIS of 23009-1, Thomas Stockhammer (Mon, Sept 5, 2011)

- Ballot Positions and Resolutions for WG11-v2, INCITS/L3.1 L3.1-2011-00032 (Sept 7, 2011)

- Ballot Positions and Resolutions for WG11-v3, INCITS/L3.1 L3.1-2011-00032 (Sept 18, 2011)

- Ballot Comments of ISO-IEC DIS 23009-1 (09/27/2011)

- "Liaison to DECE and ISOBMFF Amendment" ISO/IEC/JTC1/SC29/WG11 N11787 (January 2011, Daegu)

- "Call for Proposals on HTTP Streaming of MPEG Media" ISO/IEC JTC1/SC29/WG11 N11338 (April 2010, Dresden, Germany)

- "HTTP Streaming of MPEG Media Context and Objectives" ISO/IEC JTC1/SC29/WG11 N11337 (April 2010, Dresden, Germany)

- "Use Cases for HTTP Streaming of MPEG Media" ISO/IEC JTC1/SC29/WG11 N11339 (April 2010, Dresden, Germany)

- "Requirements on HTTP Streaming of MPEG Media" ISO/IEC JTC1/SC29/WG11 N11340 (April 2010, Dresden, Germany)

- "Reply to CfP on HTTP Streaming: 3GPP Adaptive HTTP Streaming" ISO/IEC JTC1/SC29/WG11 MPEG2010/M 17875 (July 2010, Geneva, Switzerland)

- ANSI Disclaimer for DIS 23001-6

- Sodagar, Irai, "The MPEG DASH Standard for Multimedia Streaming – IEEE MultiMedia" (Oct-Dec 2011)

- Sodagar, Irai "The MPEG-DASH Standard for Multimedia Streaming Over the Internet" (April 2011)

- ISO/IEC DIS 23009-1.2, Information technology — Dynamic adaptive streaming over HTTP (DASH) — Part 1: Media presentation description and segment formats, available at https://standards.incits.org/apps/org/workgroup/refdocs/download.php/27650

- ANSI Disclaimer for DIS 23009-1

- Moller et al, "An Introduction to XML and Web Technologies" Ch. 4 - Schema Languages

- WO 2010/107625 A2 (23 Sept 2010)

- US Provisional Application No. 61-296,104

- US Provisional Application No. 61-372,399

- "Liaison response to 3GPP TSG-SA4 on HTTP Streaming" Tdoc S4 (10)0556 ISO/IEC JTC1/SC29/WG11 N11443 (July 2010, Geneva)

- EP 2924990 A1

- ANSI Standards Action (Vol. 42 #37, Sept 16, 2011)

- Korean Patent Application No. KR10-2011-0023271

- Kudumakis et al., "MPEG-M: Multimedia Service Platform Technologies" (Nov 2011)

- 2011 NEM Summit – Conference Proceedings

- Hoffman et al., "A study of Network Performance with Application to Adaptive HTTP Streaming"

- Lohmar et al., "Dynamic Adaptive HTTP Streaming of Live Content"

- Parker, "Make your HTML5 Video Play on Mobile Devices"

- Pfeiffer, "[foms] Fwd: [W3C Web & TV] Text of ISO/IEC DIS 23001-6 Dynamic Adaptive Streaming over HTTP" (Feb 13, 2011)

Discovery in this matter is ongoing, and Helios reserves its right to supplement this response.

**INTERROGATORY NO. 8:**

For each individual identified by Plaintiffs in their Initial Disclosures as likely to have discoverable information, describe in detail the current relationship between the named individual and Plaintiffs; the relationship the named individual has or had with ETRI and/or KAU including any agreement between that person and ETRI or KAU, or any policies applicable to that individual (or that were applicable to that individual at the time of the individual's relationship with ETRI and/or KAU), relating to that person's obligations to cooperate in any patent enforcement or patent litigation activities; the job title(s) and employer(s) of the named individual from the earliest priority date of the Patents-in-suit to date; the role and responsibilities of the named individual in connection with each of the Patents-in-suit; the contribution of the named individual to each of the Patents-in-suit including contributions to conception and reduction to practice; and the specific knowledge the named individual has that relates to each of the Patents-in-suit.

**RESPONSE TO INTERROGATORY NO. 8:**

Helios incorporates the General Objections set forth above as if fully set forth herein.

Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory to the extent it seeks information which is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence.  Helios objects to this Interrogatory as

Page 44 of 55

overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.  Helios objects to this Interrogatory as compound and/or containing multiple discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios.  Helios objects to this Interrogatory as vague and ambiguous.

Helios further objects to this Interrogatory to the extent that it calls for privileged information.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies the following documents as responsive to this Interrogatory:

HEL_0006428 - HEL_0006430, HEL_0014904 - HEL_0014930, HEL_0014931 - HEL_0014951, HEL_0015201 - HEL_0015224, HEL_0015225 - HEL_0015232, HEL_0015233 - HEL_0015252, HEL_0015609 - HEL_0015611, HEL_0015612 - HEL_0015613, HEL_0015614 - HEL_0015628, HEL_0017698 - HEL_0017706, HEL_0017754 - HEL_0017780, HEL_0017824 - HEL_0017826, HEL_0017827 - HEL_0017829, HEL_0017892 - HEL_0017892, HEL_0017893 - HEL_0017906, HEL_0017978 - HEL_0078017, HEL_0018018 - HEL_0018059, HEL_0018060 - HEL_0018085, HEL_0006428 - HEL_0006430, HEL_0014904 - HEL_0014930, HEL_0015201 - HEL_0015224, HEL_0015233 - HEL_0015252, HEL_0015591 - HEL_0015604, HEL_0015609 - HEL_0015611, HEL_0015636 - HEL_0015641, HEL_0017698 - HEL_0017706, HEL_0017827 - HEL_0017829, HEL_0017892 - HEL_0017892, and HEL_0017893 - HEL_0017906.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**INTERROGATORY NO. 9:**

Identify (by Bates number) all licenses or other agreements relating to rights, title, or interest in the Patents-in-suit; any Related Patents; any patents comparable to the Patents-in-suit, including the rates paid by any licensee; any patents owned by You that were previously owned by ETRI, KAU or any related entities; and any patents the include claims that are essential to practicing ISO/IEC 23009-1.

**RESPONSE TO INTERROGATORY NO. 9:**

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory to the extent it seeks information which is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence.  Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.  Helios objects to this Interrogatory as compound and/or containing multiple discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios.  Helios objects to this Interrogatory as vague and ambiguous, particularly regarding the terms "any patents comparable to the Patents-in-suit" and "including the rates paid by any licensee."

Subject to and without waiving the objections set forth above, Helios responds as follows:

Subject to the foregoing objections pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies the following documents as responsive to this Interrogatory: HEL_0018108, HEL_0006428 - HEL_0006430, HEL_0014904 - HEL_0014930, HEL_0015201 -

HEL_0015224, HEL_0015233 - HEL_0015252, HEL_0015591 - HEL_0015604, HEL_0015609 - HEL_0015611, HEL_0015636 - HEL_0015641, HEL_0017698 - HEL_0017706, HEL_0017827 - HEL_0017829, HEL_0017892 - HEL_0017892, and HEL_0017893 - HEL_0017906.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies HEL_0018109 as responsive to this Interrogatory.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**INTERROGATORY NO. 10:**

Separately for each claim of the Patents-in-suit, identify each secondary consideration or other objective evidence of non-obviousness (e.g., commercial success, long-felt need, commercial acquiescence, expressions of skepticism, copying, teaching away, failed attempts by others, or simultaneous development) and, for each such alleged secondary consideration or other objective evidence of non-obviousness, describe in detail the facts and legal arguments underlying the alleged secondary consideration or other objective evidence of non-obviousness, including the documents that support the alleged secondary consideration or other objective evidence of nonobviousness and the persons who are most knowledgeable about Your contention.

**RESPONSE TO INTERROGATORY NO. 10:**

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants. Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist. Helios objects to this Interrogatory as compound and/or containing multiple discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios. Helios

objects to this Interrogatory as vague and ambiguous.  Helios objects to this Interrogatory as a premature contention interrogatory responsive to Defendants' forthcoming obviousness arguments.  Pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not obligated to address such contention interrogatories until "within thirty (30) days" of Defendants' responses to Helios's forthcoming contention interrogatories regarding Defendants' contentions that the Patents-in-suit are invalid as obvious.  Helios further objects to this Interrogatory as premature to the extent it calls for expert discovery, which is not scheduled to begin until July 1, 2021, and to the extent responses are contingent upon the Court's claim construction ruling, which the Court is not scheduled to provide until on or about June 17, 2021.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios's investigation is ongoing and Helios will provide its response to this Interrogatory at the appropriate time based on additional discovery and investigation, in particular Defendants' responses to Helios's forthcoming contention interrogatories and expert discovery.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:

Subject to and without waiving the objections set forth above, Helios responds as follows:

The asserted claims are valid and Defendants have failed to prove otherwise.  Helios expects to serve expert reports and/or conduct expert discovery relating to the subject matter of this interrogatory and reserves its right to amend this response following an opportunity for further fact and expert discovery.  Helios further reserves its right to amend this response in response to positions taken by Defendants and/or their expert witness(es) in the above-captioned litigation, including, for example, Defendants' invalidity contentions.

Helios contends that the inventions claimed in the Asserted Patents are not obvious. Helios further contends that a variety of secondary considerations support the non-obviousness

of the inventions disclosed in the Asserted Patents, including but not limited to commercial

success, long-felt need, failure of others, and unexpected results.

The claimed inventions are commercially successful in view of Defendants' sales of the

Accused Instrumentalities which embody one or more claims of the Asserted Patents.  There has

been widespread adoption of the adaptive bitrate streaming technology of the claimed inventions

of the Asserted Patents.  For example, Helios contends that its patented technology has been used

by the following exemplary and non-limiting entities:

- Chicken Soup For The Soul Entertainment, Inc.

- Crackle Incorporated

- Crackle Plus, LLC

- Fandango Media LLC

- Lions Gate Entertainment Corporation

- NBC Universal Media LLC

- Peacock TV LLC

- Sony Pictures Entertainment Inc.

- Sony Pictures Television, Inc.

- Starz Entertainment, LLC

The above entities are or were subject to allegations of infringement of one or more

claims of the Asserted Patents in Federal District Courts.  Further, the claimed inventions of the

Asserted Patents have also been incorporated into the ISO/IEC 23009-1 standard.  The foregoing

supports commercial success and widespread adoption of the claimed inventions of the Asserted

Patents and the existence of a nexus between the claimed inventions of the Asserted Patents and

the infringing activities of Defendants.  Helios also identifies the public dockets of litigations

involving Helios and the above-listed entities, including, for example, complaints detailing

infringement allegations.

Defendants have been aware of Helios's patented technology at least since August 23, 2018 when Helios sent letters identifying its DASH patent portfolio and Defendants' relevant products and services.  Defendants have continued to design, develop, and use Helios's patented technology in their Accused Instrumentalities.  Discovery is ongoing and Defendants have not yet produced substantive documents responsive Helios's requests on these issues.  No party depositions have taken place.

The patented inventions also fulfilled a long-felt but unsolved need in the industry.  The Moving Pictures Expert Group ("MPEG") is an alliance of working groups of the International Organization for Standardization ("ISO") and the International Electrotechnical Commission that sets standards for media coding, including compression coding of audio, video, graphics and genomic data, and transmission and file formats for various applications.  Prior to the publication of the ISO/IEC 23009-1 standard, there were a number of incompatible, proprietary segmented formats for adaptive streaming.  In 2010, the members of MPEG, which included companies such as Apple, Ericsson, Microsoft, Netflix, Qualcomm, and Samsung, came together to develop a single industry-defined international standard for adaptive bitrate streaming to promote widespread adoption of the technology and assure interoperability and convergence of the technology which was needed to spur large-scale market growth.  The resulting MPEG DASH standard was published in April 2012 as ISO/IEC 23009-1.

The Electronics and Telecommunications Research Institute ("ETRI"), the predecessors in interest to the Asserted Patents, along with the aforementioned companies such as Microsoft, Apple, and Samsung, participated in the committees which were charged with developing the MPEG DASH standard.  Ultimately, the claimed inventions of the Asserted Patents were incorporated into the MPEG DASH standard that has since been widely adopted by companies, including Defendants.

Pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies the following documents as responsive to this Interrogatory:  HEL_0000001 - HEL_0000659, HEL_0000660 -

HEL_0000951, HEL_0000952 - HEL_0002099, HEL_0002100 - HEL_0002339, HEL_0002340

- HEL_0003188, HEL_0003189 - HEL_0003616, HEL_0003617 - HEL_0004096,

HEL_0004097 - HEL_0004338, HEL_0004339 - HEL_0005379, HEL_0005380 -

HEL_0005616, and HEL_0005617 - HEL_0006415.

**INTERROGATORY NO. 11:**

Set forth in detail Your contention regarding any damages owed to Plaintiffs from Defendants' alleged infringement of the Patents-in-suit, including fees, rates, or ranges of the same for the license of any and/or all of the claims of the Patents-in-suit and the basis for the same, including identifying the persons (other than legal counsel) who are most knowledgeable about the foregoing and the documents and things (by Bates number) that You contend support each such contention; to the extent that Your contention is based on an assertion of a smallest saleable patent practicing unit ("SSPPU"), set forth the asserted SSPPU for each claim of each of the Patents-in-suit and the basis therefor; to the extent that Your contention is based on any alleged comparable licenses or other facts, identify each such license that You contend is comparable and the basis for each such contention and identify all such other supporting facts; and to the extent that Your contention is based on lost profits due to Defendants' alleged infringement, identify any products for which You lost profits, identify each claim of each of the Patents-in-suit You allege each product practices and all facts that support this claim including the relevant market for each of the Patents-in-suit and the share of that market You allege You would recover in the absence of Defendants' alleged patent infringement.

**RESPONSE TO INTERROGATORY NO. 11:**

Helios incorporates the General Objections set forth above as if fully set forth herein.

Helios further objects to this Interrogatory to the extent it seeks information equally available to

Defendants.  Helios objects to this Interrogatory as compound and/or containing multiple

discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1).

Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of

information or documents already provided by Helios.  Helios objects to this Interrogatory as

vague and ambiguous.  Helios objects to this Interrogatory as a premature contention

interrogatory, which, pursuant to paragraph 2.e. of the Court's Scheduling Order, Helios is not

obligated to "first address" until the January 25, 2021 "date established for the completion of

document production."  Helios further objects to this Interrogatory as premature to the extent it

calls for expert discovery, which is not scheduled to begin until July 1, 2021.

Subject to and without waiving the objections set forth above, Helios responds as follows:

Helios will conduct a reasonable search and identify or permit inspection of non-privileged business records responsive this Interrogatory pursuant to Federal Rule of Civil Procedure 33(d).  Helios further identifies the following documents as responsive to this Interrogatory: HEL_0018108, HEL_0006428 - HEL_0006430, HEL_0014904 - HEL_0014930, HEL_0015201 - HEL_0015224, HEL_0015233 - HEL_0015252, HEL_0015591 - HEL_0015604, HEL_0015609 - HEL_0015611, HEL_0015636 - HEL_0015641, HEL_0017698 - HEL_0017706, HEL_0017827 - HEL_0017829, HEL_0017892 - HEL_0017892, and HEL_0017893 - HEL_0017906.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to the foregoing objections and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies HEL_0018109 as responsive to this Interrogatory.

Helios's investigation is ongoing and it reserves the right to supplement or amend these responses based on additional discovery and investigation.

**INTERROGATORY NO. 12:**

Describe, in detail, any agreement, policy, or practice which entitles any person or entity other than Your legal counsel to receive proceeds from this litigation, including any agreement by which You received funds to purchase or assert the Patents-in-suit, and all circumstances in which any person or entity other than Your legal counsel may receive proceeds from this litigation, such as compensation due to the inventors of the Patents-in-suit under the Korean Invention Promotion Act. You should also identify the persons (other than Your legal counsel) most knowledgeable about the foregoing and the documents (by production number) that reflect each such agreement.

**RESPONSE TO INTERROGATORY NO. 12:**

Helios incorporates the General Objections set forth above as if fully set forth herein. Helios further objects to this Interrogatory to the extent it seeks information equally available to Defendants.  Helios objects to this Interrogatory to the extent that it seeks information or documents beyond Helios's possession, custody, or control, or that calls for Helios to prepare documents or things that do not currently exist.  Helios objects to this Interrogatory to the extent it seeks information that is neither relevant to the parties' claims and defenses nor reasonably calculated to lead to the discovery of admissible evidence.  Helios objects to this Interrogatory as overbroad, unduly burdensome, oppressive, or constituting an abuse of process, particularly in view of the cost necessary to investigate weighed against Defendants' need for the information or document.  Helios objects to this Interrogatory as compound and/or containing multiple discrete subparts in excess of the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1). Helios objects to this Interrogatory as seeking information that is cumulative or duplicative of information or documents already provided by Helios.  Helios objects to this Interrogatory as vague and ambiguous.

Helios objects to this Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, work product doctrine, the common interest doctrine, or any other applicable law, privilege, or protection.

Subject to and without waiving the objections set forth above, and pursuant to Federal Rule of Civil Procedure 33(d), Helios identifies the following documents as responsive to this Interrogatory: HEL_0006428 - HEL_0006430, HEL_0014904 - HEL_0014930, HEL_0014931 - HEL_0014951, HEL_0015201 - HEL_0015224, HEL_0015225 - HEL_0015232, HEL_0015233 - HEL_0015252, HEL_0015609 - HEL_0015611, HEL_0015612 - HEL_0015613, HEL_0015614 - HEL_0015628, HEL_0017698 - HEL_0017706, HEL_0017754 - HEL_0017780, HEL_0017824 - HEL_0017826, HEL_0017827 - HEL_0017829, HEL_0017892 - HEL_0017892, HEL_0017893 - HEL_0017906, HEL_0017978 - HEL_0078017, HEL_0018018 - HEL_0018059, and HEL_0018060 - HEL_0018085.

Helios's investigation is ongoing and it reserves the right to supplement or

amend these responses based on additional discovery and investigation.


                                        Respectfully submitted,


Dated:  February 25, 2021

                                        DEVLIN LAW FIRM LLC

                                        By: */s/ Timothy Devlin*_____
                                        Timothy Devlin (No. 4241)
                                        tdevlin@devlinlawfirm.com
                                        1526 Gilpin Avenue
                                        Wilmington, Delaware 19806
                                        Telephone: (302) 449-9010
                                        Facsimile: (302) 353-4251

                                        *Attorneys for Plaintiffs Helios Streaming,*
                                        *LLC, and Ideahub, Inc.*

## VERIFICATION

I, Emil Kim, Declare:

I am a licensing officer of Ideahub, Inc., and I am authorized to make this declaration on behalf of Plaintiffs Helios, LLC and Ideahub, Inc.  I have read the foregoing, Plaintiffs' Responses to Defendants' First Set of Common Interrogatories to Plaintiffs (Nos. 1-12), and know the contents thereof, and know the same is true as of my own knowledge except as to those matters therein stated on information and belief and as to those matter I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Irvine, California on February 25, 2021.

Emil Kim

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, the foregoing document was served upon all counsel of record via electronic mail.

_/s/ Timothy Devlin_____
Timothy Devlin (No. 4241)